**KARPEL AFFIDAVIT**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

OVERSEAS LEASE GROUP, INC.,

                 Plaintiff,

    - against -

KEY GOVERNMENT FINANCE, INC.,

                 Defendant.
-----------------------------------------------------------------x

08 Civ. 01696 (SAS)(THK)

**AFFIDAVIT IN SUPPORT
OF MOTION FOR PARTIAL
SUMMARY JUDGMENT
AND OTHER RELIEF**

STATE OF COLORADO    )
                      ) ss.:
COUNTY OF BOULDER   )

DAVID KARPEL, being duly sworn, deposes and says:

1.    I am a Senior Workout Officer for Key Equipment Finance, Inc., a Michigan

corporation and wholly owned subsidiary of Key Bank National Association. The Defendant,

Key Government Finance, Inc. ("Key"), is a Colorado corporation and a wholly owned subsidiary

of Key Equipment Finance, Inc..  I am charged with the administration of the financial

transactions hereafter described and fully familiar with the facts and circumstances as set forth

herein, based upon my personal knowledge or from my review of books and records maintained

by Key in the ordinary course of its business.  I submit this Affidavit in support of Key's

application to the Court: (i) pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting

summary judgment as to Key's Fourth Amended Counterclaim against Plaintiff, Overseas Lease

Group, Inc. ("OLG"), which seeks a declaratory judgment declaring that Key, as OLG's assignee

and lienholder,[1] has the right to recover possession and to dispose of the vehicles described

---

[1] Key's Fourth Amended Counterclaim seeks relief as either title owner or assignee/lienholder. For purposes of this
motion only, Key is only seeking relief with respect to its rights as a lienholder and assignee.

below whenever OLG would be or have been entitled to recover possession of such vehicles and to dispose of them; (ii) pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, severing and continuing Defendant's First, Second, Third, Fifth, Sixth, Seventh, Eighth and Ninth Counterclaims against Plaintiff; and (iii) pursuant to Rule 54(b), granting certification of the summary judgment on Defendant's Fourth Amended Counterclaim against Plaintiff.

      2.      This motion has been necessitated by OLG's interference with Key's rights to enforce all of its rights and remedies to recover possession of and to dispose of the vehicles described below as and when they come off lease, including OLG's failure and refusal to turn over and deliver to Key the titles, title certificates and all indicia of ownership of the vehicles so as to enable Key to convey title to prospective buyers of the vehicles, in direct contravention of Key's rights as OLG's assignee pursuant to its written agreements. Key is in imminent danger of losing prospective buyers for 77 of the subject vehicles at $25,000 each, for a total proposed sale of $1,925,000. By precluding Key from consummating the sale of those vehicles, which depreciate with each passing day, Key will suffer direct and immediate material financial loss. In addition thereto, the location and nature of both the vehicles and Key's prospective buyer creates exigent circumstances for its ability to consummate the proposed sales. The vehicles consist of all-wheel drive, non-armored vehicles located in the war zone of Afghanistan. In this territory, these types of vehicles are scarce and at significant risk of damage or total loss as they sit unprotected in a field storage lot. The prospective buyer for 70 of these vehicles requires the vehicles in connection with a contract to provide necessary security services to the U.S. Embassy in this war zone, necessitating an expeditious resolution to Key's Fourth Amended Counterclaim so that it may complete the sale as soon as possible. Key has been constrained to seek this relief since OLG has asserted that Key cannot take any action to dispose (by re-lease or sale or

otherwise) of the vehicles, claiming that only OLG can take such actions. An expeditious resolution of the issue concerning Key's rights with respect to the disposition of these 70 vehicles will also provide needed clarity with respect to Key's rights as to additional vehicles that remain under contract with the Department of Defense as and when they come off lease.

3.      As will be shown below, there are no genuine issues of material fact to be tried as to Key's right to possess and dispose of the vehicles, as OLG's assignee and as lienholder, based upon the clear and unambiguous language of the written agreements between Key and OLG.

**The Agreements**

4.      Key conducts financing activities in all 50 states and in several countries. OLG is in the business of purchasing vehicles, including trucks and armored trucks, and leasing vehicles primarily to the United States Department of Defense (the "DOD") for use in connection with United States military operations in Afghanistan.

5.      OLG and the DOD entered into a certain contract, Contract No. W91B4M-06-D-0001 (the "DOD Contract") dated as of February 5, 2006, pursuant to which OLG leased to the DOD and the DOD leased from OLG, the property described therein and on certain "Task Orders" issued by the DOD consistent therewith (the "Vehicles"). Copies of relevant excerpts from the DOD Contract are annexed hereto as Exhibits "A" and "B" and incorporated herein by reference.

6.      Pursuant to various Assignment of Proceeds Letters thereafter issued by OLG to Key in connection with the DOD Contract, OLG invoiced Key and Key funded the proceeds due under invoice for payment of the Vehicles leased by OLG to the DOD. In total, Key paid funding proceeds in the sum of $26,231,059.00 to OLG.

3

7.    By Assignment Agreement dated as of April 1, 2006 (the "Assignment Agreement") by and between OLG, as seller, and Key, as purchaser, OLG indisputably sold, assigned, transferred and set over unto Key all of OLG's "right, title and interest in and to (but none of its obligations under) the [DOD Contract]" and

> "all amounts due and to become due under the Contract, including (without limitation) payments, insurance proceeds, and all monies payable or recoverable following a default or non-appropriation by [the DOD], and a first priority lien in favor of Purchaser in and to the Property, together with all proceeds (cash and non-cash, including insurance proceeds) of the foregoing and all of Seller's rights and remedies under the Contract, including (without limitation) the right to initiate and conclude any and all proceedings, legal, equitable or otherwise, that Seller otherwise might take, save for this Agreement". (Emphasis added).

A copy of the Assignment Agreement is annexed hereto as Exhibit "C" and incorporated herein by reference. See Sections 1 and 2 thereof.

8.    Pursuant to Section 6 of the Assignment Agreement, Key "shall have all of the rights of [OLG] under the [DOD] Contract, but none of [OLG's] obligations thereunder...". See Exhibit "C" at Section 6.

9.    In accordance with the terms of the DOD Contract, the DOD provided OLG with, among others, Task Order #31, pursuant to which OLG leased to the DOD and the DOD leased from OLG seventy (70) Vehicles identified therein (the "TO #31 Vehicles"). Key financed OLG's lease of the Vehicles (as indicated in the Assignment of Proceeds letters) based on a 5 year contract, although the DOD was only committed to the first year, with 4 option years in which it had the right on a year-by-year basis to "non-renew" the transaction and return the Vehicles to OLG (and, once OLG assigned the lease(s), to OLG's assignee -- here, Key).

10.    On or about September 11, 2007, the DOD gave notice of its non-renewal of its lease of the TO #31 Vehicles, which expired on November 30, 2007, and returned said Vehicles

4

to OLG on or about December 1, 2007 in accordance with the DOD Contract. Several months thereafter, the DOD indicated an intent to return and not exercise its option with respect to the majority of the other remaining Task Orders covering non-armored vehicles.

11.    OLG (and hence Key) is entitled to possession of the Vehicles under TO #31 since the DOD did not exercise its option to extend the term of the DOD Contract under Sec. 52.217-9 thereof (the relevant portions of which are annexed as Exhibit "D" hereto). Attached as Exhibit "E" is an email dated September 17, 2007 from Sergeant Marlon T. McGee informing that all Vehicles regarding TO #31 will be turned in, with responding emails from No Lemon (the field storage lot to which the Vehicles would be surrendered) acknowledging the same. Further, on March 31, 2008, Lt. Col. Branley Fishel wrote to OLG that "as Task Order 31 has expired, [the Government] needs to return the vehicles to OLG asap". (See Exhibit "F" hereto). There is no dispute that these Vehicles have already been returned, no option to renew has been exercised and Key, as assignee of all of OLG's rights under the Assignment Agreement, should be free to dispose of the Vehicles as secured party.[2]

**OLG's Refusal and Failure to Permit Key to Dispose of its Collateral**

12.    Upon the expiration of TO # 31, Key contacted OLG to confirm that OLG would cooperate and deliver title to the TO #31 Vehicles in the event that Key found buyers through its own efforts, and OLG verbally agreed to do so. Relying upon OLG's agreement, Key undertook efforts to sell or remarket the TO #31 Vehicles.

---

[2]  As indicated by Key's counsel in the pre-motion conference, Key does not seek any finding that OLG or Key is entitled to possession of any Vehicles under the DOD Contract (although Key believes it is entitled to such possession). Key only seeks by this motion an order declaring that when, under the DOD Contract or applicable law, the lessor OLG may recover possession of the Vehicles and dispose of them, that right belongs to Key as OLG's assignee.

13.    In or about February 2008, Key successfully located a prospective buyer for seven (7) of the TO #31 Vehicles, for a total purchase price of $175,000.00.

14.    In or about February 2008, Key informed OLG that it had located a prospective buyer for seven (7) of the TO #31 Vehicles.

15.    Most recently, this prospective buyer obtained funding for the immediate purchase and delivery of four (4) of the Vehicles, and has agreed to purchase the remaining three (3) vehicles in June. Key now has a prospective buyer for an additional seventy (70) Toyota Land Cruisers, which are comprised in part from TO #31 and in part from Task Order #25 (which has also expired), at $25,000 each, for a total proposed sale of $1,750,000.

16.    Despite Key's demand therefor, and contrary to its verbal and written agreement, OLG has intentionally, and without cause or justification, failed and refused to turn over the titles for the Vehicles, including the Vehicles for which Key has located prospective buyers, thereby precluding Key from consummating the sale of those Vehicles. Rather, OLG commenced this lawsuit against Key.

17.    OLG's failure and refusal to turn over the titles for the Vehicles is in derogation of Key's rights to the Vehicles as OLG's assignee and lienholder under the Assignment Agreement and its rights to remarket those Vehicles as its collateral.

18.    In the absence of clarity with respect to Key's rights to recover and sell its collateral, including obtaining the titles from OLG and its cooperation in permitting Key to consummate the sale of its collateral, Key stands to lose its prospective buyers of the Vehicles, at a significant and material financial loss to Key. OLG would have the Court believe that Key has no remedy to dispose of the Vehicles on terminated contracts. There is nothing in the agreements

6

that prevent Key from enforcing its rights against the Vehicles, as assignee and secured party. This will continue if future vehicles are returned by the DOD.

19.     In addition to TO #31, Task Orders pertaining to the leases of more than 90 additional non-armored Vehicles are soon due to expire in the upcoming months and the DOD has indicated that it is not likely to exercise its options to renew those Task Orders for part or all of their remaining terms. Pursuant to the Assignment Agreement, it is undisputed that Key likewise holds a security interest in the more than 90 additional non-armored Vehicles subject of the other Task Orders that are soon due to expire. As with TO #31, OLG has failed and refused to permit Key to dispose of those Vehicles as well, and has taken the position that Key has no rights to protect, preserve and dispose of this collateral, all in direct contravention of its contractual obligations and agreements and the complete and absolute assignment of all of OLG's rights.

20.     OLG's aforesaid conduct has interfered, and continues to interfere, with Key's contractual and business relations with the prospective buyers for the seventy-seven (77) Vehicles. This has caused, and will continue to cause, significant financial damage to Key, particularly as more and more of the Task Orders expire and the Vehicles depreciate with each passing day.

WHEREFORE, it is respectfully requested that the Court grant Defendant's motion in its entirety.

