# ARENTH AFFIRMATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

OVERSEAS LEASE GROUP, INC.,                    08 Civ. 01696 (SAS)(THK)

               Plaintiff,        **AFFIRMATION IN SUPPORT**
                                          **OF MOTION FOR PARTIAL**
       - against -                **SUMMARY JUDGMENT**
                                            **AND OTHER RELIEF**

KEY GOVERNMENT FINANCE, INC.,

               Defendant.
-------------------------------------------------------------x

TERESE L. ARENTH, an attorney duly admitted to practice law before the Courts of the

State of New York, under penalties of perjury does hereby affirm as follows:

1.      I am a member of the firm of Moritt Hock Hamroff & Horowitz LLP, attorneys

for the Defendant, Key Government Finance, Inc. ("Key"). I am fully familiar with the facts and

circumstances set forth herein.

2.      Key's motion is fairly simple and straightforward. It is premised upon the

clarification and declaration of the relative rights between Key and Plaintiff, Overseas Lease

Group, Inc. ("OLG"), to recover and dispose of certain vehicles when entitled to under the OLG's

contract with the United States Department of Defense ("DOD"), such as with the early

termination of the lease of those vehicles by the DOD. Key financed OLG's leases to the DOD

and, as OLG's assignee and lienholder, Key must be able to enforce its rights with respect to its

collateral and pursue the rights and remedies of OLG as OLG's assignee without interference.

3.      Based thereon, I submit this Affirmation in support of Key's application to the

Court: (i) pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary

judgment as to Key's Fourth Amended Counterclaim against OLG, which seeks a declaratory

judgment declaring that Key, as OLG's assignee and lienholder,[1] has the right to recover

possession and to dispose of the vehicles described below, whenever OLG would be or have

been entitled to recover possession of such vehicles and to dispose of them; (ii) pursuant to Rule

42(b) of the Federal Rules of Civil Procedure, severing and continuing Defendant's First, Second,

Third, Fifth, Sixth, Seventh, Eighth and Ninth Counterclaims against Plaintiff; and (iii) pursuant

to Rule 54(b), granting certification of the summary judgment on Defendant's Fourth Amended

Counterclaim against Plaintiff.

   4.  This motion has been necessitated by OLG's interference with Key's rights to

enforce all of its rights and remedies to recover possession of and to dispose of certain vehicles

as and when they come off lease, including OLG's failure and refusal to turn over and deliver to

Key the titles, title certificates and all indicia of ownership of the vehicles so as to enable Key to

convey title to buyers of the vehicles, in direct contravention of Key's rights as OLG's assignee

pursuant to its written agreements. Key is in imminent danger of losing prospective buyers for

77 of the subject vehicles, at $25,000 each, for a total proposed sale of $1,925,000. By

precluding Key from consummating the sale of those vehicles, which depreciate with each

passing day, Key will suffer direct and immediate material financial loss. In addition thereto, the

location and nature of both the vehicles and Key's prospective buyers creates exigent

circumstances for its ability to consummate the proposed sales. The vehicles consist of all-wheel

drive, non-armored vehicles located in the war zone of Afghanistan. In this territory, these types

of vehicles are scarce and at significant risk of damage or total loss as they sit unprotected in a

field storage lot. The prospective buyer of the 70 Vehicles requires the vehicles in connection

---

[1] Key's Fourth Amended Counterclaim seeks relief as either title owner or assignee/lienholder. For purposes of this motion only, Key is only seeking relief with respect to its rights as the assignee of OLG's rights and remedies and as a lienholder.

with a contract to provide necessary security services to the U.S. Embassy in this war zone, necessitating an expeditious resolution to Key's Fourth Amended Counterclaim so that it may complete the sale as soon as possible. Key has been constrained to seek this relief since OLG has asserted that Key cannot take any action to dispose (by re-lease or sale or otherwise) of the vehicles, claiming that only OLG can take such actions.

5.      It is also imperative that Key quickly obtain such relief from the Court as Task Orders pertaining to the leases of more than 90 additional non-armored vehicles are soon due to expire in the upcoming months and the DOD has indicated that it is not likely to exercise its options to renew those Task Orders for part or all of their remaining terms, which will cause Key even more significant damage if it cannot effectively market and consummate the sale thereof.

6.      Thus, an expeditious resolution of the issue concerning Key's rights with respect to the disposition of the 77 vehicles at issue will also provide much-needed clarity with respect to Key's rights as to additional vehicles that remain under contract with the Department of Defense as and when they come off lease.[2]

7.      As discussed in the accompanying Affidavit of David Karpel (the "Karpel Affidavit") and the accompanying Memorandum of Law, there are no genuine issues of material fact to be tried as to Key's rights to possess and dispose of the vehicles, as OLG's assignee and lienholder, based upon the clear and unambiguous language of the written agreements between Key and OLG.

---

[2]  As indicated by Key's counsel in the pre-motion conference, Key does not seek any finding that OLG or Key is entitled to possession of any Vehicles under the DOD Contract (although Key believes it is entitled to such possession). Key only seeks by this motion an order declaring that when, under the DOD Contract or applicable law, the lessor OLG may recover possession of the Vehicles and dispose of them, that right belongs to Key as OLG's assignee.

8.    In that regard, as discussed at length in the Karpel Affidavit, pursuant to written agreements, Key funded OLG's purchase and lease of certain vehicles to the United States Department of Defense (the "DOD") pursuant to various "Task Orders" issued by the DOD in connection with its contract with OLG. In total, Key paid funding proceeds to OLG in the amount of $26,231,059.00. Pursuant to a written Assignment Agreement between OLG, as seller, and Key, as purchaser, OLG sold, assigned, transferred and set over unto Key all of OLG's "right, title and interest in and to (but none of its obligations under)" OLG's contract with the DOD for the lease of the vehicles, including all lease payments due under OLG's contract with the DOD, and granting Key a first priority lien in the vehicles leased thereunder. Karpel Affidavit, ¶¶ 5-7 and Exhibit "C" annexed thereto at Sections 1 and 2. Pursuant to Section 6 of the Assignment Agreement, Key "shall have all of the rights of [OLG] under the [DOD] Contract, but none of [OLG's] obligations thereunder...". See Karpel Affidavit, Exhibit "C" at Section 6.

9.    As also detailed in the Karpel Affidavit, the DOD has elected to non-renew the lease of all the vehicles that are subject of Task Order #31, which lease expired on November 30, 2007. In or about February 2008, Key located a prospective buyer for seven (7) of those vehicles, for a prospective purchase price of $175,000.00, and most recently, that prospective buyer obtained funding for the immediate purchase and delivery of four (4) of those vehicles and has agreed to purchase the remaining three (3) vehicles in June. Key has located a second prospective purchaser who is willing to buy an additional seventy (70) Toyota Land Cruisers, which are comprised in part from TO #31 and in part from Task Order #25 (which has also expired), at $25,000 each, for a total proposed sale of $1,750,000. Key's efforts to sell the vehicles, however, have been thwarted by OLG's unjustified failure and refusal to turn over the

4

titles to those vehicles to Key, in direct contravention of Key's contractual rights as OLG's assignee and lienholder. Instead, in its Complaint, OLG has taken the untenable position that Key has no right to dispose of the Vehicles and that Key is not entitled to recover the Vehicles at the end of their lease term or to re-sell or otherwise transfer the Vehicles to third-party purchasers to mitigate Key's loss when these Vehicles are returned early. (See ¶¶ 12-13 of the Complaint, annexed hereto as Exhibit "1"; a copy of Key's Answer with Amended Counterclaims is annexed hereto as Exhibit "2").

10.    Based upon the clear and unambiguous language of the written agreements between Key and OLG, there are simply no genuine issues of fact to be tried, warranting entry of partial summary judgment in Key's favor and against OLG on Key's Fourth Amended Counterclaim for a declaratory judgment, declaring that: Key, as OLG's assignee and lienholder, has the right to recover possession and to dispose of the vehicles described in the Karpel Affidavit, whenever OLG would be or have been entitled to recover possession of such vehicles and to dispose of them.