DAVID KARPEL

Sworn to before me this
5 day of May, 2008

Notary Public

F:\Key Equipment Finance\Overseas\Docs\Karpel Affidavit.Doc

**EXHIBIT A**

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS | | 1. REQUISITION NUMBER | | PAGE 1 OF    131 |
|---|---|---|---|---|
| *OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, AND 30* | | | | |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|
| W91B4M-06-D-0001-P00001 | 19-Jan-2006 | | W91B4M-06-R-0023 | 13-Dec-2005 |

| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME | | b. TELEPHONE NUMBER *(No Collect Calls)* | 8. OFFER DUE DATE/LOCAL TIME |
|---|---|---|---|---|
| | LESLIE G WESTCOTT | | DSN 318-237-3403 | 11:00 AM 31 Dec 2005 |

| 9. ISSUED BY    CODE   W91B4M | 10. THIS ACQUISITION IS | 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS |
|---|---|---|---|
| PURCHASING & CONTRACTING CONTRACTING OFFICE WAZIR AKBAR KHAN AREA, SREET #10 CAMP EGGERS AFGHANISTAN<br><br>TEL: 318-237-3229 FAX: | [X] UNRESTRICTED<br>[ ] SET ASIDE:        % FOR<br>[ ] SMALL BUSINESS<br>[ ] HUBZONE SMALL BUSINESS<br>[ ] 8(A)<br>NAICS:<br>SIZE STANDARD: | [ ] SEE SCHEDULE<br><br>13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)<br>13b. RATING<br>14. METHOD OF SOLICITATION<br>[ ] RFQ   [ ] IFB   [X] RFP | |

| 15. DELIVER TO    CODE | 16. ADMINISTERED BY    CODE |
|---|---|
| **SEE SCHEDULE** | **SEE ITEM 9** |

| 17a. CONTRACTOR/ OFFEROR    CODE   3R2A7 | 18a. PAYMENT WILL BE MADE BY    CODE   HQ0302 |
|---|---|
| OVERSEAS LEASE GROUP, INC GEORGE BADCOCK 110 EAST BROWARD BLVD SUITE 1700 FT. LAUDERDALE FL 33301<br><br>TEL. 1-800-331-0599       FACILITY CODE | DFAS ROME DFAS-BVA/RO 325 BROOKS ROAD ROME NY 13441-4527 UNITED STATES |
| [ ] 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER | 18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a. UNLESS BLOCK BELOW IS CHECKED   [ ] SEE ADDENDUM |

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/ SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | **SEE SCHEDULE** | | | | |

| 25. ACCOUNTING AND APPROPRIATION DATA | 26. TOTAL AWARD AMOUNT (For Govt. Use Only) |
|---|---|
| | **$14,762,020.60** |

| 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1. 52.212-4. FAR 52.212-3. 52.212-5 ARE ATTACHED. | ADDENDA [ ] ARE   [ ] ARE NOT ATTACHED |
|---|---|
| 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. | ADDENDA [ ] ARE   [ ] ARE NOT ATTACHED |

| 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN    0    COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE [X] OFFER DATED    . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:   SEE SCHEDULE |
|---|---|

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER) | 31c. DATE SIGNED |
|---|---|---|
| *(signature)* | *(signature)* | 05-Feb-2006 |

| 30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT) | 30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT) |
|---|---|---|
| E. George Badcock President | 9-Feb-06 | DAVID KAO / CONTRACTING OFFICER TEL: 318-237-1018   EMAIL: david.kao@cfc-a.centcom.mil |

AUTHORIZED FOR LOCAL REPRODUCTION PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449   (REV 4/2002) Prescribed by GSA FAR (48 CFR) 53.212

(a) The right of the Contractor to proceed may be terminated by written notice if, after notice and hearing, the agency head or a designee determines that the Contractor, its agent, or another representative--

(1) Offered or gave a gratuity (e.g., an entertainment or gift) to an officer, official, or employee of the Government; and

(2) Intended, by the gratuity, to obtain a contract or favorable treatment under a contract.

(b) The facts supporting this determination may be reviewed by any court having lawful jurisdiction.

(c) If this contract is terminated under paragraph (a) of this clause, the Government is entitled--

(1) To pursue the same remedies as in a breach of the contract; and

(2) In addition to any other damages provided by law, to exemplary damages of not less than 3 nor more than 10 times the cost incurred by the Contractor in giving gratuities to the person concerned, as determined by the agency head or a designee. (This subparagraph (c)(2) is applicable only if this contract uses money appropriated to the Department of Defense.)

(d) The rights and remedies of the Government provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this contract.

(End of clause)


52.208-4    VEHICLE LEASE PAYMENTS (APR 1984)

(a) Upon the submission of proper invoices or vouchers, the Government shall pay rent for each vehicle at the rate(s) specified in this contract.

(b) Rent shall accrue from the beginning of this contract, or from the date each vehicle is delivered to the Government, whichever is later, and shall continue until the expiration of the contract term or the termination of this contract. However, rent shall accrue only for the period that each vehicle is in the possession of the Government.

(c) Rent shall not accrue for any vehicle that the Contracting Officer determines does not comply with the Condition of Leased Vehicles clause of this contract or otherwise does not comply with the requirements of this contract, until the vehicle is replaced or the defects are corrected.

(d) Rent shall not accrue for any vehicle during any period when the vehicle is unavailable or unusable as a result of the Contractor's failure to render services for the operation and maintenance of the vehicle as prescribed by this contract.

(e) Rent stated in monthly terms shall be prorated on the basis of 1/30th of the monthly rate for each day the vehicle is in the Government's possession. If this contract contains a mileage provision, the Government shall pay rent as provided in the Schedule.

52.212-4 ADDENDUM

ADDENDUM 52.212-4 -- Contract Terms and Conditions -- Commercial Items.

As prescribed in 12.301 ( b )  ( 3 ) , insert the following clause:

Contract Terms and Conditions -- Commercial Items  ( Sep 2005)

(a) *Inspection/Acceptance*. The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. The Government must exercise its post-acceptance rights --

(1) Within a reasonable time after the defect was discovered or should have been discovered; and

(2) Before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

(b) *Assignment*. The Contractor or its assignee may assign its rights to receive payment due as a result of performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency in accordance with the Assignment of Claims Act (31 U.S.C.3727). However, when a third party makes payment (*e.g.*, use of the Governmentwide commercial purchase card), the Contractor may not assign its rights to receive payment under this contract.

(c) *Changes*. Changes in the terms and conditions of this contract may be made only by written agreement of the parties.

(d) *Disputes*. This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

(e) *Definitions*. The clause at FAR 52.202-1, Definitions, is incorporated herein by reference.

(f) *Excusable delays*. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(g) *Invoice*.

(1) The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized) to the address designated in the contract to receive invoices. An invoice must include --

(i) Name and address of the Contractor;

( ii)  Invoice date and number;

( iii)  Contract number, contract line item number and, if applicable, the order number;

( iv)  Description, quantity, unit of measure, unit price and extended price of the items delivered;

( v)  Shipping number and date of shipment, including the bill of lading number and weight of shipment if shipped on Government bill of lading;

( vi)  Terms of any discount for prompt payment offered;

( vii)  Name and address of official to whom payment is to be sent;

( viii)  Name, title, and phone number of person to notify in event of defective invoice; and

( ix)  Taxpayer Identification Number ( TIN) . The Contractor shall include its TIN on the invoice only if required elsewhere in this contract.

( x)  Electronic funds transfer ( EFT)  banking information.

( A)  The Contractor shall include EFT banking information on the invoice only if required elsewhere in this contract.

( B)  If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the Contractor shall have submitted correct EFT banking information in accordance with the applicable solicitation provision, contract clause ( *e.g.*, 52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration, or 52.232-34, Payment by Electronic Funds Transfer—Other Than Central Contractor Registration)  , or applicable agency procedures.

( C)  EFT banking information is not required if the Government waived the requirement to pay by EFT.

( 2)  Invoices will be handled in accordance with the Prompt Payment Act ( 31 U.S.C. 3903)  and Office of Management and Budget ( OMB)  prompt payment regulations at 5 CFR part 1315.

( h)  *Patent indemnity.* The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

( i)  *Payment.*

( 1)  Items accepted. Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract.

( 2)  Prompt Payment. The Government will make payment in accordance with the Prompt Payment Act ( 31 U.S.C. 3903)  and prompt payment regulations at 5 CFR Part 1315.

( 1)  Electronic Funds Transfer ( EFT) . If the Government makes payment by EFT, see 52.212-5 ( b)  for the appropriate EFT clause.

Discount. In connection with any discount offered for early payment, time shall be computed from the date of the invoice. For the purpose of computing the discount earned, payment shall be considered to have been made on the date which appears on the payment check or the specified payment date if an electronic funds transfer payment is made.

( 5)  Overpayments. If the Contractor becomes aware of a duplicate contract financing or invoice payment or that the Government has otherwise overpaid on a contract financing or invoice payment, the Contractor shall immediately notify the Contracting Officer and request instructions for disposition of the overpayment.

( j)  *Risk of loss.* Unless the contract specifically provides otherwise, risk of loss or damage to the supplies provided under this contract shall remain with the Contractor until, and shall pass to the Government upon:

( 1)  Delivery of the supplies to a carrier, if transportation is f.o.b. origin; or

( 2)  Delivery of the supplies to the Government at the destination specified in the contract, if transportation is f.o.b. destination.

( k)  *Taxes.* The contract price includes all applicable Federal, State, and local taxes and duties.

( l)  *Termination for the Government_ s convenience.* The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor_ s records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

( m)  *Termination for cause.* The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for

any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

( n)    *Title.* Title to items furnished under this contract shall not pass to the Government upon acceptance, regardless of when or where the Government takes physical possession.

( o)    *Warranty.* The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

( p)    *Limitation of liability.* Except as otherwise provided by an express warranty, the Contractor will not be liable to the Government for consequential damages resulting from any defect or deficiencies in accepted items.

( q)    *Other compliances.* The Contractor shall comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance under this contract.

( r)    *Compliance with laws unique to Government contracts.* The Contractor agrees to comply with 31 U.S.C. 1352 relating to limitations on the use of appropriated funds to influence certain Federal contracts; 18 U.S.C. 431 relating to officials not to benefit; 40 U.S.C. 3701, *et seq.,* Contract Work Hours and Safety Standards Act; 41 U.S.C. 51-58, Anti-Kickback Act of 1986; 41 U.S.C. 265 and 10 U.S.C. 2409 relating to whistleblower protections; 49 U.S.C. 40118, Fly American; and 41 U.S.C. 423 relating to procurement integrity.

( s)    *Order of precedence.* Any inconsistencies in this solicitation or contract shall be resolved by giving precedence in the following order:

( 1)    The schedule of supplies/services.

( 2)    The Assignments, Disputes, Payments, Invoice, Other Compliances, and Compliance with Laws Unique to Government Contracts paragraphs of this clause.

( 3)    The clause at 52.212-5.

( 4)    Addenda to this solicitation or contract, including any license agreements for computer software.

( 5)    Solicitation provisions if this is a solicitation.

( 6)    Other paragraphs of this clause.

( 7)    The Standard Form 1449.

( 8)    Other documents, exhibits, and attachments.

The specification.

( t)    *Central Contractor Registration (CCR)* .

( 1)    Unless exempted by an addendum to this contract, the Contractor is responsible during performance and through final payment of any contract for the accuracy and completeness of the data within the CCR database, and for any liability resulting from the Government s reliance on inaccurate or incomplete data. To remain registered in the

CCR database after the initial registration, the Contractor is required to review and update on an annual basis from the date of initial registration or subsequent updates its information in the CCR database to ensure it is current, accurate and complete. Updating information in the CCR does not alter the terms and conditions of this contract and is not a substitute for a properly executed contractual document.