11.    Accordingly, it is respectfully requested that Defendant's motion be granted in its entirety.

Dated: Garden City, New York
        May 1, 2008

                                    TERESE L. ARENTH

F:\Key Equipment Finance\Overseas\Docs\Arenth SJ Affirmation.Doc

5

**EXHIBIT 1**

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

OVERSEAS LEASE GROUP, INC.

V.

KEY GOVERNMENT FINANCE, INC.

### SUMMONS IN A CIVIL ACTION

CASE NUMBER: 08 CV 01696

TO: (Name and address of Defendant)

Key Government Finance, Inc.
1000 S. McCaslin Boulevard
Superior, Colorado 80027

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

PAUL BATISTA, P.C.
26 Broadway — Suite 1900
New York, New York 10004

an answer to the complaint which is served on you with this summons, within _____30_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

February 20, 2008

CLERK

(By) DEPUTY CLERK

DATE

JUDGE SCHEINDLIN    **08 CV 01696**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

OVERSEAS LEASE
GROUP, INC.,                                                        :

                                **Plaintiff,**                08 Civ.

- against -                                                         

KEY GOVERNMENT
FINANCE, INC.,

                            **Defendant.**
-------------------------------------------------------------------- x

       Plaintiff Overseas Lease Group, Inc., by and through its attorney, Paul

Batista, P.C., for its complaint against defendant Key Government Finance, Inc.,

respectfully alleges as follows:

### Parties

       1.    Plaintiff Overseas Lease Group, Inc. ("OLG") is a corporation

organized and existing under the laws of the State of Delaware.

       2.    Upon information and belief, defendant Key Government

Finance, Inc. ("Key") is a corporation organized and existing under the laws of the

State of Ohio with its principal office located at 1000 South McCaslin Boulevard,

Superior, Colorado 80027. Key regularly does business, and transacts business, in

the State of New York.

### Jurisdiction and Venue

       3.    This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1337 and 1367.

4.    Personal jurisdiction and venue in this District are proper, pursuant to 28 U.S.C. § 1391(b), because defendant is found in, has agents in, or transacts its business and affairs in the State of New York.

### Statement of Facts
### Common To All Causes of Action

A.    **The Business Relation**
      **Between Plaintiff and the**
      **U.S. Department of Defense**

5.    Plaintiff OLG is in the business of purchasing vehicles, including trucks and armored trucks, and leasing the vehicles primarily to the United States Department of Defense (the "Defense Department" or "DOD") for use in connection with United States military and antiterrorist activity in Afghanistan. To facilitate its relationship with DOD, plaintiff maintains an office and staff in Kabul, Afghanistan.

6.    Plaintiff OLG, which was awarded its contract by the DOD as a result of competitive bidding, has developed extensive business relationships with DOD personnel in the United States and Afghanistan. As explained in greater detail in the balance of this Complaint, defendant Key, which is a financing company, has interfered, and continues to interfere, in plaintiff's long-standing contract and business relations with the Defense Department. Moreover, as this Complaint will also describe, defendant Key has no reason, privilege or right to engage in the acts of interference which it continues to conduct and which jeopardize plaintiff's on-going business with the DOD.

7.    The underlying contract between the Defense Department and plaintiff was entered into on February 5, 2006 as contract number W91 B4M-06-

2

D-0001 (the "DOD Contract"). In effect, the DOD contract provides for the leasing by plaintiff for a five year term of vehicles owned by plaintiff to the Defense Department. The DOD Contract involves and will involve over its five-year term several hundred armored and "soft" vehicles and substantially in excess of $25 million.

8.    The relationship between DOD and plaintiff has been developed and maintained since approximately late 2005 and early 2006 and continues to the present as an excellent and productive relationship.

9.    Defendant Key is not a party to OLG's DOD Contract, directly or indirectly, and has no contractual or business relationship with the Defense Department as it relates to OLG's DOD Contract.

**B.    The Assignment Agreement**
**Between Plaintiff and Defendant**

10.    Plaintiff OLG and defendant Key entered into an Assignment Agreement dated April 1, 2006 ("Assignment Agreement") under which plaintiff assigned to defendant "all amounts due and to become due under the [DOD Contract]..." The Assignment Agreement, which is a non-recourse agreement, explicitly provided that Key purchased the lease payment streams of revenue from the Defense Department under the DOD Contract. Subsequent correspondence from defendant limited the amount of such purchases to $25 million of lease payments.

11.    Plaintiff is not and never has been in default or breach of the Assignment Agreement.

3

12.    The Assignment Agreement does not transfer from OLG to Key any ownership or equity interest in the vehicles which are the subject of the DOD Contract. The Assignment Agreement provides that Key has a lien only on the OLG-owned vehicles covered by that agreement.

13.    Moreover, the underlying DOD Contract provides that the vehicles remain at all times the property of the plaintiff, which is the only entity entitled to recover the vehicles at the end of their lease term and to re-sell or otherwise transfer the vehicles to third-party purchasers, not to Key.

14.    Defendant has no role under the Assignment Agreement in the negotiating, purchasing, pricing, sale, re-lease or other transfer of the vehicles. Defendant's role is limited solely to the purchase of the first $25 million of the lease payment stream of revenue under the DOD Contract between OLG and the Defense Department. At Key's request, made immediately after the outset of the OGL-Key relationship, OLG's subsidiary established and maintains all of the monthly billing under the DOD Contract and resolves billing issues, if any, with DOD. Pursuant to a contract executed by and among OGL, Key, and the Defense Department, lease payments from DOD attributable to the lease revenue stream purchased by Key under the Assignment Agreement are deposited directly to the Key account number 329681039569 (the "Key Account").

15.    Plaintiff OLG has other financing sources, one of which has purchased separate lease payment streams under the same DOD Contract which are distinct from the payment streams purchased by Key. The payments purchased by the other financing source are directed to the Key Account.

4

C.        **Defendant's Acts of Interference**

16.    Until recently, only plaintiff OLG has had contact with the Defense Department regarding the DOD Contract, the vehicles, and on-going business.   Among other things, plaintiff at all times has negotiated and dealt directly and exclusively with DOD personnel, including officers and enlisted personnel in the United States Armed forces, on an array of issues such as lease renewals for vehicles, lease extensions, the pricing of the leases, the billing of DOD for lease payments under the DOD Contract, the addition of vehicles, arrangements for inspection and repair of the vehicles, and the recovery and disposition of the vehicles as they come off-lease.

17.    In violation of the existing and future contract and business relations between OLG and the Defense Department, defendant Key has made direct contacts with DOD in Afghanistan and the United States regarding the DOD Contract and the vehicles.

18.    Since on or about January 1, 2008, defendant Key has, among other things, (1) contacted DOD officials in Afghanistan through defendant's local hirees who falsely represent themselves to be agents of OLG to obtain information regarding OLG's contract and business, without OLG's knowledge or consent and (2) asserted that Key has "sold" at least seven (7) of the vehicles owned by plaintiff to third parties, notwithstanding Key's full knowledge that those seven (7) vehicles are still under lease/contract with DOD and that those leases/contracts may be renewed by DOD pursuant to on-going negotiations between OLG and DOD.

19.    Moreover, defendant Key has retained an alleged "security" firm in Afghanistan and gained unauthorized and illegitimate access to a DOD

5

base in Afghanistan and OLG's contracting officer at DOD, seeking information with respect to OLG's contract and its business operations.

20.    Defendant also continues as of the date of the filing of this Complaint, and, unless restrained, will continue, to interfere in future orders by the DOD from plaintiff for many additional vehicles during the balance of the DOD Contract – that is, until 2011.

21.    Plaintiff has constantly and repeatedly demanded that defendant Key cease and desist completely from the acts identified in ¶¶ 16, 17, 18, 19, and 20 of this Complaint and in all other conduct by which defendant directly or indirectly has contacted the Defense Department or purports to act as legal owner of the vehicles.