(2)

    (i)  If a Contractor has legally changed its business name, , doing business as, name, or division name (whichever is shown on the contract) , or has transferred the assets used in performing the contract, but has not completed the necessary requirements regarding novation and change-of-name agreements in Subpart 42.12, the Contractor shall provide the responsible Contracting Officer a minimum of one business day, s written notification of its intention to:

        (A)  Change the name in the CCR database;

        (B)  Comply with the requirements of Subpart 42.12 of the FAR;

        (C)  Agree in writing to the timeline and procedures specified by the responsible Contracting Officer. The Contractor must provide with the notification sufficient documentation to support the legally changed name.

    (ii)  If the Contractor fails to comply with the requirements of paragraph (i) (2) (i) of this clause, or fails to perform the agreement at paragraph (i) (2) (i) (C) of this clause, and, in the absence of a properly executed novation or change-of-name agreement, the CCR information that shows the Contractor to be other than the Contractor indicated in the contract will be considered to be incorrect information within the meaning of the , Suspension of Payment, paragraph of the electronic funds transfer (EFT) clause of this contract.

The Contractor shall not change the name or address for EFT payments or manual payments, as appropriate, in the CCR record to reflect an assignee for the purpose of assignment of claims (see FAR Subpart 32.8, Assignment of Claims) . Assignees shall be separately registered in the CCR database. Information provided to the Contractor, s CCR record that indicates payments, including those made by EFT, to an ultimate recipient other than that Contractor will be considered to be incorrect information within the meaning of the , Suspension of payment, paragraph of the EFT clause of this contract.

Offerors and Contractors may obtain information on registration and annual confirmation requirements via the Internet at http://www.ccr.gov or by calling 1-888-227-2423, or 269-961-5757.

( End of Clause)

CLAUSES INCORPORATED BY FULL TEXT

52.212-5    CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS--COMMERCIAL ITEMS (JAN 2005)

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

(2) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Pub. L. 108-77, 108-78).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items: (Contracting Officer check as appropriate.)

_X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (JUL 1995), with Alternate I (OCT 1995) (41 U.S.C. 253g and 10 U.S.C. 2402).

___ (2) 52.219-3, Notice of HUBZone Small Business Set-Aside (Jan 1999) (U.S.C. 657a).

___ (3) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Jan 1999) (if the offeror elects to waive the preference, it shall so indicate in its offer) (U.S.C. 657a).

___(4) (i) 52.219-5, Very Small Business Set-Aside (JUNE 2003) (Pub. L. 103-403, section 304, Small Business Reauthorization and Amendments Act of 1994).

___(ii) Alternate I (MAR 1999) to 52.219-5.

___(iii) Alternate II to (JUNE 2003) 52.219-5.

___ (5)(i) 52.219-6, Notice of Total Small Business Set-Aside (JUNE 2003) (15 U.S.C. 644).

___ (ii) Alternate I (OCT 1995) of 52.219-6.

___ (iii) Alternate II (MAR 2004) of 52.219-6.

___ (6)(i) 52.219-7, Notice of Partial Small Business Set-Aside (JUNE 2003) (15 U.S.C. 644).

___ (ii) Alternate I (OCT 1995) of 52.219-7.

___ (iii) Alternate II (MAR 2004) of 52.219-7.

___ (7) 52.219-8, Utilization of Small Business Concerns (MAY 2004) (15 U.S.C. 637 (d)(2) and (3)).

___ (8)(i) 52.219-9, Small Business Subcontracting Plan (JAN 2002) (15 U.S.C. 637(d)(4)).

___ (ii) Alternate I (OCT 2001) of 52.219-9.

___ (iii) Alternate II (OCT 2001) of 52.219-9.

___ (9) 52.219-14, Limitations on Subcontracting (DEC 1996) (15 U.S.C. 637(a)(14)).

___ (10)(i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (JUNE 2003) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

___ (ii) Alternate I (JUNE 2003) of 52.219-23.

___ (11) 52.219-25, Small Disadvantaged Business Participation Program--Disadvantaged Status and Reporting (OCT 1999) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

___ (12) 52.219-26, Small Disadvantaged Business Participation Program--Incentive Subcontracting (OCT 2000) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

___ (13) 52.219-27, Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (May 2004).

___ (14) 52.222-3, Convict Labor (JUNE 2003) (E.O. 11755).

___ (15) 52.222-19, Child Labor--Cooperation with Authorities and Remedies (Jun 2004) (E.O. 13126).

___ (16) 52.222-21, Prohibition of Segregated Facilities (FEB 1999).

___ (17) 52.222-26, Equal Opportunity (APR 2002) (E.O. 11246).

___ (18) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (DEC 2001) (38 U.S.C. 4212).

___ (19) 52.222-36, Affirmative Action for Workers with Disabilities (JUN 1998) (29 U.S.C. 793).

___ (20) 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (DEC 2001) (38 U.S.C. 4212).

___ (21) 52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or Fees (DEC 2004) (E.O. 13201).

___ (22)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Products (AUG 2000) (42 U.S.C. 6962(c)(3)(A)(ii)).

___ (ii) Alternate I (AUG 2000) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

___ (23) 52.225-1, Buy American Act--Supplies (JUNE 2003) (41 U.S.C. 10a-10d).

___ (24)(i) 52.225-3, Buy American Act--Free Trade Agreements--Israeli Trade Act (Jan 2005) (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, Pub. L. 108-77, 108-78, 108-286).

___ (ii) Alternate I (JAN 2004) of 52.225-3.

___ (iii) Alternate II (JAN 2004) of 52.225-3.

___ (25) 52.225-5, Trade Agreements (Jan 2005) (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

_X_ (26) 52.225-13, Restrictions on Certain Foreign Purchases (OCT 2003) (E.o.s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of Treasury).

___ (27) 52.225-15, Sanctioned European Union Country End Products (FEB 2000) (E.O. 12849).

___ (28) 52.225-16, Sanctioned European Union Country Services (FEB 2000) (E.O. 12849).

___ (29) 52.232-29, Terms for Financing of Purchases of Commercial Items (FEB 2002) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

___ (30) 52.232-30, Installment Payments for Commercial Items (OCT 1995) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

___ (31) 52.232-33, Payment by Electronic Funds Transfer--Central Contractor Registration (OCT 2003) (31 U.S.C. 3332).

___ (32) 52.232-34, Payment by Electronic Funds Transfer--Other than Central Contractor Registration (MAY 1999) (31 U.S.C. 3332).

___ (33) 52.232-36, Payment by Third Party (MAY 1999) (31 U.S.C. 3332).

___ (34) 52.239-1, Privacy or Security Safeguards (AUG 1996) (5 U.S.C. 552a).

___ (35)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (APR 2003) (46 U.S.C. Appx 1241 and 10 U.S.C. 2631).

___ (ii) Alternate I (APR 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items: [Contracting Officer check as appropriate.]

___ (1) 52.222-41, Service Contract Act of 1965, as Amended (MAY 1989) (41 U.S.C. 351, et seq.).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (MAY 1989) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act--Price Adjustment (Multiple Year and Option Contracts) (MAY 1989) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act--Price Adjustment (February 2002) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreements (CBA) (May 1989) (41 U.S.C. 351, et seq.).

(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records--Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) (1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in paragraphs (i) through (vi) of this paragraph in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause--

(i) 52.219-8, Utilization of Small Business Concerns (May 2004) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $500,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(ii) 52.222-26, Equal Opportunity (April 2002) (E.O. 11246).

(iii) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (December 2001) (38 U.S.C. 4212).

(iv) 52.222-36, Affirmative Action for Workers with Disabilities (June 1998) (29 U.S.C. 793).

(v) 52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or Fees (DEC 2004) (E.O. 13201).

(vi) 52.222-41, Service Contract Act of 1965, as Amended (May 1989), flow down required for all subcontracts subject to the Service Contract Act of 1965 (41 U.S.C. 351, et seq.).

(vii) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (April 2003) (46 U.S.C. Appx 1241 and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the contractor May include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of clause)

52.216-18    ORDERING. (OCT 1995)

(a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or

task orders by the individuals or activities designated in the Schedule. Such orders may be issued from 1 April 2006 through 31 March 2011.

(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

(c) If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally, by facsimile, or by electronic commerce methods only if authorized in the Schedule.

(End of clause)

## 52.216-19    ORDER LIMITATIONS.  (OCT 1995)

(a) Minimum order.  When the Government requires supplies or services covered by this contract in an amount of less than 1 EA, the Government is not obligated to purchase, nor is the Contractor obligated to furnish, those supplies or services under the contract.

(b) Maximum order.  The Contractor is not obligated to honor:

(1) Any order for a single item in excess of 90EA;

(2) Any order for a combination of items in excess of 90EA; or

(3) A series of orders from the same ordering office within 30 days that together call for quantities exceeding the limitation in subparagraph (1) or (2) above.

(c) If this is a requirements contract (i.e., includes the Requirements clause at subsection 52.216-21 of the Federal Acquisition Regulation (FAR)), the Government is not required to order a part of any one requirement from the Contractor if that requirement exceeds the maximum-order limitations in paragraph (b) above.

(d) Notwithstanding paragraphs (b) and (c) above, the Contractor shall honor any order exceeding the maximum order limitations in paragraph (b), unless that order (or orders) is returned to the ordering office within 10 days after issuance, with written notice stating the Contractor's intent not to ship the item (or items) called for and the reasons. Upon receiving this notice, the Government may acquire the supplies or services from another source.

(End of clause)

## 52.216-22    INDEFINITE QUANTITY.  (OCT 1995)

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule.  The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause.  The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum".  The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum".  The Government has established the following minimum and maximum quantity for the life of the contract:

(i)    Minimum: 50 vehicles
(ii)   Maximum: 2,000 vehicles

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after 31 March 2011.

(End of clause)

## TASK ORDER PROCEDURES

(a) The Government intends to award multiple IDIQ contracts. The top three highest rated proposals offering the best value may receive individual contracts. However, if only one or two proposals offers the best value, the Government will only award to one or two proposals.

(b) If more than one contract is awarded the task orders will be competed among these two or three contracts and will be given to the contractor who has the lowest price and/or can deliver within the specified delivery time.

(c) The contractor agrees to locally have available a minimum of 10 vehicles at the subcontractor, No-Lemon's location. If the contractor receives a task order for the maximum quantity, 90EA, the contractor agrees to supply the quantity within 2 weeks with no increase in price regardless if the vehicles were purchased by the local market or directly from their distributor.

## CLAUSES INCORPORATED BY FULL TEXT

### 52.217-8    OPTION TO EXTEND SERVICES (NOV 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 30 days.

(End of clause)

### 52.217-9    OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days the period of time within which the Contracting Officer may exercise the option); provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 10 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 5 years.

(End of clause)

52.229-6   TAXES--FOREIGN FIXED-PRICE CONTRACTS (JUN 2003)

(a) To the extent that this contract provides for furnishing supplies or performing services outside the United States and its outlying areas, this clause applies in lieu of any Federal, State, and local taxes clause of the contract.

(b) Definitions. As used in this clause--

"Contract date," means the date set for bid opening or, if this is a negotiated contract or a modification, the effective date of this contract or modification.

Country concerned means any country, other than the United States and its outlying areas, in which expenditures under this contract are made.

"Tax" and "taxes," include fees and charges for doing business that are levied by the government of the country concerned or by its political subdivisions.

"All applicable taxes and duties," means all taxes and duties, in effect on the contract date, that the taxing authority is imposing and collecting on the transactions or property covered by this contract, pursuant to written ruling or regulation in effect on the contract date.