22.    Defendant continues to engage in the contacts with DOD and other acts of interference.

### Count I
(For Temporary, Preliminary
and Permanent Injunction
Relief)

23.    Plaintiff repeats and realleges each and every allegation of ¶¶ 1-22, <u>supra</u>.

24.    Defendant Key's conduct as identified in this Complaint constitutes interference in OLG's existing and on-going business and contract relations with the Defense Department, including the DOD Contract.

25.    Defendant Key has no right or privilege to engage in the acts of interference, including the contacts and communications Key and its agents have initiated with DOD personnel.

26.    Unless restrained, defendant Key will continue to engage in the acts identified in this Complaint and in future acts constituting interference.

27.    Plaintiff OLG is not and has never been in default of any provision of the DOD Contract or the Assignment Agreement.

28.    Plaintiff has no adequate remedy at law.

29.    Defendant's conduct has already caused irreparable injury to plaintiff since DOD, in the period since the acts of interference began in January 2008, has raised questions concerning Key's contacts with DOD.    The acts identified in this Complaint will, unless restrained, adversely affect plaintiff's current dealings with DOD and its negotiations with DOD for the lease of hundreds of additional vehicles by the DOD from OLG.

**Count II**
(For Interference in Contract)

30.    Plaintiff repeats and realleges each and every allegation of ¶¶ 1-29, supra.

31.    Defendant's conduct has already inflicted substantial, but difficult to calculate, financial damage on plaintiff in its past, current, and future relations with DOD.

32.    By reason of the foregoing, plaintiff Overseas Lease has sustained damage in an amount to be calculated at trial but believed to exceed $30 million.

7

**Count III**
(For Breach of Contract)

33.    Plaintiff repeats and realleges each and every allegation of ¶¶ 1-31, <u>supra</u>.

34.    Defendant's conduct has constituted a material breach of the Assignment Agreement.  By its conduct, Key has violated, <u>inter</u> <u>alia,</u> ¶7 of the Assignment Agreement by interfering with lease payment renewals through its actions or failures to act to cooperate with buyout pricing.

35.    By reason of the foregoing, plaintiff has been injured in an amount to be determined at trial but believed to exceed $30 million.

WHEREFORE, plaintiff Overseas Lease Group, Inc. requests judgment:

(1)    On Count I, entering temporary, preliminary, and permanent injunctive relief enjoining and restraining defendant Key from, among other things,

(A)    contacting, directly or indirectly, any representative, officer or agent of the United States Department of Defense or of the United States military services with respect to plaintiff, the vehicles, and the DOD Contract;

(B)    selling, or attempting to sell, or claiming to sell any vehicle covered by the DOD Contract;

(C)    seizing, taking or disabling the movement of any vehicle covered by the DOD Contract; and

(D)    (i) altering any arrangements, functions or procedures associated with the Key Account, (ii) failing to segregate and treat separately

8

proceeds paid to OGL by DOD into the Key Account for the benefit of OGL for repairs, damage, or destruction of vehicles, and (iii) interfering with any payments from DOD belonging to other financing sources which have contracts with OLG for separate and distinct revenue streams from DOD.

(2)    On Count II, damages in an amount to be determined at trial but believed to exceed $30 million.

(3)    On Count III, damages in an amount to be calculated at trial but believed to exceed $30 million.

(4)    Such other of further relief as the Court deems just and proper.

Dated:    New York, New York
February 20, 2008

PAUL BATISTA, P.C.

By _____
PAUL BATISTA (PB8717)
Attorney for Plaintiff
Overseas Lease Group, Inc.
26 Broadway – Suite 1900
New York, New York 10004
(212) 980-0070 (Tel)
(212) 344-7677 (Fax)

9

JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| OVERSEAS LEASE GROUP, INC. | KEY GOVERNMENT FINANCE, INC. |

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
PAUL BATISTA, P.C.
26 Broadway N Y N Y 10004
212 980 0070

ATTORNEYS (IF KNOWN)

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Action for Breach of Contract

Has this or a similar case been previously filed in SDNY at any time? No [X]  Yes? [ ]  Judge Previously Assigned

If yes, was this case  Vol.[ ]  Invol. [ ]  Dismissed.  No [ ]  Yes [ ]  If yes, give date  N/A  & Case No.

(PLACE AN [x] IN ONE BOX ONLY)                    NATURE OF SUIT

ACTIONS UNDER STATUTES

### TORTS

**CONTRACT**

[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL. VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[X] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**

[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**

[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**

[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**

[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**

[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**

[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**

[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

### ACTIONS UNDER STATUTES

**REAL PROPERTY**

[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**

[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**

[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

Check if demanded in complaint

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ N/A  OTHER

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:  N/A

JUDGE _____  DOCKET NUMBER _____

Check YES only if demanded in complaint
JURY DEMAND: [ ] YES [X] NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

(PLACE AN x IN ONE BOX ONLY)                                    **ORIGIN**

[X] 1 Original Proceeding  [ ] 2a. Removed from State Court  [ ] 2b. Removed from State Court AND at least one party is a pro se litigant  [ ] 3 Remanded from Appellate Court  [ ] 4 Reinstated or Reopened  [ ] 5 Transferred from (Specify District)  [ ] 6 Multidistrict Litigation  [ ] 7 Appeal to District Judge from Magistrate Judge Judgment

(PLACE AN x IN ONE BOX ONLY)                **BASIS OF JURISDICTION**                **IF DIVERSITY, INDICATE CITIZENSHIP BELOW.**
[ ] 1 U.S. PLAINTIFF  [ ] 2 U.S. DEFENDANT  [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)  [X] 4 DIVERSITY                **(28 USC 1332, 1441)**

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF DEF |  | PTF DEF |  | PTF DEF |
|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ]1 [ ]1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ]3 [ ]3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ]5 [ ]5 |
| CITIZEN OF ANOTHER STATE | [X]2 [X]2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ]4 [ ]4 | FOREIGN NATION | [ ]6 [ ]6 |

**PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)**

1719 Stat Route 10
Suite 235
PARSIPPANY, N. J. 07054

**DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)**

1000 South McCarlin Blvd.
Superior, CO 80027

**DEFENDANT(S) ADDRESS UNKNOWN**
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:  THIS ACTION SHOULD BE ASSIGNED TO:  [ ] WHITE PLAINS  [X] FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE 2|20|08  SIGNATURE OF ATTORNEY OF RECORD        ADMITTED TO PRACTICE IN THIS DISTRICT
                    Pd B X. 大                        [ ] NO
RECEIPT #                                            [X] YES (DATE ADMITTED Mo. 3  Yr. 75 )
                                                     Attorney Bar Code # PB 8717

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

OVERSEAS LEASE GROUP, INC.,                                  08 Civ. 01696

                                    Plaintiff,

                                                            **ANSWER, AFFIRMATIVE**
            - against -                                     **DEFENSES AND AMENDED**
                                                            **COUNTERCLAIMS**
KEY GOVERNMENT FINANCE, INC.,

                                    Defendant.
--------------------------------------------------------------x

      Defendant Key Government Finance, Inc. ("Key"), by and through its attorneys, Moritt

Hock Hamroff & Horowitz LLP, as and for its Answer to the Complaint of Plaintiff Overseas

Lease Group, Inc. ("OLG") dated February 20, 2008 (the "Complaint") hereby alleges as

follows:

## AS TO THE PARTIES

      1.     Denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in paragraph "1" of the Complaint.

      2.     Admits the allegations contained in paragraph "2" of the Complaint, except states

that Key is a corporation organized and existing under the laws of the State of Colorado.

## AS TO JURISDICTION AND VENUE

      3.     Denies the allegations contained in paragraph "3" of the Complaint and further

states that the allegations contained in paragraph "3" call for a legal conclusion to which no

response is required.

      4.     Denies allegations contained in paragraph "4" of the Complaint and further states

that the allegations contained in paragraph "4" call for a legal conclusion to which no response is

required.