"After-imposed tax," means any new or increased tax or duty, or tax that was exempted or excluded on the contract date but whose exemption was later revoked or reduced during the contract period, other than excepted tax, on the transactions or property covered by this contract that the Contractor is required to pay or bear as the result of legislative, judicial, or administrative action taking effect after the contract date.

"After-relieved tax," means any amount of tax or duty, other than an excepted tax, that would otherwise have been payable on the transactions or property covered by this contract, but which the Contractor is not required to pay or bear, or for which the Contractor obtains a refund, as the result of legislative, judicial, or administrative action taking effect after the contract date.

"Excepted tax," means social security or other employment taxes, net income and franchise taxes, excess profits taxes, capital stock taxes, transportation taxes, unemployment compensation taxes, and property taxes. "Excepted tax" does not include gross income taxes levied on or measured by sales or receipts from sales, property taxes assessed on completed supplies covered by this contract, or any tax assessed on the Contractor's possession of, interest in, or use of property, title to which is in the U.S. Government.

(c) Unless otherwise provided in this contract, the contract price includes all applicable taxes and duties, except taxes and duties that the Government of the United States and the government of the country concerned have agreed shall not be applicable to expenditures in such country by or on behalf of the United States.

(d) The contract price shall be increased by the amount of any after-imposed tax or of any tax or duty specifically excluded from the contract price by a provision of this contract that the Contractor is required to pay or bear, including any interest or penalty, if the Contractor states in writing that the contract price does not include any contingency for such tax and if liability for such tax, interest, or penalty was not incurred through the Contractor's fault, negligence, or failure to follow instructions of the Contracting Officer or to comply with the provisions of paragraph (i) below.

(e) The contract price shall be decreased by the amount of any after-relieved tax, including any interest or penalty. The Government of the United States shall be entitled to interest received by the Contractor incident to a refund of taxes to the extent that such interest was earned after the Contractor was paid by the Government of the United States for such taxes. The Government of the United States shall be entitled to repayment of any penalty refunded to the Contractor to the extent that the penalty was paid by the Government.

(f) The contract price shall be decreased by the amount of any tax or duty, other than an excepted tax, that was included in the contract and that the Contractor is required to pay or bear, or does not obtain a refund of, through the Contractor's fault, negligence, or failure to follow instructions of the Contracting Officer or to comply with the provisions of paragraph (i) below.

(g) No adjustment shall be made in the contract price under this clause unless the amount of the adjustment exceeds $250.

(h) If the Contractor obtains a reduction in tax liability under the United States Internal Revenue Code (Title 26, U.S. Code) because of the payment of any tax or duty that either was included in the contract price or was the basis of an increase in the contract price, the amount of the reduction shall be paid or credited to the Government of the United States as the Contracting Officer directs.

(i) The Contractor shall take all reasonable action to obtain exemption from or refund of any taxes or duties, including interest or penalty, from which the United States Government, the Contractor, any subcontractor, or the transactions or property covered by this contract are exempt under the laws of the country concerned or its political subdivisions or which the governments of the United States and of the country concerned have agreed shall not be applicable to expenditures in such country by or on behalf of the United States.

(j) The Contractor shall promptly notify the Contracting Officer of all matters relating to taxes or duties that reasonably may be expected to result in either an increase or decrease in the contract price and shall take appropriate action as the Contracting Officer directs. The contract price shall be equitably adjusted to cover the costs of action taken by the Contractor at the direction of the Contracting Officer, including any interest, penalty, and reasonable attorneys' fees.

(End of clause)

52.232-23    ASSIGNMENT OF CLAIMS (JAN 1986) - ALTERNATE I (APR 1984)

(a) The Contractor, under the Assignment of Claims Act, as amended, 31 U.S.C. 3727, 41 U.S.C. 15 (hereafter referred to as "the Act"), may assign its rights to be paid amounts due or to become due as a result of the performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency. The assignee under such an assignment may thereafter further assign or reassign its right under the original assignment to any type of financing institution described in the preceding sentence. Unless otherwise stated in this contract, payments to an assignee of any amounts due or to become due under this contract shall not, to the extent specified in the Act, be subject to reduction or setoff.

(b) Any assignment or reassignment authorized under the Act and this clause shall cover all unpaid amounts payable under this contract, and shall not be made to more than one party, except that an assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract.

(c) The Contractor shall not furnish or disclose to any assignee under this contract any classified document (including this contract) or information related to work under this contract until the Contracting Officer authorizes such action in writing.

(End of clause)

52.246-4    INSPECTION OF SERVICES--FIXED-PRICE (AUG 1996)

(a) Definitions. "Services," as used in this clause, includes services performed, workmanship, and material furnished or utilized in the performance of services.

(b) The Contractor shall provide and maintain an inspection system acceptable to the Government covering the services under this contract. Complete records of all inspection work performed by the Contractor shall be maintained and made available to the Government during contract performance and for as long afterwards as the contract requires.

(c) The Government has the right to inspect and test all services called for by the contract, to the extent practicable at all times and places during the term of the contract. The Government shall perform inspections and tests in a manner that will not unduly delay the work.

(d) If the Government performs inspections or tests on the premises of the Contractor or a subcontractor, the Contractor shall furnish, and shall require subcontractors to furnish, at no increase in contract price, all reasonable facilities and assistance for the safe and convenient performance of these duties.

(e) If any of the services do not conform with contract requirements, the Government may require the Contractor to perform the services again in conformity with contract requirements, at no increase in contract amount. When the defects in services cannot be corrected by reperformance, the Government may (1) require the Contractor to take necessary action to ensure that future performance conforms to contract requirements and (2) reduce the contract price to reflect the reduced value of the services performed.

(f) If the Contractor fails to promptly perform the services again or to take the necessary action to ensure future performance in conformity with contract requirements, the Government may (1) by contract or otherwise, perform the services and charge to the Contractor any cost incurred by the Government that is directly related to the performance of such service or (2) terminate the contract for default.

(End of clause)


52.246-20    WARRANTY OF SERVICES (MAY 2001)

(a)   Definition.

"Acceptance," as used in this clause, means the act of an authorized representative of the Government by which the Government assumes for itself, or as an agent of another, ownership of existing and identified supplies, or approves specific services, as partial or complete performance of the contract.

(b) Notwithstanding inspection and acceptance by the Government or any provision concerning the conclusiveness thereof, the Contractor warrants that all services performed under this contract will, at the time of acceptance, be free from defects in workmanship and conform to the requirements of this contract. The Contracting Officer shall give written notice of any defect or nonconformance to the Contractor immediately upon discovery. This notice shall state either (1) that the Contractor shall correct or reperform any defective or nonconforming services, or (2) that the Government does not require correction or reperformance.

(c) If the Contractor is required to correct or reperform, it shall be at no cost to the Government, and any services corrected or reperformed by the Contractor shall be subject to this clause to the same extent as work initially performed. If the Contractor fails or refuses to correct or reperform, the Contracting Officer may, by contract or

otherwise, correct or replace with similar services and charge to the Contractor the cost occasioned to the Government thereby, or make an equitable adjustment in the contract price.

(d) If the Government does not require correction or reperformance, the Contracting Officer shall make an equitable adjustment in the contract price.

(End of clause)

52.252-2    CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://farsite.hill.af.mil/

(End of clause)

252.201-7000    CONTRACTING OFFICER'S REPRESENTATIVE (DEC 1991)

(a) "Definition. Contracting officer's representative" means an individual designated in accordance with subsection 201.602-2 of the Defense Federal Acquisition Regulation Supplement and authorized in writing by the contracting officer to perform specific technical or administrative functions.

(b) If the Contracting Officer designates a contracting officer's representative (COR), the Contractor will receive a copy of the written designation. It will specify the extent of the COR's authority to act on behalf of the contracting officer. The COR is not authorized to make any commitments or changes that will affect price, quality, quantity, delivery, or any other term or condition of the contract.

(End of clause)

252.212-7001    CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS APPLICABLE TO DEFENSE ACQUISITIONS OF COMMERCIAL ITEMS (JAN 2005)

(a) The Contractor agrees to comply with the following Federal Acquisition Regulation (FAR) clause which, if checked, is included in this contract by reference to implement a provision of law applicable to acquisitions of commercial items or components.

__X_ 52.203-3  Gratuities (APR 1984) (10 U.S.C. 2207).

(b) The Contractor agrees to comply with any clause that is checked on the following list of Defense FAR Supplement clauses which, if checked, is included in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items or components.

____252.205-7000 Provision of Information to Cooperative Agreement Holders (DEC 1991) (10 U.S.C. 2416).

_____252.219-7003 Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan (DoD Contracts) (APR 1996) (15 U.S.C. 637).

_____ 252.219-7004 Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan (Test Program) (JUN 1997) (15 U.S.C. 637 note).

_____ 252.225-7001 Buy American Act and Balance of Payment Program (APR 2003) (41 U.S.C. 10a-10d, E.O. 10582).

_____ 252.225-7012 Preference for Certain Domestic Commodities (JUN 2004) (10.U.S.C. 2533a).

_____ 252.225-7014 Preference for Domestic Specialty Metals (APR 2003) (10 U.S.C. 2533a).

_____ 252.225-7015 Preference for Domestic Hand or Measuring Tools (APR 2003) (10 U.S.C. 2533a).

_____ 252.225-7016 Restriction on Acquisition of Ball and Roller Bearings (MAY 2004) (_____Alternate I) (APR 2003) (10 U.S.C. 2534 and Section 8099 of Public Law 104-61 and similar sections in subsequent DoD appropriations acts).

_____ 252.225-7021 Trade Agreements (JAN 2005) (19 U.S.C. 2501-2518 and 19 U.S.C. 3301 note).

_____ 252.225-7027 Restriction on Contingent Fees for Foreign Military Sales (APR 2003) (22 U.S.C. 2779).

_____ 252.225-7028 Exclusionary Policies and Practices of Foreign Governments (APR 2003) (22 U.S.C. 2755).

_____ 252.225-7036 Buy American Act--North American Free Trade Agreement Implementation Act--Balance of Payment Program (JAN 2005) (_____Alternate I) (JAN 2005) (41 U.S.C. 10a-10d and 19 U.S.C. 3301 note).

_____ 252.225-7038 Restriction on Acquisition of Air Circuit Breakers (APR 2003) (10 U.S.C. 2534(a)(3)).

_____ 252.226-7001 Utilization of Indian Organizations, Indian-Owned Economic Enterprises, and Native Hawaiian Small Business Concerns (SEP 2004) (Section 8021 of Public Law 107-248 and similar sections in subsequent DoD appropriations acts).

_____ 252.227-7015 Technical Data--Commercial Items (NOV 1995) (10 U.S.C. 2320).

_____ 252.227-7037 Validation of Restrictive Markings on Technical Data (SEP 1999) (10 U.S.C. 2321).

_____ 252.232-7003 Electronic Submission of Payment Requests (JAN 2004) (10 U.S.C. 2227).

_____ 252.243-7002 Requests for Equitable Adjustment (MAR 1998) (10 U.S.C. 2410).

_____ 252.247-7023 Transportation of Supplies by Sea (MAY 2002) (_____Alternate I) (MAR 2000) (_____Alternate II) (MAR 2000) (_____Alternate III) (May 2002).

_____252.247-7024 Notification of Transportation of Supplies by Sea (MAR 2000) (10 U.S.C. 2631).

(c) In addition to the clauses listed in paragraph (e) of the Contract Terms and Conditions Required to Implement Statutes or Executive Orders--Commercial Items clause of this contract (Federal Acquisition Regulation 52.212-5), the Contractor shall include the terms of the following clauses, if applicable, in subcontracts for commercial items or commercial components, awarded at any tier under this contract:

252.225-7014 Preference for Domestic Specialty Metals, Alternate I (APR 2003) (10 U.S.C. 2533a).