## AS TO STATEMENT OF FACTS
## COMMON TO ALL CAUSES OF ACTION

5.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph "5" of the Complaint, except admits that Key is aware that OLG purchases vehicles for lease to the United States Department of Defense (the "DOD") for use in Afghanistan.

6.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph "6" of the Complaint, except admits that Key is a financing company and denies the allegations contained in paragraph "6" to the extent that they allege any wrongdoing and interference by Key in OLG's contract or business relations with the Defense Department.

7.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph "7" of the Complaint, except admits that Key is aware of OLG's contract with the Defense Department, avers that the DOD Contract was for a one year term with five option years, and respectfully refers the Court to the DOD Contract referenced in paragraph "7" for the additional terms, conditions and contents thereof.

8.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph "8" of the Complaint.

9.    Admits the allegations contained in paragraph "9" of the Complaint to the extent that Key is not a party to OLG's DOD Contract but denies the balance of the allegations and avers that Key has an assignment of all monies due or to become due under the DOD Contract, as well as OLG's rights and interests thereunder.

10.    Admits the allegations contained in paragraph "10" of the Complaint to the extent the parties entered into the Assignment Agreement and respectfully refers the Court to the

2

Assignment Agreement referenced therein for the terms, conditions and contents thereof. A copy of the Assignment Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

11.     Denies the allegations contained in paragraph "11" of the Complaint.

12.     Admits the allegations contained in paragraph "12" of the Complaint and respectfully refers the Court to the Assignment Agreement referenced therein for the terms, conditions and contents thereof. Key further states that, by written agreements, including but not limited to, by written agreement dated May 18, 2006, OLG sold and assigned to Key "good and unencumbered title" to the vehicles leased by OLG to the DOD pursuant to the DOD Contract.

13.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph "13" of the Complaint and respectfully refers the Court to the DOD Contract referenced therein for the terms, conditions and contents thereof.

14.     Denies the allegations contained in paragraph "14" of the Complaint, except admits that lease payments from DOD attributable to the lease revenue stream purchased by Key under the Assignment Agreement are deposited directly to the Key Account and further respectfully refers the Court to the Assignment Agreement and all documents executed in connection therewith for the terms, conditions and contents thereof.

15.     Admits that Key is aware of at least one other financing source and that Key services payments for the benefit of that source, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the balance of the allegations contained in paragraph "15" of the Complaint.

16.     Denies the allegations contained in paragraph "16" of the Complaint.

17.     Admits that Key retained a consultant who has made contacts with the DOD, and denies the remaining allegations contained in paragraph "17" of the Complaint.

3

18.    Denies the allegations contained in paragraph "18" of the Complaint.

19.    Admits that Key has retained a consultant who has been in contact with the DOD,

and denies the remaining allegations contained in paragraph "19" of the Complaint.

20.    Denies the allegations contained in paragraph "20" of the Complaint.

21.    Denies the allegations contained in paragraph "21" of the Complaint.

22.    Denies the allegations contained in paragraph "22" of the Complaint.

## AS TO COUNT I

23.    Key repeats and realleges its responses to paragraphs "1" through "22" of the

Complaint as if more fully set forth herein.

24.    Denies the allegations contained in paragraph "24" of the Complaint.

25.    Denies the allegations contained in paragraph "25" of the Complaint.

26.    Denies the allegations contained in paragraph "26" of the Complaint.

27.    Denies the allegations contained in paragraph "27" of the Complaint.

28.    Denies the allegations contained in paragraph "28" of the Complaint and further

states that the allegations contained in paragraph "28" call for a legal conclusion to which no

response is required.

29.    Denies the allegations contained in paragraph "29" of the Complaint.

## AS TO COUNT II

30.    Key repeats and realleges its responses to paragraphs "1" through "29" of the

Complaint as if more fully set forth herein.

31.    Denies the allegations contained in paragraph "31" of the Complaint.

32.    Denies the allegations contained in paragraph "32" of the Complaint.

4

## AS TO COUNT III

33.    Key repeats and realleges its responses to paragraphs "1" through "32" of the Complaint as if more fully set forth herein.

34.    Denies the allegations contained in paragraph "34" of the Complaint.

35.    Denies the allegations contained in paragraph "35" of the Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

36.    The Complaint fails to state a claim upon which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

37.    OLG's claims are barred, in whole or in part, by the doctrines of laches, estoppel or waiver, and to the extent that OLG consented to or acquiesced in any of the acts complained of in the Complaint.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

38.    OLG's claims are barred, in whole or in part, by the doctrine of unclean hands.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

39.    OLG's claims are barred, in whole or in part, by documentary evidence.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

40.    Any injury or damages alleged by OLG were in whole or in part the result of OLG's own culpable conduct.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

41.    Any injury or damages alleged by OLG were in whole or in part the result of OLG's breach of contract and/or its negligence, acts or omissions.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

42.    The Complaint fails to set forth adequate and appropriate grounds for injunctive relief.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE
## AND FIRST COUNTERCLAIM

43.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "42" as if more fully set forth herein.

44.    At the time that OLG presented the DOD Contract to Key for funding, OLG maintained an office and staff in Afghanistan and the Vehicles were arranged by OLG to be purchased from a dealer for delivery in Afghanistan.

45.    OLG was, and is, very familiar with the market for the Vehicles in Afghanistan and, as alleged in the Plaintiff's Complaint, OLG solely conducted all dealings with the DOD and jealously protected that arrangement.

46.    In contrast, Key has always been a Colorado corporation that, although it conducts financing activities in all 50 states and several countries, has never conducted business activities in Afghanistan, and is not familiar with that market. Accordingly, Key reasonably relied upon OLG's expertise in the Afghanistan market and the material representations made by OLG in its efforts to induce Key to fund the transaction subject of the DOD Contract, and both parties were aware of that reliance.

47.    In an effort to induce Key's agreement to fund the transaction subject of the DOD Contract, OLG made the following material representations to Key, among others:

a.    that the Vehicles consisting of "soft vehicles" had a fair market value in Afghanistan, at the time of the transaction, of $65,000.00 and a cost ranging between $73,740.00 and $95,688.00 per Vehicle, and that the Vehicles consisting of "armored vehicles" had a fair market value in Afghanistan, at the time of the transaction, ranging between $282,000.00 and $329,328.00 per Vehicle (although the precise number of Vehicles to be leased to the DOD would be determined at a later date);

6

b.      that, in the event that the DOD did not renew some or all of the Task Orders, the Vehicles would be returned to OLG and could readily be remarketed by OLG in the marketplace. It was implicit in that representation that the fair market value of the Vehicles at the time of the remarketing would be a reasonably depreciated value from the value as leased to the DOD.

48.     OLG's representation as to the fair market value of the Vehicles was a material inducement to Key in its decision to approve the transaction and Key approved the transaction for funding, in reliance upon those representations.

49.     In reliance upon OLG's representations, Key paid a total of $26,231,059.00 to OLG.

50.     Thereafter, on or about September 11, 2007, the DOD gave notice of non-renewal of Task Order #31 and indicated an intent to non-renew some or all of the other remaining Task Orders. As a part of its efforts to determine its alternatives to mitigate its resulting losses, Key obtained documents from OLG's files and retained an independent consultant in Afghanistan to, among other things, determine the market value for the Vehicles and to identify prospective buyers for the Vehicles.

51.     As a result of those efforts by Key, Key determined that OLG's material representations stated above were false in that:

a.      OLG charged Key for the Vehicles consisting of "soft vehicles" that were leased to the DOD for between $73,740.00 and $95,688.00 each but OLG had, in actuality, paid only between $23,212.00 and $32,334.00 per each Vehicle;

b.      OLG's lease pricing to the DOD for those same Vehicles, at approximately $95,000 per Vehicle, was far in excess of the market value pricing; and

7

c.    At the time of the DOD's notice of non-renewal, only 2 years after the date that the Vehicles were first leased to the DOD, the Vehicles had a fair market value of only $25,000.00.