**EXHIBIT B**

FOB: Destination

STATEMENT OF WORK

# STATEMENT OF WORK (SOW)

# FOR

# INDEFINATE DELIVERY INDEFINATE QUANTITY (IDIQ)
# CAMP EGGERS AND CAMP PHOENIX
# VEHICLE LEASE



**REVISED: 18 December 2005**

## SECTION 1, DESCRIPTION OF SERVICE.

**1.1 Scope of Work.** The requirement is for vehicle leases for Camp Eggers and Camp Phoenix.    The contractor(s) must provide vehicles within two weeks from receiving the task order.  The vehicles must be fully mission capable in accordance with Section 2, Vehicle Condition and Acceptance of the SOW.  The contractor(s) will only be responsible for scheduled routine maintenance and maintain vehicles under warranty.  The collision repairs and unscheduled maintenance will be performed with a separate contract and possibly under a different contractor(s).  The contractor(s) shall only deliver vehicles called out from the standardized vehicle lease price list.  The negotiated price list will be incorporated into the contract.

## SECTION 2, VEHICLE CONDITION AND ACCEPTANCE.

2.1  Vehicle Condition. All vehicles delivered will be safe and serviceable in accordance with manufacturer's specifications.

2.1.1  Fluids, including fuel, full at initial delivery and after maintenance service.

2.1.2  Have serviceable seatbelts for the driver and passengers.

2.1.3  Have serviceable lights (interior and exterior), windshield wipers, horn, parking brake.

2.1.4  Have tires with a minimum of 5mm tread depth, including spare and vehicle jack to replace it.

2.1.5  Have window glass and mirrors, rear and side view, with no visible cracks

2.1.6  Manufacturer's Operator's Manual in glove compartment.

2.1.7  Heating and air conditioning.

2.1.8  Both the exterior and the interior of the vehicles must be clean and free of excessive soil, rust, and damage.

2.1.9  Left hand steering wheel (must be originally from the manufacture).

**2.2  Vehicle Acceptance.**
The government will only be liable for future damages caused by negligence of U.S. personnel.  A joint contractor/government inspection shall be performed on all vehicles and equipment before acceptance. The inspection shall be documented on Attachment A, "Vehicle Inspection, Initial Delivery" checklist with photos (if applicable) and both parties will retain a copy.  A copy of the warranty will be provided upon delivery of the vehicle. All discrepancies must be fixed prior to final acceptance. If the contractor(s) fails to replace the vehicle or correct the defects as required by the Contracting Officer, the Government may:

2.2.1  By contract or otherwise, correct the defect or arrange for the lease of a similar vehicle and shall charge or set off against the contractor(s) any excess costs occasioned thereby; or

2.2.2  Terminate the contract.

## SECTION 3, SCHEDULED MAINTENANCE.

3.1  The contractor(s) is responsible for scheduled maintenance and unscheduled maintenance for those parts covered under the manufacturer's warranty.  The contractor(s) shall perform scheduled maintenance at a facility he designates at least every 90 days.  He will provide all parts, labor, and expertise necessary to complete required maintenance tasks.  Parts include those items that must be replaced due to fair wear

W91B4M-06-D-0001
0002
Page 6 of 14

and tear such as windshield wipers, tires, headlamps, filters, fluids, and lubricants. The contractor(s) is responsible for maintaining the schedule and notifying the COR a minimum of 1 week in advance of scheduled maintenance of the leased vehicle. Scheduled maintenance will be documented and signed by a site representative, a copy will be turned into the COR.

3.2  When performing the vehicle inspection and diagnostic checks, the mechanic must repair or service the vehicle to a safe and serviceable condition if it is part of routine maintenance. If it is not part of routine maintenance, the contractor(s) must stop all work and contact the COR. The COR will coordinate with the contractor(s) who performs unscheduled maintenance. Before accepting the serviced vehicle, the fuel tank must be full. The cost of the scheduled maintenance will be included in the vehicle lease cost and therefore, the contractor(s) will not bill the Government for it separately. The inspection and service must include, at the minimum, the Attachment B, "Vehicle Maintenance Checklist".

3.3  If a vehicle repair is more than 72 hours, the leasing agent will replace the disabled vehicle with a like vehicle at no additional cost to the Government.


## SECTION 4, QUALITY CONTROL PLAN.

4.1 Quality Control. The contractor(s) shall employ his commercial quality control procedures in the performance of the requirements of this contract to ensure the vehicles are maintained in accordance with the manufacture's service schedule and best industry practices.

4.2 Quality Assurance. The government will periodically evaluate the contractor(s)' performance by appointing a representative(s) to monitor the performance. The Quality Assurance Personnel (QAP) will evaluate the contractor(s)' performance through monthly and random on-site inspections of the contractor(s)' quality control program and an analysis of the compliance with the Service Delivery Schedule as contained in this SOW. The government may inspect each task as completed or increase the number of quality control inspections if called for by repeated failures discovered during quality control inspections or repeated customer complaints. Likewise, the government may decrease the number of quality control inspections if performance dictates.

4.3  Government Remedies. The contracting officer shall follow FAR 52.212.4, Contract Terms and Conditions-Commercial Items (October 2003), for contractor(s)' failure to perform satisfactory services or failure to correct non-conforming services.


## SECTION 5, SERVICE DELIVERY SUMMARY (SDS).

### 5.1 Performance Objective
The SDS cites the key performance objectives (services) and the associated thresholds that must be attained, over which the Government will exercise surveillance. The absence of any contract requirement from the SDS shall not detract from its enforceability nor limit the rights or remedies of the Government under any other provision of the contract.

| Performance Objective | SOW Reference | Performance Threshold | Method of Surveillance |
|---|---|---|---|
| 1. Service the vehicles to safe and serviceable conditions IAW manufacturer's specifications and Attachment B | 3 | No more than 5% of the vehicles repaired experience repeat maintenance for the same repair action. | 90 Day Inspection and 5 valid customer complaints |

| 2. Provide accurate documentation, as requested, on services performed to the COR | 7.1 | 95% of the time. | Random Inspections |
|---|---|---|---|
| 3. Deliver requested vehicles within two weeks | 1.2.1 | No more than 5% of the delivery is late (longer than two weeks) within one month. | Monthly Inspections |
| 4. Quality Control Plan | 4 | No more than 5% vehicles returned for defect within one month. | Monthly Inspections |

## SECTION 6, RETURNING, REIMBURSEMENT AND REPLACEMENT.

**6.1 Returning.** Any damages the U.S. Government is responsible for will be repaired to the condition received before returning the vehicle back to the leasing agent at a fair and reasonable price. The U.S. Government is only liable for damages and repairs if the vehicle was in the possession of a government personnel. The Government is not responsible for damages accepted on the "Initial Delivery and Acceptance Inspection Checklist" (Attachment A), as these damages existed before the U.S. Government received the vehicle. A joint contractor/government inspection shall be performed on the vehicle. The inspection shall be documented on Attachment C, "Vehicle Inspection, Returned to Leasing Agent" checklist with photos (if applicable) and both parties will retain a copy.

**6.2 Reimbursement.** If a vehicle has been damaged in the Government's possession and the cost of vehicle maintenance and/or collision repair is 75% or more than the actual value of the vehicle, the contractor(s) will be reimbursed the actual value of the vehicle minus depreciation. The vehicle's actual value may be determined by the Kelly Blue Book via www.kbb.com or based on the purchase receipt minus depreciation, whichever is the lowest. The Government will consider the Afghanistan conditions when depreciating the value of the vehicle. The contractor(s) will be required to provide the Government the original purchased invoice for the damaged vehicle. Once reimbursed, the damaged vehicle will be the property of the U.S. Government. The damage may be caused by act of terrorism, war, or an accident, but, not through normal wear and tear.

**6.3 Replacement.** Vehicles will be replaced or the price will be reduced for the following reasons:

**6.3.1 KM Exceeds Tier Category.**

**6.3.1.1** For tier 1, if the vehicle's KM exceeds the tiers threshold of 20,000KM and therefore is equal to a tier 2 characteristics, the vehicle will be replaced with another tier 1, of the same model, or the price will be reduced to tier 2 price. If the vehicle is reduced to a tier 2 and the vehicle exceeds its threshold of 40,000KM the vehicle shall be replaced with a tier 1 vehicle.

**6.3.1.2** For tier 2, if the vehicle's KM exceeds the tiers threshold of 40,000KM, the vehicle will be replaced with another tier 2 vehicle, of the same model.

**6.3.2 A Vehicle is a "Lemon".** If a leased vehicle is a "lemon", the Government is entitled to a replacement vehicle and refund of the unfixable vehicle maintenance repair cost, if incurred. For a vehicle to be classified as a "lemon" the car must (1) have substantial defect covered by the warranty within 1 year and/ or (2) not be fixed after a reasonable number of repair attempts. A "substantial defect" is a problem that impairs the vehicle's use, value, or safety, such as faulty brakes or steering. Substantial defects do not include operator's abuse nor minor defects, such as loose radio knobs and door handles. The leasing agent is given reasonable number of attempts to repair the vehicle at no charge to the Government before being required to replace the defective vehicle with a serviceable vehicle of the same

type. If the defect is a serious safety defect (for example, involving brakes or steering), it must be repaired after one attempt or be replaced. If the defect is not a serious safety defect, it must be fixed after two attempts. If the vehicle is in the shop for more than 30 days in a one-year period to fix two substantial defects it is classified as a "lemon" and it will be replaced with same vehicle type at no additional cost to the Government.

## SECTION 7, GOVERNMENT FURNISHED ITEMS AND SERVICES.

**7.1 Fuel.** The government is responsible for supplying the fuel used in the vehicles after delivery. (The contractor(s) is responsible to fill the fuel tank before initial delivery and after every scheduled maintenance.)

## SECTION 8, CONTRACTOR(S) FURNISHED ITEMS AND SERVICES.

**8.1 Records.** The contractor(s) shall maintain records of transactions with the U.S. Government and, upon request, make such records available to properly designated contract representatives within a reasonable period of time.

**8.2 Point of Contact.** The contractor(s) will provide points of contact within his company to coordinate with the Contracting Officer Representative (COR) on issues concerning rental vehicles. Name (s), business address, cell phone numbers, e-mail address, and hours of operation are the minimum information requirements. Arrangements for contacting the contractor's points of contact after normal business hours should also be made available.

**8.3 Invoicing.** The contractor(s) will invoice monthly for the vehicle lease. The invoice will be submitted to the COR no later than the last day of the month.

**8.4 Custom Taxes.** The contractor(s) will be responsible for paying customs tax since the U.S. Government is only leasing the vehicle. The exemption from custom's tax only applies if the U.S. Government was buying the vehicle.

## 9. GENERAL.

While under the Government's possession, the Government will be allowed to make minor physical adjustments to the lease vehicle for safety and security. Before the vehicle is returned back to the contractor the Government is responsible for repairing damages caused by such modifications.

W91B4M-06-D-0001
0002
Page 9 of 14

ATTACHMENT A

# VEHICLE INSPECTION
## INITIAL DELIVERY and ACCEPTANCE

| Contract Number: | | | | Date Received: | |
|---|---|---|---|---|---|
| Company Name: | | | | Period of Performance: | |
| Frame (VIIN) Number: | | | | KM: | |
| | | | | Condition: | |
| Vehicle Type | | YR | Color | Warranty Exp Date: | |

| INSPECTION: INTERIOR AND EXTERIOR (annotate all acceptable damages) | Government Accepts | Comments |
|---|---|---|
| 1. Top of vehicle | | |
| 2. Front of vehicle | | |
| 3. Rear of vehicle | | |
| 4. Right side of vehicle | | |
| 5. Left side of vehicle | | |
| 6. Engine | | |
| 7. Interior | | |

The undersigned parties have acknowledged and accepted the above damages (if any). After the undersigned date, the U.S. Government is only liable for future damages and repairs in accordance with Statement Of Work (SOW) para 6.1, Returning. In accordance with the SOW, the following applies:

**SECTION 2, VEHICLE CONDITION AND ACCEPTANCE.**

2.1 Vehicle Condition. All vehicles delivered will be safe and serviceable in accordance with manufacturer's specifications.