52.    By reason of the foregoing, Key's losses arising out of this transaction are far in excess of that which was estimated by Key as a "worst case scenario" at the time that the Assignment Agreement was entered into based upon the information provided and material representations made by OLG to Key.

53.    Had Key been aware of the extent of its loss exposure at the time of the Assignment Agreement, it would not have entered into that Agreement.

54.    By reason of the foregoing, Key relied upon OLG's representations to its detriment and has suffered financial damages as a direct result thereof.

55.    Accordingly, Key requests rescission of the Assignment Agreement and a return of the full amount of the funding paid to OLG in reliance upon the stated material misrepresentation.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE
### AND SECOND COUNTERCLAIM

56.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "55" as if more fully set forth herein.

57.    Upon information and belief, OLG and the United States Department of Defense (the "DOD") entered into a certain contract, Contract No. W91B4M-06-D-0001 (the "DOD Contract") dated as of February 5, 2006, pursuant to which OLG leased to the DOD and the DOD leased from OLG, the property described therein and on certain "Task Orders" issued by the DOD consistent therewith (the "Vehicles").

8

58.    Pursuant to various Assignment of Proceeds Letters thereafter issued by OLG to Key in connection with the DOD Contract, OLG invoiced Key and Key funded the proceeds due under invoice for payment of the Vehicles leased by OLG to the DOD.

59.    By Assignment Agreement dated as of April 1, 2006 (the "Assignment Agreement") by and between OLG, as seller, and Key, as purchaser, OLG sold, assigned, transferred and set over unto Key all of OLG's "right, title and interest in and to (but none of its obligations under) the [DOD Contract]" and

> "all amounts due and to become due under the Contract, including (without limitation) payments, insurance proceeds, and all monies payable or recoverable following a default or non-appropriation by [the DOD], and a first priority lien in favor of Purchaser in and to the Property, together with all proceeds (cash and non-cash, including insurance proceeds) of the foregoing and all of Seller's rights and remedies under the Contract, including (without limitation) the right to initiate and conclude any and all proceedings, legal, equitable or otherwise, that Seller otherwise might take, save for this Agreement".

See Exhibit "A", attached hereto, at ¶ 2.

60.    In addition to obtaining assignment of all of OLG's rights and remedies under the DOD contract, pursuant to Section 6 of the Assignment Agreement, Key "shall have all of the rights of [OLG] under the [DOD] Contract, but none of [OLG's] obligations thereunder...".

61.    Upon information and belief, in accordance with the terms of the DOD Contract, the DOD provided OLG with, among others, Task Order #31, pursuant to which OLG leased to the DOD and the DOD leased from OLG seventy (70) Vehicles identified therein (the "TO #31 Vehicles").

62.    Upon information and belief, the DOD's lease of the TO #31 Vehicles expired on November 30, 2007.

9

63.    Upon information and belief, the DOD elected not to renew its lease of the TO #31 Vehicles which expired on November 30, 2007 and returned said Vehicles to OLG on or about December 1, 2007 in accordance with the DOD Contract.

64.    Upon the expiration of TO # 31, Key contacted OLG to confirm that OLG would cooperate and deliver title to the TO #31 Vehicles so that Key, as OLG's assignee, could dispose of the Vehicles in the event that Key found buyers through its own efforts, and OLG verbally agreed to do so.  Relying upon OLG's agreement, Key undertook efforts to sell or remarket the TO #31 Vehicles.

65.    In or about February 2008, Key successfully located a prospective buyer for seven (7) of the TO #31 Vehicles.

66.    In or about February 2008, Key informed OLG that it had located a prospective buyer for seven (7) of the TO #31 Vehicles.

67.    Key has since located a prospective buyer for seventy (70) Toyota Land Cruisers, which are comprised in part from TO #31 and Task Order #25 (which has also expired).

68.    Despite Key's demand therefor, and contrary to its prior verbal agreement, OLG has intentionally failed and refused to turn over the titles for the Vehicles, for which Key has located a prospective buyer.

69.    OLG's failure and refusal to turn over the titles for the Vehicles is without cause or justification.

70.    OLG's failure and refusal to turn over the titles for the Vehicles is in breach of its verbal agreement and in derogation of Key's rights as OLG's assignee, as lienholder and/or as title owner.

71.    OLG's failure and refusal to turn over the titles for the Vehicles is in derogation of Key's rights under the Assignment Agreement to remarket the Vehicles.

10

72.    OLG's aforesaid conduct has interfered, and continues to interfere, with Key's contractual and business relations with the prospective buyer for the Vehicles.

73.    OLG's aforesaid conduct has caused and will continue to cause financial damage to Key.

74.    By reason of the foregoing, Key has sustained damages in an amount to be determined at trial, but in no event less than $1,925,000.00.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE
## AND THIRD COUNTERCLAIM

75.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "74" as if more fully set forth herein.

76.    OLG agreed that it would provide for the deinstallation and removal of the equipment in the event of early termination of the DOD Contract and that it would assist Key through a best efforts remarketing covenant.

77.    OLG's aforesaid conduct is in breach of its best efforts remarketing covenant to Key.

78.    By reason of the foregoing, Key has sustained damages in an amount to be determined at trial, but in no event less than $1,925,000.00.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE
## AND FOURTH COUNTERCLAIM

79.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "78" as if more fully set forth herein.

80.    Pursuant to Section 2 of the Assignment Agreement, OLG granted Key a "first priority lien in favor of [Key] in and to the [Vehicles]..."and assigned to Key "all of [OLG's] rights and remedies under the [DOD] Contract...".

11

81.    Pursuant to Section 6 of the Assignment Agreement, Key "shall have all of the rights of [OLG] under the [DOD] Contract, but none of [OLG's] obligations thereunder...".

82.    OLG also sold to Key "good and unencumbered title" to the Vehicles leased to the DOD under the DOD Contract.

83.    Upon information and belief, the DOD's lease of the TO #31 Vehicles expired on November 30, 2007 and the DOD did not exercise its option to renew TO #31.

84.    Upon information and belief, Task Orders pertaining to leases of over 200 additional Vehicles in which Key has a security interest and/or in which OLG sold and assigned title to Key are due to expire in the upcoming months and the DOD has indicated that it is not likely to exercise its options to renew those Task Orders for part or all of their remaining terms.

85.    Whether as OLG's assignee, lienholder and/or title owner, Key is entitled to possession of the Vehicles and to dispose of them.

86.    Despite's Key's request for the titles to the Vehicles from OLG (to facilitate the sale of the Vehicles), OLG has failed and refused to deliver the titles, and has asserted, in contravention of its contractual undertakings and as indicated in paragraphs 12 and 13 of the Complaint, that Key has no right to dispose of the Vehicles and OLG is not obligated to deliver the titles to Key.

87.    A justiciable controversy exists concerning Key's rights to possession of the Vehicles and its rights to dispose of those Vehicles, as OLG's assignee or title owner, upon the DOD's termination, non-renewal or default under the DOD Contract, and Key has no adequate remedy at law. Unless this Court issues the declaration requested herein, Key stands to suffer direct and immediate material financial loss as a result of OLG's failure and refusals to permit Key to dispose of the Vehicles and/or to deliver title to Key.

12

88.    By reason of the foregoing, Key hereby requests a declaration from this Court that Key, as OLG's assignee, has the right, as either assignee, lienholder or title owner, to recover possession of the Vehicles and to dispose of them, whenever OLG would have been entitled to recover possession of the Vehicles and to dispose of them.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE
## AND FIFTH COUNTERCLAIM

89.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "88" as if more fully set forth herein.

90.    Upon information and belief, upon the DOD's termination of the lease of the TO #31 Vehicles and its return of those Vehicles to OLG, OLG submitted a repair bill for the TO #31 Vehicles to the DOD in excess of $1 million.

91.    Upon information and belief, OLG deliberately concealed the repair bill from Key and Key obtained a copy of the repair bill from its outside consultant.

92.    Upon information and belief, the amount of the repair bill from OLG is woefully excessive and without cause or justification. In fact, upon Key's information and belief, the true cost of the repairs for the TO #31 Vehicles is actually a few hundred dollars per vehicle, and totaling no more than $10,000.00.