2.1.1 Fluids, including fuel, full at initial delivery and after maintenance service.

2.1.2 Have serviceable seatbelts for the driver and passengers.

2.1.3 Have serviceable lights (interior and exterior), windshield wipers, horn, parking brake.

2.1.4 Have tires with a minimum of 5mm tread depth, including spare and vehicle jack to replace it.

2.1.5 Have window glass and mirrors, rear and side view, with no visible cracks

2.1.6 Manufacturer's Operator's Manual in glove compartment.

2.1.7 Heating and air conditioning.

2.1.8 Both the exterior and the interior of the vehicles must be clean and free of excessive soil, rust, and damage.

2.1.9 Left hand steering wheel (must be originally from the manufacture).

**2.2 Vehicle Acceptance.**
The government will only be liable for future damages caused by negligence of U.S. personnel. A joint contractor/government inspection shall be performed on all vehicles and equipment before acceptance. The inspection shall be documented on Attachment A, "Vehicle Inspection, Initial Delivery" checklist with photos (if applicable) and both parties will retain a copy. A copy of the warranty will be provided upon delivery of the vehicle. All discrepancies must be fixed prior to final acceptance. If the contractor(s) fails to replace the vehicle or correct the defects as required by the Contracting Officer, the Government may:

2.2.1 By contract or otherwise, correct the defect or arrange for the lease of a similar vehicle and shall charge or set off against the Contractor(s) any excess costs occasioned thereby; or

2.2.2 Terminate the contract.

**6.1 Returning.** Any damages the U.S. Government is responsible for will be repaired to the condition received before returning the vehicle back to the leasing agent at a fair and reasonable price. The U.S. Government is only liable for damages and repairs if the vehicle was in the possession of a government personnel. The Government is not responsible for damages accepted on the "Initial Delivery and Acceptance Inspection Checklist" (Attachment A), as these damages existed before the U.S. Government received the vehicle. A joint contractor/government inspection shall be performed on the vehicle. The inspection shall be documented on Attachment C, "Vehicle Inspection, Returned to Leasing Agent" checklist with photos (if applicable) and both parties will retain a copy.

**Government's Signature/Date:**_____/_____ **Contractor's Signature/Date:** _____/_____

W91B4M-06-D-0001
0002
Page 11 of 14

ATTACHMENT B

# VEHICLE MAINTENANCE CHECKLIST
## SCHEDULED (every 90 Days)

| Contract Number: | | Serviced KM/Date: | | |
|---|---|---|---|---|
| Company Name: | | Next Service KM/Date: | | |
| Frame (VIIN) Number: | | | | |
| Vehicle Type: | YR     Color | | | |

| INSPECT AND SERVICE | YES | NO | Comments |
|---|---|---|---|
| 1.  All lights, including clearance lights, front turning signals, parking lights, high beams, and low beams | | | |
| 2. Fluid leaks – oil, fuel, air, water, A/C refrigerant, coolant, hydraulic, brake and any other fluids | | | |
| 3. Radiator level and if required, fill to the top of the line | | | |
| 4.  Change oil and refill new oil to correct level | | | |
| 5.  Change oil, fuel, and air filters | | | |
| 6.  Windshield wiper fluids are full and replace worn wipers | | | |
| 7.  Battery fluid full | | | |
| 8.  Battery connectors have no corrosion and are tightly connected | | | |
| 9.  All belts and hoses, replace if there is a crack or leaks | | | |
| 10. Bare or exposed wires are safely covered | | | |
| 11.  Brake and transmission fluids and, if required, properly fill full | | | |
| 12.  Wheels and tires, to include rotation; replace if worn | | | |
| 13.  Starting and charging systems | | | |
| 14.  Steering linkage components | | | |
| 15.  U-joints and driveline | | | |
| 16.  Suspension system | | | |

W91B4M-06-D-0001
0002
Page 12 of 14

| | | | |
|---|---|---|---|
| 17.  Brake and parking system | | | |
| 18.  Winterization (effective December - March) | | | |

**In accordance with the Statement of Work:**

**SECTION 3, SCHEDULED MAINTENANCE.**

3.1  The contractor(s) is responsible for scheduled maintenance and unscheduled maintenance for those parts covered under the manufacturer's warranty.  The contractor(s) shall perform scheduled maintenance at a facility he designates at least every 90 days.  He will provide all parts, labor, and expertise necessary to complete required maintenance tasks.  Parts include those items that must be replaced due to fair wear and tear such as windshield wipers, tires, headlamps, filters, fluids, and lubricants.  The contractor(s) is responsible for maintaining the schedule and notifying the COR a minimum of 1 week in advance of scheduled maintenance of the leased vehicle.  Scheduled maintenance will be documented and signed by a site representative, a copy will be turned into the COR.

3.2  When performing the vehicle inspection and diagnostic checks, the mechanic must repair or service the vehicle to a safe and serviceable condition if it is part of routine maintenance.  If it is not part of routine maintenance, the contractor(s) must stop all work and contact the COR.  The COR will coordinate with the contractor(s) who performs unscheduled maintenance.  Before accepting the serviced vehicle, the fuel tank must be full.  The cost of the scheduled maintenance will be included in the vehicle lease cost and therefore, the contractor(s) will not bill the Government for it separately.  The inspection and service must include, at the minimum, the Attachment B, "Vehicle Maintenance Checklist".

3.3  If a vehicle repair is more than 72 hours, the leasing agent will replace the disabled vehicle with a like vehicle at no additional cost to the Government.

**6.3.2  A Vehicle is a "Lemon".**  If a leased vehicle is a "lemon", the Government is entitled to a replacement vehicle and refund of the unfixable vehicle maintenance repair cost, if incurred.  For a vehicle to be classified as a "lemon" the car must (1) have substantial defect covered by the warranty within 1 year and/ or (2) not be fixed after a reasonable number of repair attempts.  A "substantial defect" is a problem that impairs the vehicle's use, value, or safety, such as faulty brakes or steering.  Substantial defects do not include operator's abuse nor minor defects, such as loose radio knobs and door handles. The leasing agent is given reasonable number of attempts to repair the vehicle at no charge to the Government before being required to replace the defective vehicle with a serviceable vehicle of the same type.  If the defect is a serious safety defect (for example, involving brakes or steering), it must be repaired after one attempt or be replaced.  If the defect is not a serious safety defect, it must be fixed after two attempts.  If the vehicle is in the shop for more than 30 days in a one-year period to fix two substantial defects it is classified as a "lemon" and it will be replaced with same vehicle type at no additional cost to the Government.

Government Signature/Date:_____/_____  Contractor's Signature/Date_____/_____



W91B4M-06-D-0001
0002
Page 13 of 14

ATTACHMENT C

# VEHICLE INSPECTION
# RETURNED TO LEASING AGENT

| Contract Number: | | Date Received: | |
|---|---|---|---|
| Company Name: | | Period of Performance | |
| Frame (VIN) Number | | KM: | |
| | | Condition: | |
| Vehicle Type | YR      Color | Warranty Exp. Date: | |

| INSPECTION: INTERIOR AND EXTERIOR (annotate all damages not recorded on the Initial Delivery Inspection Checklist) | Contractor Accepts | Comments |
|---|---|---|
| 1. Top of vehicle | | |
| 2. Front of vehicle | | |
| 3. Rear of vehicle | | |
| 4. Right side of vehicle | | |
| 5. Left side of vehicle | | |
| 6. Engine | | |
| 7. Interior | | |

**The undersigned parties have acknowledged and accepted the above damages (if any). The following applies in accordance with the Statement of Work:**

## SECTION 6, RETURNING, REIMBURSEMENT AND REPLACEMENT.

**6.1 Returning.** Any damages the U.S. Government is responsible for will be repaired to the condition received before returning the vehicle back to the leasing agent at a fair and reasonable price. The U.S. Government is only liable for damages and repairs if the vehicle was in the possession of a government personnel. The Government is not responsible for damages accepted on the "Initial Delivery and Acceptance Inspection Checklist" (Attachment A), as these damages existed before the U.S. Government received the vehicle. A joint contractor/government inspection shall be performed on the vehicle. The inspection shall be documented on Attachment C, "Vehicle Inspection, Returned to Leasing Agent" checklist with photos (if applicable) and both parties will retain a copy.

**6.2 Reimbursement.** If a vehicle has been damaged in the Government's possession and the cost of vehicle maintenance and/or collision repair is 75% or more than the actual value of the vehicle, the contractor(s) will be reimbursed the actual value of the vehicle minus depreciation. The vehicle's actual value may be determined by the Kelly Blue Book via www.kbb.com or based on the purchase receipt minus depreciation, whichever is the lowest. The Government will consider the Afghanistan conditions when depreciating the value of the vehicle. The contractor(s) will be required to provide the Government the original purchased invoice for the damaged vehicle. Once reimbursed, the damaged vehicle will be the property of the U.S. Government. The damage may be caused by act of terrorism, war, or an accident, but, not through normal wear and tear.

**6.3 Replacement.** Vehicles will be replaced or the price will be reduced for the following reasons:

**6.3.1 KM Exceeds Tier Category.**

**6.3.1.1** For tier 1, if the vehicle's KM exceeds the tiers threshold of 20,000KM and therefore is equal to a tier 2 characteristics, the vehicle will be replaced with another tier 1, of the same model, or the price will be reduced to tier 2 price. If the vehicle is reduced to a tier 2 and the vehicle exceeds its threshold of 40,000KM the vehicle shall be replaced with a tier 1 vehicle.

**6.3.1.2** For tier 2, if the vehicle's KM exceeds the tiers threshold of 40,000KM, the vehicle will be replaced with another tier 2 vehicle, of the same model.

**6.3.2 A Vehicle is a "Lemon".** If a leased vehicle is a "lemon", the Government is entitled to a replacement vehicle and refund of the unfixable vehicle maintenance repair cost, if incurred. For a vehicle to be classified as a "lemon" the car must (1) have substantial defect covered by the warranty within 1 year and/ or (2) not be fixed after a reasonable number of repair attempts. A "substantial defect" is a problem that impairs the vehicle's use, value, or safety, such as faulty brakes or steering. Substantial defects do not include operator's abuse nor minor defects, such as loose radio knobs and door handles. The leasing agent is given reasonable number of attempts to repair the vehicle at no charge to the Government before being required to replace the defective vehicle with a serviceable vehicle of the same type. If the defect is a serious safety defect (for example, involving brakes or steering), it must be repaired after one attempt or be replaced. If the defect is not a serious safety defect, it must be fixed after two attempts. If the vehicle is in the shop for more than 30 days in a one-year period to fix two substantial defects it is classified as a "lemon" and it will be replaced with same vehicle type at no additional cost to the Government.

Government's Signature/ Date:_____/_____  Contractor's Signature/ Date:_____/_____

**EXHIBIT C**

## ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AGREEMENT** (this "Agreement") is made as of April 1, 2006 by and between Overseas Lease Group, Inc., a Delaware corporation with its principal office at 31 Dehart Street, Morristown, NJ 07960-5211 ("Seller") and **KEY GOVERNMENT FINANCE, INC.,** with its principal office at 1000 South McCaslin Blvd. Superior, CO 80027, its successors and assigns ("Purchaser").