93.    Upon information and belief, the DOD has disputed, and continues to dispute, the amount of the repair bill. Upon information and belief, the DOD has seriously considered the option of purchasing some or all of the Vehicles.

94.    Upon information and belief, OLG has taken the position that the TO #31 Vehicles remain under lease by the DOD pursuant to the DOD Contract unless and until the full $1 million repair bill has been paid by the DOD.

13

95.    OLG's actions have unjustifiably and improperly prevented the DOD from purchasing the Vehicles, and interfered, and continue to interfere, with Key's rights to sell or remarket the TO #31 Vehicles.

96.    OLG's actions have caused and will continue to cause financial damage to Key.

97.    By reason of the foregoing, Key has sustained damages in an amount to be determined at trial, but in no event less than $1,925,000.00.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE AND SIXTH COUNTERCLAIM

98.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "97" as if more fully set forth herein.

99.    Pursuant to Section 3(n) of the Assignment Agreement, OLG, as seller, among other things, represented and warranted to Key, as purchaser, that "Seller has done and shall do nothing and knows of no facts or circumstances which would (i) materially impair the validity or value of the Contract, any rights created thereby, the Property or this Agreement...".

100.    Pursuant to Section 8(e) of the Assignment Agreement, OLG, as seller, among other things, covenanted and agreed that "Seller will not, without Purchaser's consent, ... take any action which impairs the rights or interest of Purchaser with respect to the Contract".

101.    By reason of OLG's actions described in paragraphs 90-94 above, from December 2007 to date, Key has not received any lease payments attributable to the TO #31 Vehicles, to which lease payments Key is entitled pursuant to the DOD Contract and the Assignment Agreement. Upon information and belief, the monthly lease payment for the TO #31 Vehicles is in an amount ranging from $1,545.00 to $2,316.00 per month per Vehicle (depending upon the Vehicle make).

14

102.    By reason of OLG's aforesaid actions, OLG has interfered with Key's entitlements and rights under the DOD Contract and the Assignment Agreement.

103.    OLG's actions are in breach of its representations, warranties and covenants to Key.

104.    By reason of OLG's breach, Key has suffered damages in an amount to be determined at trial, but in no event less than $512,168.00.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE
### AND SEVENTH COUNTERCLAIM

105.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "104" as if more fully set forth herein.

106.    Pursuant to Section 7 of the Assignment Agreement, OLG, as seller, agreed to indemnify and save Key, as purchaser, "harmless from and against any and all costs, losses, expenses (including attorneys' fees), damages, claims, demands, actions, causes of action and judgments of any nature arising out of, or resulting from, Seller's breach of the covenants, representations and warranties contained in this Agreement".

107.    By reason of the foregoing, Key is entitled to such costs and expenses, including attorneys' fees, as may be determined by this Court.

### AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE
### AND EIGHTH COUNTERCLAIM

108.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "107" as if more fully set forth herein.

109.    Pursuant to Assignment of Proceeds letters, including but not limited to, letters dated May 30, 2006, May 31, 2006, June 14, 2006, and July 21, 2006, respectively, OLG invoiced Key and Key funded the proceeds due for payment of the Vehicles leased under the DOD Contract (the "Invoices").

15

110.    Pursuant to the Invoices, Key paid funding proceeds in the total amount of $26,231,059.00.

111.    In making payment of said funding proceeds, Key relied upon OLG with regard to OLG's representation to Key of the fair market value of the Vehicles, based upon OLG's expertise and experience in the leasing of vehicles for use in connection with the United States military, and in Afghanistan in particular.

112.    Key relied upon OLG's representations as a material inducement for entering into the Assignment Agreement and contracts related thereto.

113.    Upon information and belief, OLG's representations were false and misleading.

114.    Upon information and belief, OLG substantially overcharged Key for the Vehicles. Specifically, upon information and belief, OLG purchased the Vehicles consisting of "soft vehicles" for the following amounts and then invoiced Key as follows:

| Vehicle | Amount paid by OLG | Amount invoiced to Key |
|---|---|---|
| Toyota Hilux | $24,005.00 | $75,036.00 |
| Mitsubishi Minibus | $19,847.00 | $64,992.00 |
| Mitsubishi Pajero | $23,212.00 | $73,740.00 |
| Toyota Land Cruiser | $32,334.04 | $95,688.00 |

115.    The amounts that OLG paid for the Vehicles consisting of "armored vehicles" is presently unknown to Key. However, upon information and belief, Key believes that OLG substantially overcharged Key for those Vehicles as well.

116.    By reason of the foregoing, Key relied upon OLG's representations to its detriment and has suffered financial damages as a direct result thereof.

117.    Pursuant to the Assignment Agreement and contracts related thereto, OLG owed Key a fiduciary duty of good faith and fair dealing.

118.    By virtue of the aforesaid, OLG breached its fiduciary duty of good faith and fair dealing.

16

119.    By virtue of the aforesaid, Key has been damaged in an amount to be determined at trial, but in no event less than $26,231,059.00.

### AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE
### AND NINTH COUNTERCLAIM

120.    Key repeats, reiterates and realleges the responses and allegations set forth in paragraphs "1" through "119" as if more fully set forth herein.

121.    Upon information and belief, upon the expiration of the lease for the TO #31 Vehicles on November 30, 2007, OLG made attempts to remarket the TO #31 Vehicles.

122.    In connection with OLG's attempts to remarket the TO #31 Vehicles, OLG presented Key with offers from prospective buyers to purchase all or some of the TO #31 Vehicles.

123.    Upon information and belief, the offers presented to Key by OLG were far below market value.

124.    Upon information and belief, OLG presented Key with offers from prospective buyers that were far below market value with the intention of then re-selling or re-leasing the Vehicles to other prospective buyers or lessees at a much higher price for OLG's own benefit.

125.    Upon the expiration of the leases for thirteen (13) Vehicles subject of Task Order Nos. 2, 5, 8, 10 and 12, OLG purchased those Vehicles from Key for the total sum of $185,762.00 (the "Additional Vehicles").

126.    OLG purchased the Additional Vehicles from Key for the total sum of $185,762.00, based upon OLG's representations to Key as to the fair market value of the Additional Vehicles.

127. Upon information and belief, OLG then re-leased the Additional Vehicles for a substantial profit to OLG that was far in excess of the alleged fair market value represented to Key and paid by OLG to Key for the Additional Vehicles.

128. By virtue of the aforesaid, OLG breached its fiduciary duty to Key of good faith and fair dealing under the Assignment Agreement and contracts related thereto.

129. By virtue of the aforesaid, Key has been damaged in an amount to be determined at trial.

WHEREFORE, Defendant prays for judgment as follows:

A.      dismissing the Complaint in its entirety with prejudice;

B.      on its First Counterclaim, granting rescission of the Assignment Agreement and awarding a return of the full amount of funding paid by Defendant to Plaintiff;

C.      on its Second Counterclaim, awarding Defendant damages in an amount to be determined at trial, but in no event less than $1,925,000.00;

D.      on its Third Counterclaim, awarding Defendant damages in an amount to be determined at trial, but in no event less than $1,925,000.00;

E.      on its Fourth Counterclaim, declaring that Defendant, as Plaintiff's assignee, has the right, as either lienholder or title owner, to recover possession of the Vehicles and to dispose of them, whenever Plaintiff would be entitled to recover possession of the Vehicles and to dispose of them;

F.      on its Fifth Counterclaim, awarding Defendant damages in an amount to be determined at trial, but in no event less than $1,925,000.00;

G.      on its Sixth Counterclaim, awarding Defendant damages in an amount to be determined at trial, but in no event less than $512,168.00;

18

H.    on its Seventh Counterclaim, awarding such costs and expenses, including

attorneys' fees, as may be determined by this Court;

I.    on its Eighth Counterclaim, awarding damages in an amount to be determined at

trial, but in no even less than $26,231,059.00;

J.    on its Ninth Counterclaim, awarding damages in an amount to be determined at

trial; and

K.    for such other and further relief as this Court may deem just and proper.

Dated: Garden City, New York
      May 2, 2008

                      MORITT HOCK HAMROFF & HOROWITZ LLP
                      Attorneys for Defendant

                      By:
                            Marc L. Hamroff, Esq. (MH-9283)
                            Terese L. Arenth, Esq. (TA-5167)
                      400 Garden City Plaza
                      Garden City, New York 11530
                      (516) 873-2000

F:\Key Equipment Finance\Overseas\Docs\Answer with Amended Counterclaims.doc

19

**Exhibit A**

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (this "Agreement") is made as of April 1, 2006 by and between Overseas Lease Group, Inc., a Delaware corporation with its principal office at 31 Dehart Street, Morristown, NJ 07960-5211 ("Seller") and KEY GOVERNMENT FINANCE, INC., with its principal office at 1000 South McCaslin Blvd. Superior, CO 80027, its successors and assigns ("Purchaser").