## INTRODUCTION:

Seller, and United States Department of Defense (the "User") have entered into that certain Contract (Contract No. W91B4M-06-D-0001), dated as of February 05, 2006 (the "Contract"), pursuant to which Seller has leased to the User, and the User has leased from Seller, the property described therein (the "Property"). Seller desires to sell, and Purchaser is willing to purchase, the Assigned Interest (as hereinafter defined).

**Section 1.    Assignment. NOW, THEREFORE,** in consideration of the covenants, warranties and representations hereinafter set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Purchaser agree as follows: FOR VALUE RECEIVED, including the payment by Purchaser of $460,502.46 due at closing (the "Purchase Price"). Seller does hereby sell, assign, transfer and set over unto Purchaser all of Seller's right, title and interest in and to (but none of its obligations under) the Assigned Interest.

**Section 2.    Assigned Interest.** As used herein, the term "Assigned Interest" shall mean the Contract and all amounts due and to become due under the Contract, including (without limitation) payments, insurance proceeds, and all monies payable or recoverable following a default or non-appropriation by User, and a first priority lien in favor of Purchaser in and to the Property, together with all proceeds (cash and non-cash, including insurance proceeds) of the foregoing and all of Seller's rights and remedies under the Contract , including (without limitation) the right to initiate and conclude any and all proceedings, legal, equitable or otherwise, that Seller otherwise might take, save for this Agreement. As used herein, the term "Contract" shall mean the Contract, together with all documents executed in connection with the Contract, including, without limitation, all documents listed on attached Schedule A.

**Section 3.    Representations and Warranties.** In order to induce Purchaser to enter into this Agreement and to accept the sale of the Assigned Interest, and security interest in the Property, Seller hereby represents and warrants to Purchaser that:

**(a)** the Contract was duly authorized and properly executed and delivered by the Seller and this Agreement was duly authorized and properly executed and delivered by Seller, and each is in full force and effect and represents a valid and enforceable obligation of Seller in accordance with its terms, subject to bankruptcy, insolvency or similar laws then in effect;

**(b)** the number and amount of the unpaid payments due under the Contract as of the date hereof are as stated in Exhibit 1 attached hereto;

**(c)** no security deposit or prepayment of payments has been paid to Seller by the User or any third party in connection with the Contract, and Seller has not granted, and will not grant, to the User any allowance, credit memo, adjustment, or enter into any settlement, modification or amendment of the Contract;

**(d)** attached hereto is a true, correct, and complete copy of the Contract, and the Contract is the sole and entire understanding and agreement between the User and Seller and there are no other agreements between them with respect to the Contract or the Property;

**(e)** all original counterparts of the Contract have been delivered to Purchaser;

**(f)** to the best of Seller's knowledge all of the Property has been accepted by the User in a condition satisfactory to the User in all respects and the Property is in possession of the User and, Seller has no knowledge of any casualty loss with respect to the Property;

**(g)** to the best of Seller's knowledge the Contract is free of any setoffs, counterclaims and defenses of any kind whatsoever;

**(h)** to the best of Seller's knowledge no event of default or event of non-appropriation has occurred and is continuing under the Contract , and no event has occurred which, with the lapse of time or the giving of notice, or both, would constitute an event of default or event of non-appropriation under the Contract;

**(i)** all representations and duties of Seller intended to induce the User to enter into the Contract, whether required by the Contract or otherwise, have been fulfilled and Seller is not in default with respect to any of its obligations under the Contract, nor has any event occurred and continued which with the passing of time or the giving of notice would constitute such a default by Seller;

**(j)** Seller has fully complied with all applicable federal and state laws, rules and regulations and has made all disclosures required by law in connection with the transactions contemplated by the Contract, prior to the consummation of the Contract;

**(k)** to the best of Seller's knowledge after due inquiry, all credit data submitted to Purchaser and all information set forth in the User's application for entry into the Contract is true and correct in all material respects;

(l)  Seller shall use proceeds hereof to pay supplier the purchase price the Property and all taxes required to be paid in connection with the acquisition of the Property, and Seller is the sole owner of and has good and marketable title to the Property and Assigned Interest, free and clear of all liens and encumbrances of any nature whatsoever, other than the interest of the User under the Contract;

(m)  no prohibition exists, in the Contract or otherwise, and no consent of the User or any other party is required (other than consent which has already been provided), to the making of this Assignment;

(n)  Seller has done and shall do nothing and knows of no facts or circumstances which would (i) materially impair the validity or value of the Contract, any rights created thereby, the Property or this Agreement, or (ii) materially impair the ability of Seller to perform its obligations under the Contract or this Agreement;

(o)  all taxes due and payable by Seller as of the date hereof with respect to the Property and Assigned Interest have been, or will be paid;

(p)  this Assignment vest in Purchaser full right, title and interest and legal title of Seller in and to the Assigned Interest, free and clear of all claims, liens, security interests and encumbrances of any kind or character, except the right of User under the Contract, and the same shall be and remain free of all claims, liens, security interests and encumbrances arising through any act or omission of Seller or any person claiming by, through or under it;

(q)  the execution by Seller of this Agreement and of the Contract to which it is a party, and its participation in the transaction specified herein, is in its ordinary course of business and within the scope of its existing corporate authority and Seller has full power and authority to enter into, and has taken all necessary action to authorize the execution and delivery of the Contract and, this Agreement and to perform the terms and conditions hereof and thereof;

(r)  neither the execution and delivery of this Agreement, nor the consummation of the transaction contemplated hereby will conflict with or result in a breach of any of the terms, conditions or provisions of the organizational documents of Seller, or of any law or regulation, order, writ, injunction or decree of any court or government instrumentality, or of any agreement or instrument to which Seller is a party or by which it or to which it or its assets is subject;

(s)  intentionally left blank

(t)  the Contract constitutes a separate instrument of lease, enforceable by Purchaser without regard to other equipment schedules executed pursuant to the Contract.

Seller's representations and warranties under this Section shall be continuing representations and warranties made as of the date of this Agreement and shall survive the assignment of the Assigned Interest to Purchaser.

Section 4.    Intentionally left blank.

Section 5.    Duties of Seller at Closing. Seller shall deliver to Purchaser, unless waived in writing by Purchaser: (a) all original counterparts of the Contract, duly executed by the User thereunder, and the completion, installation or acceptance certificate by whatever name executed by such User with respect to the Property leased under the Contract; (b) a duly executed notice of assignment; (c) such other documents and certificates as Purchaser may reasonably request; and (i) such documents and instruments (if any) as reasonably may be required by Purchaser to effect the grant of security interest by Seller to Purchaser in the Property and assignment by Seller to Purchaser of any warranties solely to the extent applicable to the Property.

Section 6. Seller's Obligations Under the Contract. Purchaser shall have all of the rights of the Seller under the Contract, but none of Seller's obligations thereunder. This Agreement (and the assignment of such rights) shall not relieve Seller of any of its obligations under the Contract and Seller shall continue to perform all such obligations. Purchaser shall not be obligated to assume, and by its acceptance of this assignment shall not be deemed to have assumed, any of Seller's obligations under the Contract.

Section 7.    Indemnification. Seller hereby agrees to indemnify and save Purchaser harmless from and against any and all costs, losses, expenses (including attorneys' fees), damages, claims, demands, actions, causes of actions and judgments of any nature arising out of, or resulting from, Seller's breach of the covenants, representations and warranties contained in this Agreement. Purchaser will indemnify and save Seller harmless from and against any and all costs, losses, expenses (including attorneys' fees), damages, claims, demands, actions, causes of actions and judgments of any nature arising out of, or resulting from, Purchaser's actions or failure to act in connection with the Assigned Interests. The indemnity set forth in this Section shall survive the expiration or earlier termination of this Agreement or the Contract with respect to acts or events occurring or alleged to have occurred prior to such expiration or early termination.

Section 8.    Covenants and Agreements. Seller hereby covenants and agrees with Purchaser as follows:

(a)  Purchaser may endorse Seller's name on any remittances received from the User with respect to the Contract and/or the Property.

(b)  Seller shall pay or cause to be paid by the User all personal property taxes, including tangible and intangible personal property, license, privilege, documentary, sales and other like taxes or charges or taxes in lieu thereof, applicable to any of the transactions contemplated by this Agreement, and which have been imposed, assessed or accrued at or prior to the time of assignment against the Property, this Agreement, the Contract or Purchaser, except for taxes measured or imposed on the net income of Purchaser.

(c)  Seller shall, from time to time at the request of Purchaser, execute and deliver such further acknowledgments, agreements and instruments of assignment, transfer and assurance, and do all such further acts and things as may be necessary or appropriate in the reasonable opinion of Purchaser to give effect to the provisions hereof and to more perfectly confirm the rights, titles and interests hereby assigned and transferred to Purchaser.

(d)  Seller shall notify Purchaser promptly upon obtaining knowledge of any default in the performance of the User's obligation under the Contract, including, without limitation, the payment of sums due under the Contract.

(e)  Seller will not, without Purchaser's prior written consent: solicit or accept collection of any installment payments due under the Contract; modify, amend or terminate the Contract; waive any of Purchaser's rights thereunder; or take any action which impairs the rights or interest of Purchaser with respect to the Contract.

(f)  If any payments under the Contract are made to Seller after the effective date of this Agreement, Seller agrees to promptly transmit such payment(s) to Purchaser in the same form as they are received, except that Seller will endorse, to the order of Purchaser, checks so received which are made payable to it, or otherwise pay such amount to Purchaser.

(g)  Seller shall allow Purchaser and its representatives free access and right of inspection at all times to any Equipment at its location, subject, however, to the rights of the User under the Contract.

(h)  Seller irrevocably constitutes and appoints Purchaser and any present or future officer or agent of Purchaser, or its successors or assigns, as its lawful attorney with full power of substitution and re-substitution, and in the name of Seller or otherwise, to collect and to sue in any court for payments due or to become due under the Contract, to withdraw or settle any claims, suits or proceedings pertaining to or arising out of the Contract, upon such terms as Purchaser in its discretion may deem to be in its best interest, all without notice to or assent of Seller and, further, to take possession and to endorse in the name of Seller any instrument for the payment of money received on account of the payments due under the Contract.

**Section 9.    Miscellaneous.**  This Agreement shall be governed by, and interpreted and enforced under, the internal laws of the State of Utah (without regard to the conflict of laws principles of such state).  All references herein to any agreements shall be to such agreement as amended or modified to the date of reference. The words "herein," "hereof" and "hereunder" shall refer to this Agreement as a whole and not to any particular section or subsection of this Agreement. All notices hereunder shall be in writing and hand delivered, sent by facsimile (with confirmation of receipt) or sent by overnight courier service or by certified mail, addressed to the parties at the address specified above, or to such other address as either party may specify hereunder; and shall be effective upon receipt.

**Section 10.    Entire Agreement; No Assignment.**  This Agreement is the entire agreement between Purchaser and Seller with respect to the subject matter hereof and it may not be supplemented or amended except by a writing, which is signed by both parties. This Agreement shall inure to the benefit of and be binding on Seller and Purchaser, and their respective successors and assigns. Notwithstanding the foregoing, Seller may not assign it rights, or delegate its obligations, under this Agreement without the express prior written consent of Purchaser. Purchaser may assign its rights and obligations hereunder, in whole or in part, at any time.

**Section 11.    Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all such counterparts shall constitute but one and the same instrument.

**Section 12.    Not an Extension of Credit.**  This Agreement constitutes a sale of 100% ownership interest in the Assigned Interest and shall in no way be construed as an extension of credit by Purchaser to Seller. Seller waives and releases any right, title or interest that it may have (whether pursuant to a "cross-collateralization" provision or otherwise) in and to any of the Assigned Interest, and/or the Contract.