### INTRODUCTION:

Seller, and United States Department of Defense (the "User") have entered into that certain Contract (Contract No. W91B4M-06-D-0001), dated as of February 05, 2006 (the "Contract"), pursuant to which Seller has leased to the User, and the User has leased from Seller, the property described therein (the "Property"). Seller desires to sell, and Purchaser is willing to purchase, the Assigned Interest (as hereinafter defined).

**Section 1.    Assignment.** NOW, THEREFORE, in consideration of the covenants, warranties and representations hereinafter set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Purchaser agree as follows: FOR VALUE RECEIVED, including the payment by Purchaser of $460,502.46 due at closing (the "Purchase Price"). Seller does hereby sell, assign, transfer and set over unto Purchaser all of Seller's right, title and interest in and to (but none of its obligations under) the Assigned Interest.

**Section 2.    Assigned Interest.** As used herein, the term "Assigned Interest" shall mean the Contract and all amounts due and to become due under the Contract, including (without limitation) payments, insurance proceeds, and all monies payable or recoverable following a default or non-appropriation by User, and a first priority lien in favor of Purchaser in and to the Property, together with all proceeds (cash and non-cash, including insurance proceeds) of the foregoing and all of Seller's rights and remedies under the Contract, including (without limitation) the right to initiate and conclude any and all proceedings, legal, equitable or otherwise, that Seller otherwise might take, save for this Agreement. As used herein, the term "Contract" shall mean the Contract, together with all documents executed in connection with the Contract, including, without limitation, all documents listed on attached Schedule A.

**Section 3.    Representations and Warranties.** In order to induce Purchaser to enter into this Agreement and to accept the sale of the Assigned Interest, and security interest in the Property, Seller hereby represents and warrants to Purchaser that:

(a) the Contract was duly authorized and properly executed and delivered by the Seller and this Agreement was duly authorized and properly executed and delivered by Seller, and each is in full force and effect and represents a valid and enforceable obligation of Seller in accordance with its terms, subject to bankruptcy, insolvency or similar laws then in effect;

(b) the number and amount of the unpaid payments due under the Contract as of the date hereof are as stated in Exhibit 1 attached hereto;

(c) no security deposit or prepayment of payments has been paid to Seller by the User or any third party in connection with the Contract, and Seller has not granted, and will not grant, to the User any allowance, credit memo, adjustment, or enter into any settlement, modification or amendment of the Contract;

(d) attached hereto is a true, correct, and complete copy of the Contract, and the Contract is the sole and entire understanding and agreement between the User and Seller and there are no other agreements between them with respect to the Contract or the Property;

(e) all original counterparts of the Contract have been delivered to Purchaser;

(f) to the best of Seller's knowledge all of the Property has been accepted by the User in a condition satisfactory to the User in all respects and the Property is in possession of the User and, Seller has no knowledge of any casualty loss with respect to the Property;

(g) to the best of Seller's knowledge the Contract is free of any setoffs, counterclaims and defenses of any kind whatsoever;

(h) to the best of Seller's knowledge no event of default or event of non-appropriation has occurred and is continuing under the Contract , and no event has occurred which, with the lapse of time or the giving of notice, or both, would constitute an event of default or event of non-appropriation under the Contract;

(i) all representations and duties of Seller intended to induce the User to enter into the Contract, whether required by the Contract or otherwise, have been fulfilled and Seller is not in default with respect to any of its obligations under the Contract, nor has any event occurred and continued which with the passing of time or the giving of notice would constitute such a default by Seller;

(j) Seller has fully complied with all applicable federal and state laws, rules and regulations and has made all disclosures required by law in connection with the transactions contemplated by the Contract, prior to the consummation of the Contract;

(k) to the best of Seller's knowledge after due inquiry, all credit data submitted to Purchaser and all information set forth in the User's application for entry into the Contract is true and correct in all material respects;

(l)  Seller shall use proceeds hereof to pay supplier the purchase price, the Property and all taxes required to be paid in connection with the acquisition of the Property, and Seller is the sole owner of and has good and marketable title to the Property and Assigned Interest, free and clear of all liens and encumbrances of any nature whatsoever, other than the interest of the User under the Contract;

(m)  no prohibition exists, in the Contract or otherwise, and no consent of the User or any other party is required (other than consent which has already been provided), to the making of this Assignment;

(n)  Seller has done and shall do nothing and knows of no facts or circumstances which would (i) materially impair the validity or value of the Contract, any rights created thereby, the Property or this Agreement, or (ii) materially impair the ability of Seller to perform its obligations under the Contract or this Agreement;

(o)  all taxes due and payable by Seller as of the date hereof with respect to the Property and Assigned Interest have been, or will be paid;

(p)  this Assignment vest in Purchaser full right, title and interest and legal title of Seller in and to the Assigned Interest, free and clear of all claims, liens, security interests and encumbrances of any kind or character, except the right of User under the Contract, and the same shall be and remain free of all claims, liens, security interests and encumbrances arising through any act or omission of Seller or any person claiming by, through or under it;

(q)  the execution by Seller of this Agreement and of the Contract to which it is a party, and its participation in the transaction specified herein, is in its ordinary course of business and within the scope of its existing corporate authority and Seller has full power and authority to enter into, and has taken all necessary action to authorize the execution and delivery of the Contract and, this Agreement and to perform the terms and conditions hereof and thereof;

(r)  neither the execution and delivery of this Agreement, nor the consummation of the transaction contemplated hereby will conflict with or result in a breach of any of the terms, conditions or provisions of the organizational documents of Seller, or of any law or regulation, order, writ, injunction or decree of any court or government instrumentality, or of any agreement or instrument to which Seller is a party or by which it or to which it or its assets is subject;

(s)  intentionally left blank

(t)  the Contract constitutes a separate instrument of lease, enforceable by Purchaser without regard to other equipment schedules executed pursuant to the Contract.

Seller's representations and warranties under this Section shall be continuing representations and warranties made as of the date of this Agreement and shall survive the assignment of the Assigned Interest to Purchaser.

**Section 4.    Intentionally left blank.**

**Section 5.    Duties of Seller at Closing.** Seller shall deliver to Purchaser, unless waived in writing by Purchaser: (a) all original counterparts of the Contract, duly executed by the User thereunder, and the completion, installation or acceptance certificate by whatever name executed by such User with respect to the Property leased under the Contract; (b) a duly executed notice of assignment; (c) such other documents and certificates as Purchaser may reasonably request; and (i) such documents and instruments (if any) as reasonably may be required by Purchaser to effect the grant of security interest by Seller to Purchaser in the Property and assignment by Seller to Purchaser of any warranties solely to the extent applicable to the Property.

**Section 6.    Seller's Obligations Under the Contract.** Purchaser shall have all of the rights of the Seller under the Contract, but none of Seller's obligations thereunder. This Agreement (and the assignment of such rights) shall not relieve Seller of any of its obligations under the Contract and Seller shall continue to perform all such obligations. Purchaser shall not be obligated to assume, and by its acceptance of this assignment shall not be deemed to have assumed, any of Seller's obligations under the Contract.