**Section 13.    Waiver of Jury Trial.**  THE PARTIES HEREBY UNCONDITIONALLY WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT OR ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF.

**IN WITNESS WHEREOF**, the parties have executed this Assignment Agreement as of the day and year first above written.

Seller: Overseas Lease Group, Inc.

By: _____

Name:  *EG BADCOCK*

Title:  *President*

Purchaser: KEY GOVERNMENT FINANCE, INC.

By: _____

Name: _____

Title: _____

**EXHIBIT 1**

SPECIFICATION OF ASSIGNED SCHEDULE

Executed pursuant to that certain Assignment Agreement dated as of April 1, 2006 (the "Agreement"), by and between Overseas Lease Group, Inc. as Seller, and KEY GOVERNMENT FINANCE, INC. as Purchaser.

This Specification is dated and effective as of the date set forth below and incorporates the terms and conditions of the Agreement.

1. User: United States Department of Defense, under Contract No. W91B4M-06-D-0001-P00001, including all Modifications and Delivery Orders issued under said Contract.

2. Date of Contract: January 19, 2006

3. Total Invoice Cost: $460,502.46. (See Assignment of Proceeds Letter for break-out of payment)

4. Remaining payments due under the Contract: 59 monthly payments in arrears. 1-11 @ $13,896.00; 13-24 @ $13,248.00; 25-36 @ $9,480.00; 37-48 @ $5,910.00; 49-60 @ $5,310.00.

5. Consideration: $460,502.46

Date of Execution: _27 April 2006_

**Seller:**

Overseas Lease Group, Inc.

By: _____

Name: _E G BADCOCK_

Title: _president_

**Purchaser:**

KEY GOVERNMENT FINANCE, INC.

By: _____

Name: _____

Title: _____

**EXHIBIT D**

(i)     Minimum: 50 vehicles
(ii)    Maximum: 2,000 vehicles

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after 31 March 2011.

(End of clause)

TASK ORDER PROCEDURES
(a) The Government intends to award multiple IDIQ contracts. The top three highest rated proposals offering the best value may receive individual contracts. However, if only one or two proposals offers the best value, the Government will only award to one or two proposals.

(b) If more than one contract is awarded the task orders will be competed among these two or three contracts and will be given to the contractor who has the lowest price and/or can deliver within the specified delivery time.

(c) The contractor agrees to locally have available a minimum of 10 vehicles at the subcontractor, No-Lemon's location. If the contractor receives a task order for the maximum quantity, 90EA, the contractor agrees to supply the quantity within 2 weeks with no increase in price regardless if the vehicles were purchased by the local market or directly from their distributor.

CLAUSES INCORPORATED BY FULL TEXT

52.217-8    OPTION TO EXTEND SERVICES (NOV 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 30 days.

(End of clause)

52.217-9    OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days the period of time within which the Contracting Officer may exercise the option); provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 10 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 5 years.

(End of clause)

52.229-6    TAXES--FOREIGN FIXED-PRICE CONTRACTS (JUN 2003)

(a) To the extent that this contract provides for furnishing supplies or performing services outside the United States and its outlying areas, this clause applies in lieu of any Federal, State, and local taxes clause of the contract.

(b) Definitions. As used in this clause--

"Contract date," means the date set for bid opening or, if this is a negotiated contract or a modification, the effective date of this contract or modification.

Country concerned means any country, other than the United States and its outlying areas, in which expenditures under this contract are made.

"Tax" and "taxes," include fees and charges for doing business that are levied by the government of the country concerned or by its political subdivisions.

"All applicable taxes and duties," means all taxes and duties, in effect on the contract date, that the taxing authority is imposing and collecting on the transactions or property covered by this contract, pursuant to written ruling or regulation in effect on the contract date.

"After-imposed tax," means any new or increased tax or duty, or tax that was exempted or excluded on the contract date but whose exemption was later revoked or reduced during the contract period, other than excepted tax, on the transactions or property covered by this contract that the Contractor is required to pay or bear as the result of legislative, judicial, or administrative action taking effect after the contract date.

"After-relieved tax," means any amount of tax or duty, other than an excepted tax, that would otherwise have been payable on the transactions or property covered by this contract, but which the Contractor is not required to pay or bear, or for which the Contractor obtains a refund, as the result of legislative, judicial, or administrative action taking effect after the contract date.

"Excepted tax," means social security or other employment taxes, net income and franchise taxes, excess profits taxes, capital stock taxes, transportation taxes, unemployment compensation taxes, and property taxes. "Excepted tax" does not include gross income taxes levied on or measured by sales or receipts from sales, property taxes assessed on completed supplies covered by this contract, or any tax assessed on the Contractor's possession of, interest in, or use of property, title to which is in the U.S. Government.

(c) Unless otherwise provided in this contract, the contract price includes all applicable taxes and duties, except taxes and duties that the Government of the United States and the government of the country concerned have agreed shall not be applicable to expenditures in such country by or on behalf of the United States.

(d) The contract price shall be increased by the amount of any after-imposed tax or of any tax or duty specifically excluded from the contract price by a provision of this contract that the Contractor is required to pay or bear, including any interest or penalty, if the Contractor states in writing that the contract price does not include any contingency for such tax and if liability for such tax, interest, or penalty was not incurred through the Contractor's fault, negligence, or failure to follow instructions of the Contracting Officer or to comply with the provisions of paragraph (i) below.

**EXHIBIT E**

## Overseas Lease Group

| | |
|---|---|
| **From:** | Peter Klawitter [pklawitter@contrack.com] |
| **Sent:** | Monday, September 17, 2007 8:47 AM |
| **To:** | 'Corporate Fleet Lease'; 'Doug Schoffstall' |
| **Cc:** | 'Mark Badcock' |
| **Subject:** | FW: Vehicle Turn In |

FYI below from NO LEMON/ FERLO.


--reply--
Best regards

Peter Klawitter
IT Consultant
CONTRACK International, Inc.
Kabul - Afghanistan
Mobile: +93(0)799 80 22 99

This email, together with any attachments, is intended for the named recipient(s) only and may contain privileged and confidential information. If received in error, please inform the sender as quickly as possible and delete this email and any copies from your computer network. If not an intended recipient of this email, you must not copy, distribute or rely on it, and any form of disclosure, modification, distribution and/or publication of this email is prohibited. Unless stated otherwise, this email represents only the views of the sender and not the views of CONTRACK International, Inc.

**From:** Ferlo Elizalde [mailto:ferloelizalde@gmail.com]
**Sent:** Monday, 17 September, 2007 10:34
**To:** McGee, Marlon T USA SSG USA CJTF82 Base Ops
**Cc:** Sena, Allen USA SSG USA CSTC-A CJ4/IPBO; Wilson, Deander L USA CW3 USA CSTC-A; Hall, Kelley A USA SFC USA CSTC-A; Johnson, Kenneth L USA SGT USA CJTF82 Base Ops S4 NCOIC; Machin, Megan USA 2LT USA CJTF82 Base Ops; Samir Omeragic; Searles, Kevin E USA SSgt USAF CSTC-A; Peter Klawitter - IT Consultant; Little, Rebecca A USA CAPT USAF CSTC-A KRCC; Rene Larsen; Cruz, Austin S USA CPT USA CJTF82 Base Ops
**Subject:** Re: Vehicle Turn In

Date:   September 17, 2007
Time:   10:30 AM

Sir:

Good day...

Thanks for the info, dont worry I have sufficient space for all the turn in vehicle.

Thanks.

10/18/2007

On 9/17/07, **McGee, Marlon T USA SSG USA CJTF82 Base Ops**
<marlon.mcgee@afghan.swa.army.mil> wrote:

All,

This is to inform you of Task Order 31 turn in.  We will start today.  As the vehicles leave Camp Eggers I will be
sending you emails periodically to inform you. Any questions or concerns don't hesitate to call.

TLC272 JTGCB09J365002343

TLC273 JTGCB09J965002394

MP242  JMYLNV76W6J001217

MP252  JMYLNV76W6J002434

Marlon T. McGee, SSG, USA
Base Ops TMP NCOIC
Camp Eggers, Kabul
DSN 318-237-1108
CELL 0799-133-074


--
FERLO ELIZALDE
Customer Service Manager

No Lemon Commercial
District 9th near Custom House
On the Road to Jalalabad
Kabul - Afghanistan.
+93(0)798189610/ mobile
kabserman@no-lemon.com / email
www.no-lemon.com /website

This email, together with any attachments, is intended for the named recipient(s) only and may contain
privileged and confidential information. If received in error, please inform the sender as quickly as possible
and delete this email and any copies from your computer network. If not an intended recipient of this email,
you must not copy, distribute or rely on it, and any form of disclosure, modification, distribution and/or
publication of this email is prohibited. Unless stated otherwise, this email represents only the views of the
sender and not the views of Contrack International Inc.

**EXHIBIT F**



**Ron K**
Garland/NE/KCL/KeyCorp
720-304-1263
CO-18-SP-0103
03/31/2008 10:50 AM

To   Dave Karpel/USA/KEF/KeyCorp@KeyCorp

cc   Jonathan Braun/RM/KCL/KeyCorp@KeyCorp

bcc

Subject   Fw: OLG Contract Task Order 31

History:    ☑ This message has been forwarded.

Rondall (Ron) K. Garland
Vice President
KEF Portfolio Management and Workouts
Key Equipment Finance Inc.
1000 South McCaslin Blvd., Suite 110
Superior, CO   80027
(720) 304-1263  (phone)
(720) 304-1342  (fax)
ron_k_garland@key.com (email)
----- Forwarded by Ron K Garland/NE/KCL/KeyCorp on 03/31/2008 10:48 AM -----



"George Badcock "
<gb@overseasleasegroup .co
m>
03/31/2008 10:40 AM

To   <Ron_K_Garland@Key.com>

cc

Subject   FW: OLG Contract Task Order 31

Ron, This letter is a result of actions by the DOD. The DOD sent our contract renewal today with major changes. We have extended the contract as is for 30 days while issues are worked out.
    I am sending the emails under separate cover.

    In light of the above, and despite the fact of the litigation I think we should meet in NY on Wednesday and Thursday  to work out the best way to deal with this latest development.

    We did have a long conversation with the Colonel and I will share that with you at the meeting or verbally. Your choice

    Regards

George Badcock

**From:** Fishel, Bradley J. USA LtCol USAF Contracting [mailto:bradley.j.fishel@afghan.swa.army.mil]
**Sent:** Monday, March 31, 2008 11:15 AM
**To:** George Badcock
**Subject:** OLG Contract Task Order 31

Mr. Badcock,

This e-mail is to confirm our discussions of earlier today.

Due to operational circumstances involving increased insurgent activity in and around the Camp Eggers and Camp Phoenix areas of Kabul, Afghanistan, we are no longer able to travel in soft skin vehicles. As such, the Combined Security Transition Command - Afghanistan (CSTC-A) requires the return of 90%+ of all soft skinned vehicles to OLG. As Task Order 31 has expired, CSTC-A needs to return the vehicles to OLG asap.

This will allow for the appropriate planning/budgeting to occur for up-armored vehicles and will stop the accrual of additional costs to the Govt for vehicles that are not being utilized due to battle conditions. The Government is returning these vehicles and requires final billing to cover the unpaid portion of the Task Order.

Thank you for your attention in this matter.

Lt Col Brad Fishel

BRADLEY J. FISHEL, Lt Col, USAF
Chief, Kabul Regional Contracting Center
DSN 318 237-1018
Cell 070-095-949