**Section 7.    Indemnification.** Seller hereby agrees to indemnify and save Purchaser harmless from and against any and all costs, losses, expenses (including attorneys' fees), damages, claims, demands, actions, causes of actions and judgments of any nature arising out of, or resulting from, Seller's breach of the covenants, representations and warranties contained in this Agreement. Purchaser will indemnify and save Seller harmless from and against any and all costs, losses, expenses (including attorneys' fees), damages, claims, demands, actions, causes of actions and judgments of any nature arising out of, or resulting from, Purchaser's actions or failure to act in connection with the Assigned Interests. The indemnity set forth in this Section shall survive the expiration or earlier termination of this Agreement or the Contract with respect to acts or events occurring or alleged to have occurred prior to such expiration or early termination.

**Section 8.    Covenants and Agreements.** Seller hereby covenants and agrees with Purchaser as follows:

(a)  Purchaser may endorse Seller's name on any remittances received from the User with respect to the Contract and/or the Property.

(b) Seller shall pay or cause to be paid by the User all personal property taxes, including tangible and intangible personal property, license, privilege, documentary, sales and other like taxes or charges or taxes in lieu thereof, applicable to any of the transactions contemplated by this Agreement, and which have been imposed, assessed or accrued at or prior to the time of assignment against the Property, this Agreement, the Contract or Purchaser, except for taxes measured or imposed on the net income of Purchaser.

(c) Seller shall, from time to time at the request of Purchaser, execute and deliver such further acknowledgments, agreements and instruments of assignment, transfer and assurance, and do all such further acts and things as may be necessary or appropriate in the reasonable opinion of Purchaser to give effect to the provisions hereof and to more perfectly confirm the rights, titles and interests hereby assigned and transferred to Purchaser.

(d) Seller shall notify Purchaser promptly upon obtaining knowledge of any default in the performance of the User's obligation under the Contract, including, without limitation, the payment of sums due under the Contract.

(e) Seller will not, without Purchaser's prior written consent: solicit or accept collection of any installment payments due under the Contract; modify, amend or terminate the Contract; waive any of Purchaser's rights thereunder; or take any action which impairs the rights or interest of Purchaser with respect to the Contract.

(f) If any payments under the Contract are made to Seller after the effective date of this Agreement, Seller agrees to promptly transmit such payment(s) to Purchaser in the same form as they are received, except that Seller will endorse, to the order of Purchaser, checks so received which are made payable to it, or otherwise pay such amount to Purchaser.

(g) Seller shall allow Purchaser and its representatives free access and right of inspection at all times to any Equipment at its location, subject, however, to the rights of the User under the Contract.

(h) Seller irrevocably constitutes and appoints Purchaser and any present or future officer or agent of Purchaser, or its successors or assigns, as its lawful attorney with full power of substitution and re-substitution, and in the name of Seller or otherwise, to collect and to sue in any court for payments due or to become due under the Contract, to withdraw or settle any claims, suits or proceedings pertaining to or arising out of the Contract, upon such terms as Purchaser in its discretion may deem to be in its best interest, all without notice to or assent of Seller and, further, to take possession and to endorse in the name of Seller any instrument for the payment of money received on account of the payments due under the Contract.

**Section 9.    Miscellaneous.** This Agreement shall be governed by, and interpreted and enforced under, the internal laws of the State of Utah (without regard to the conflict of laws principles of such state). All references herein to any agreements shall be to such agreement as amended or modified to the date of reference. The words "herein," "hereof" and "hereunder" shall refer to this Agreement as a whole and not to any particular section or subsection of this Agreement. All notices hereunder shall be in writing and hand delivered, sent by facsimile (with confirmation of receipt) or sent by overnight courier service or by certified mail, addressed to the parties at the address specified above, or to such other address as either party may specify hereunder; and shall be effective upon receipt.

**Section 10.    Entire Agreement; No Assignment.** This Agreement is the entire agreement between Purchaser and Seller with respect to the subject matter hereof and it may not be supplemented or amended except by a writing, which is signed by both parties. This Agreement shall inure to the benefit of and be binding on Seller and Purchaser, and their respective successors and assigns. Notwithstanding the foregoing, Seller may not assign it rights, or delegate its obligations, under this Agreement without the express prior written consent of Purchaser. Purchaser may assign its rights and obligations hereunder, in whole or in part, at any time.

**Section 11.    Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all such counterparts shall constitute but one and the same instrument.

**Section 12.    Not an Extension of Credit.** This Agreement constitutes a sale of 100% ownership interest in the Assigned Interest and shall in no way be construed as an extension of credit by Purchaser to Seller. Seller waives and releases any right, title or interest that it may have (whether pursuant to a "cross-collateralization" provision or otherwise) in and to any of the Assigned Interest, and/or the Contract.

**Section 13.    Waiver of Jury Trial.** THE PARTIES HEREBY UNCONDITIONALLY WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT OR ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF.

IN WITNESS WHEREOF, the parties have executed this Assignment Agreement as of the day and year first above written.

| | |
|---|---|
| Seller: Overseas Lease Group, Inc. | Purchaser: KEY GOVERNMENT FINANCE, INC. |
| By: | By: |
| Name: E G BADCOCK | Name: |
| Title: President | Title: |

**EXHIBIT 1**

SPECIFICATION OF ASSIGNED SCHEDULE

Executed pursuant to that certain Assignment Agreement dated as of April 1, 2006 (the "Agreement"), by and between Overseas Lease Group, Inc. as Seller, and KEY GOVERNMENT FINANCE, INC. as Purchaser.

This Specification is dated and effective as of the date set forth below and incorporates the terms and conditions of the Agreement.

1.  User: United States Department of Defense, under Contract No. W91B4M-06-D-0001-P00001, including all Modifications and Delivery Orders issued under said Contract.

2.  Date of Contract: January 19, 2006

3.  Total Invoice Cost: $460,502.46. (See Assignment of Proceeds Letter for break-out of payment)

4.  Remaining payments due under the Contract: 59 monthly payments in arrears. 1-11 @ $13,896.00; 13-24 @ $13,248.00; 25-36 @ $9,480.00; 37-48 @ $5,910.00; 49-60 @ $5,310.00.

5.  Consideration: $460,502.46

Date of Execution: _27 April 2006_

Seller:                                             Purchaser:

Overseas Lease Group, Inc.                          KEY GOVERNMENT FINANCE, INC.

By: _____                         By:_____

Name: _E G BADCOCK_                                 Name:_____

Title: _president_                                  Title:_____

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                            ) ss.:

COUNTY OF NASSAU     )

      MARYANNE VOGEL, being duly sworn deposes and say:

      I am not a party to the action, am over 18 years of age and reside in Farmingdale, New York.

      On the 2nd day of May, 2008, I served true copies of the within ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIMs. via first class mail, in a sealed envelope, with postage prepaid thereon, in an official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

      PAUL BATISTA, P.C.
      26 Broadway - Suite 1900
      New York, New York 10004
      Attn: Paul Batista, Esq.

_____
MARYANNE VOGEL

Sworn to before me this
2nd day of May, 2008

_____
Notary Public

DAGMAR E. ROWINSKY
NOTARY PUBLIC, State of New York
No. 4789327
Qualified in Nassau County
Commission Expires 10-31-09

F:\Key Equipment Finance\Overseas\Docs\AOS Answer 5 2 08.doc

08 Civ. 01696

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OVERSEAS LEASE GROUP, INC.

Plaintiff,

- against -

KEY GOVERNMENT FINANCE, INC.

Defendant.

---

**ANSWER, AFFIRMATIVE DEFENSES AND
AMENDED COUNTERCLAIMS**

---

**MORITT HOCK HAMROFF & HOROWITZ LLP**
*Attorneys for Defendant*
400 GARDEN CITY PLAZA, SUITE 202
GARDEN CITY, NEW YORK 11530
(516) 873-2000
