UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
OVERSEAS LEASE GROUP, INC.,                    08 Civ. 01696 (SAS)(THK)

                Plaintiff,

    - against -

KEY GOVERNMENT FINANCE, INC.,

                Defendant.
-------------------------------------------------------------------x


### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS FOURTH AMENDED COUNTERCLAIM AND OTHER RELIEF


MORITT HOCK HAMROFF & HOROWITZ LLP
Attorneys for Defendant
400 Garden City Plaza
Garden City, NY 11530
(516) 873-2000


On the Brief:  Terese L. Arenth, Esq. (TA-5167)
               Marc L. Hamroff, Esq. (MH-9283)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT FACTS ..............................................................................................................3

ARGUMENT ..........................................................................................................................7

POINT I         PARTIAL SUMMARY JUDGMENT IS APPROPRIATE
AND WARRANTED ...................................................................................7

POINT II        THE ASSIGNMENT AGREEMENT IS CLEAR AND UNAMBIGUOUS,
WARRANTING ENFORCEMENT BY ITS TERMS ..................................7

POINT III      RULE 54(b) SHOULD BE GRANTED CONCERNING THE
PARTIAL SUMMARY JUDGMENT AGAINST OLG ON THE
FOURTH COUNTERCLAIM .......................................................................9

CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Air Support International, Inc. v. Atlas Air, Inc., 54 F.Supp.2d 158 (E.D.N.Y. 1999)...................8

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986).........................................7

Battery Associates, Inc. v. J & B Battery Supply, Inc., 944 F.Supp. 171 (E.D.N.Y. 1996) ...........8

Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1 (1980).......................................................9

Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481 (2d Cir. 1999) .........................8

Roco Carriers, Ltd. v. M/V Nurnberg Exp., 899 F.2d 1292 (2d Cir. 1990) ...................................7

Sears, Roebuck & Co. v. Mackey, 351 U.S. 427 (1956)...............................................................10

**Statutes**

Rule 42(b) of the Federal Rules of Civil Procedure ........................................................................1

Rule 54(b) of the Federal Rules of Civil Procedure ....................................................................1, 9

Rule 56 of the Federal Rules of Civil Procedure.........................................................................1, 7

## **PRELIMINARY STATEMENT**

This Memorandum of Law is respectfully submitted in support of the motion by Defendant Key Government Finance, Inc. ("Key"): (i) pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment as to Key's Fourth Amended Counterclaim against Plaintiff, Overseas Lease Group, Inc. ("OLG"), which seeks a declaratory judgment declaring that Key, as OLG's assignee and lienholder,[1] has the right to recover possession and to dispose of the vehicles described below in an effort to mitigate its losses, whenever OLG would be or have been entitled to recover possession of such vehicles and to dispose of them; (ii) pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, severing and continuing Defendant's First, Second, Third, Fifth, Sixth, Seventh, Eighth and Ninth Counterclaims against Plaintiff; and (iii) pursuant to Rule 54(b), granting certification of the summary judgment on Defendant's Fourth Amended Counterclaim against Plaintiff.

Key's motion is fairly simple and straightforward. It is premised upon the clarification and declaration of the relative rights between Key and OLG to recover and dispose of certain vehicles when entitled to under OLG's contract with the United States Department of Defense ("DOD"), such as with the early termination of the lease of those vehicles by the DOD. Key financed OLG's leases to the DOD and, as OLG's assignee and lienholder of the subject vehicles, to effectively attempt to mitigate its losses under the financing of the OLG transaction, Key must be able to enforce its rights with respect to its collateral and pursue the rights and remedies of OLG as OLG's assignee without interference.

This motion has been necessitated by OLG's interference with Key's rights to enforce all of its rights and remedies to recover possession, and to dispose, of the vehicles described below

---

[1] Key's Fourth Amended Counterclaim seeks relief as either title owner or assignee/lienholder. For purposes of this motion only, Key is only seeking relief with respect to its rights as the assignee of OLG's rights and remedies and as lienholder.

1

as and when they come off lease, including OLG's failure and refusal to turn over and deliver to Key the titles, title certificates and all indicia of ownership of the vehicles so as to enable Key to convey title to buyers of the vehicles, in direct contravention of Key's rights as OLG's assignee pursuant to its written agreements. Key is in imminent danger of losing prospective buyers for 77 of the subject vehicles at $25,000 each, for a total proposed sale of $1,925,000. By precluding Key from consummating the sale of those vehicles, which depreciate with each passing day, Key will suffer direct and immediate material financial loss. In addition thereto, the location and nature of both the vehicles and Key's prospective buyers creates exigent circumstances for its ability to consummate the proposed sales. The vehicles consist of all-wheel drive, non-armored vehicles located in the war zone of Afghanistan. In this territory, these types of vehicles are scarce and at significant risk of damage or total loss as they sit unprotected in a field storage lot. The prospective buyer for 70 of those vehicles requires the vehicles in connection with a contract to provide necessary security services to the U.S. Embassy in this war zone, necessitating an expeditious resolution to Key's Fourth Amended Counterclaim so that it may complete the sale as soon as possible. Key has been constrained to seek this relief since OLG has asserted that Key cannot take any action to dispose (by re-lease or sale or otherwise) of the vehicles, claiming that only OLG can take such actions. An expeditious resolution of the issue concerning Key's rights with respect to the disposition of these 77 vehicles will also provide needed clarity with respect to Key's rights as to additional vehicles that remain under contract with the Department of Defense as and when they come off lease.

As will be shown below, there are no genuine issues of material fact to be tried with regard to Key's Fourth Amended Counterclaim, warranting entry of summary judgment in Key's favor on its claim.

## RELEVANT FACTS

### The Agreements

Key conducts financing activities in all 50 states and in several countries. OLG is in the business of purchasing vehicles, including trucks and armored trucks, and leasing vehicles primarily to the DOD for use in connection with United States military operations in Afghanistan. See Affidavit of David Karpel ("Karpel Aff."), sworn to May 1, 2008 at ¶ 4.

OLG and the DOD entered into a certain contract, Contract No. W91B4M-06-D-0001 (the "DOD Contract") dated as of February 5, 2006, pursuant to which OLG leased to the DOD and the DOD leased from OLG, the property described therein and on certain "Task Orders" issued by the DOD consistent therewith (the "Vehicles"). Karpel Aff., ¶ 5 and Exhibits "A" and "B".

Pursuant to various Assignment of Proceeds Letters thereafter issued by OLG to Key in connection with the DOD Contract, OLG invoiced Key and Key funded the proceeds due under invoice for payment of the Vehicles leased by OLG to the DOD. In total, Key paid funding proceeds in the sum of $26,231,059.00 to OLG. Karpel Aff., ¶ 6.

By Assignment Agreement dated as of April 1, 2006 (the "Assignment Agreement") by and between OLG, as seller, and Key, as purchaser, OLG indisputably sold, assigned, transferred and set over unto Key all of OLG's "right, title and interest in and to (but none of its obligations under) the [DOD Contract]" and

> "all amounts due and to become due under the Contract, including (without limitation) payments, insurance proceeds, and all monies payable or recoverable following a default or non-appropriation by [the DOD], <u>and a first priority lien in favor of Purchaser in and to the Property</u>, together with all proceeds (cash and non-cash, including insurance proceeds) of the foregoing and <u>all of Seller's rights and remedies under the Contract</u>, including (without limitation) the right to initiate and conclude any and all proceedings,

3

legal, equitable or otherwise, that Seller otherwise might take, save for this Agreement". (Emphasis added).

Karpel Aff., ¶ 7 and Exhibit "C" at Sections 1 and 2.

Pursuant to Section 6 of the Assignment Agreement, Key "shall have all of the rights of [OLG] under the [DOD] Contract, but none of [OLG's] obligations thereunder...". See Karpel Aff., Exhibit "C" at Section 6.

In accordance with the terms of the DOD Contract, the DOD provided OLG with, among others, Task Order #31, pursuant to which OLG leased to the DOD and the DOD leased from OLG seventy (70) Vehicles identified therein (the "TO #31 Vehicles"). Key financed OLG's lease of the Vehicles (as indicated in the Assignment of Proceeds letters) based on a 5 year contract, although the DOD was only committed to the first year, with 4 option years in which it had the right on a year-by-year basis to "non-renew" the transaction and return the Vehicles to OLG (and, once OLG assigned the lease(s), to OLG's assignee -- here, Key). Karpel Aff., ¶ 9.

On or about September 11, 2007, the DOD gave notice of its non-renewal of its lease of the TO #31 Vehicles, which expired on November 30, 2007, and returned said Vehicles to OLG on or about December 1, 2007 in accordance with the DOD Contract. Several months thereafter, the DOD indicated an intent to return and not exercise its option with respect to the majority of the other remaining Task Orders covering non-armored vehicles. Karpel Aff., ¶ 10.

OLG (and hence Key) is entitled to possession of the Vehicles under TO #31 since the DOD did not exercise its option to extend the term of the Contract under Sec. 52.217-9 of the Contract (the relevant portions of which are annexed as Exhibit "D" to the Karpel Affidavit).[2]

---

[2] As indicated by Key's counsel in the pre-motion conference, Key does not seek any finding that OLG or Key is entitled to possession of any Vehicles under the DOD Contract (although Key believes it is entitled to such possession). Key only seeks by this motion an order <u>declaring that when, under the DOD Contract or applicable law, the lessor OLG may recover possession of the Vehicles and dispose of them, that right belongs to Key as OLG's assignee</u>.

4

Attached as Exhibit "E" to the Karpel Affidavit is an email dated September 17, 2007 from Sergeant Marlon T. McGee informing that all Vehicles regarding TO #31 will be turned in, with responding emails from No Lemon (the field storage lot to which the Vehicles would be surrendered) acknowledging the same. Further, on March 31, 2008, Lt. Col. Branley Fishel wrote to OLG that "as Task Order 31 has expired, [the Government] needs to return the vehicles to OLG asap". (See Karpel Affidavit, Exhibit "F"). There can be no dispute that these Vehicles have already been returned, no option to renew has been exercised and Key, as assignee of all of OLG's rights under the Assignment Agreement, should be free to dispose of the Vehicles as secured party.

**OLG's Refusal and Failure to Permit Key to Dispose of its Collateral**

Upon the expiration of TO # 31, Key contacted OLG to confirm that OLG would cooperate and deliver title to the TO #31 Vehicles in the event that Key found buyers through its own efforts, and OLG verbally agreed to do so. Relying upon OLG's agreement, Key undertook efforts to sell or remarket the TO #31 Vehicles. Karpel Aff., ¶ 12.

In or about February 2008, Key successfully located a prospective buyer for seven (7) of the TO #31 Vehicles, for a total purchase price of $175,000.00. Karpel Aff., ¶ 13.

In or about February 2008, Key informed OLG that it had located a prospective buyer for seven (7) of the TO #31 Vehicles. Karpel Aff., ¶ 14. Most recently, this prospective buyer obtained funding for the immediate purchase and delivery of four (4) of the Vehicles and has agreed to purchase the remaining three (3) vehicles in June. Key now has a prospective buyer for an additional seventy (70) Toyota Land Cruisers, which are comprised in part from TO #31 and in part from Task Order #25 (which has also expired), at $25,000 each, for a total proposed sale of $1,750,000. Karpel Aff., ¶ 15.

5

Despite Key's demand therefor, and contrary to its verbal and written agreement, OLG has intentionally, and without cause or justification, failed and refused to turn over the titles for the Vehicles, including the Vehicles for which Key has located prospective buyers, precluding Key from consummating the sale of those vehicles. OLG's failure and refusal to turn over the titles for the Vehicles is in derogation of Key's rights to the Vehicles as OLG's assignee and lienholder under the Assignment Agreement and its rights to remarket those Vehicles as its collateral. Karpel Aff., ¶¶ 16-17.

In the absence of clarity with respect to Key's rights to recover and sell its collateral, including obtaining the titles from OLG and its cooperation in permitting Key to consummate the sale of its collateral, Key stands to lose its prospective buyers of the Vehicles, at a significant and material financial loss to Key. OLG would have the Court believe that Key has no remedy to dispose of the Vehicles on terminated contracts. There is nothing in the agreements that prevent Key from enforcing its rights against the Vehicles, as assignee and secured party. This will continue if future vehicles are returned by the DOD. Karpel Aff., ¶ 18.

In addition to TO #31, Task Orders pertaining to the leases of over 90 additional non-armored Vehicles are soon due to expire in the upcoming months and the DOD has indicated that it is not likely to exercise its options to renew those Task Orders for part or all of their remaining terms. Pursuant to the Assignment Agreement, it is undisputed that Key likewise holds a security interest in the more than 90 additional non-armored Vehicles subject of the other Task Orders that are soon due to expire. As with TO #31, OLG has failed and refused to permit Key to dispose of those Vehicles as well, and has taken the position that Key has no rights to protect, preserve and dispose of this collateral, all in direct contravention of its contractual obligations

and agreements and the <u>complete and absolute assignment</u> of all of OLG's rights. Karpel Aff., ¶ 19.

## ARGUMENT

### POINT I

### PARTIAL SUMMARY JUDGMENT IS APPROPRIATE AND WARRANTED

Summary judgment is appropriate if there is a demonstration that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). Material facts, for summary judgment purposes, are facts that might affect the outcome of the action under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505 (1986). Thus, summary judgment will lie where the dispute as to any material fact is not "genuine", <u>i.e.</u>, that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. <u>Id.</u> The burden is on the party opposing summary judgment to come forward with specific facts showing that there is a genuine issue for trial. <u>Roco Carriers, Ltd. v. M/V Nurnberg Exp.</u>, 899 F.2d 1292 (2d Cir. 1990).

In the instant case, as demonstrated below, there are no genuine issues of fact to be tried with respect to Key's Fourth Amended Counterclaim for a declaratory judgment as to Key's rights to recover possession and to dispose of the vehicles as OLG's assignee and lienholder, based upon the clear and unambiguous terms of the written agreements between Key and OLG.

### POINT II

### THE ASSIGNMENT AGREEMENT IS CLEAR AND UNAMBIGUOUS, WARRANTING ENFORCEMENT BY ITS TERMS

In its Complaint in this action, OLG has taken the untenable position that Key is not entitled to recover the Vehicles when they are "non-renewed" by the DOD or to otherwise

7

transfer the Vehicles to third-party purchasers to mitigate Key's loss when these Vehicles are returned early.  See Affirmation of Terese L. Arenth, dated May 1, 2008, Exhibit "1" at ¶¶ 12-13. Based thereon, OLG has refused to deliver the titles to the Vehicles to Key and to permit Key to consummate the sale of the Vehicles.  Instead, OLG has commenced this Action alleging that Key's attempt to recover and dispose of the Vehicles violates OLG's rights under the Assignment Agreement.  OLG's position, however, flies in the face of the clear and unambiguous terms of the Assignment Agreement, pursuant to which OLG indisputably sold, assigned, transferred and set over unto Key all of OLG's "right, title and interest in and to (but none of its obligations under) the [DOD Contract]" and

> "all amounts due and to become due under the Contract, including (without limitation) payments, insurance proceeds, and all monies payable or recoverable following a default or non-appropriation by [the DOD], <u>and a first priority lien in favor of Purchaser in and to the Property</u>, together with all proceeds (cash and non-cash, including insurance proceeds) of the foregoing and <u>all of Seller's rights and remedies under the Contract, including (without limitation) the right to initiate and conclude any and all proceedings, legal, equitable or otherwise, that Seller otherwise might take, save for this Agreement</u>". (Emphasis added).

See Karpel Affidavit, Exhibit "C" at Sections 1 and 2.  Pursuant to Section 6 of the Assignment Agreement, Key "shall have all of the rights of [OLG] under the [DOD] Contract, but none of [OLG's] obligations thereunder...".  See Exhibit "C" at Section 6.

"When an agreement's terms are clear and unambiguous, there is no need to resort to other means of interpretation to determine their meaning." Battery Associates, Inc. v. J & B Battery Supply, Inc., 944 F.Supp. 171, 175 (E.D.N.Y. 1996).  Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement.  Id. Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation.  Air Support International, Inc. v. Atlas Air, Inc., 54 F.Supp.2d 158, 165-66 (E.D.N.Y. 1999); accord Red Ball Interior Demolition Corp. v.

8

Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999)(if a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself).

Taken together, Section 2 and Section 6 of the Assignment Agreement clearly entitle Key to recover possession and dispose of the Vehicles as and when OLG would have been entitled to. Upon the DOD's termination of the task order attributable to the lease and its return of the collateral, Key must be entitled to exercise its rights and remedies under the Assignment Agreement, which includes its right to take possession, and dispose, of the TO #31 Vehicles and other Vehicles from time-to-time. By application of the foregoing, OLG's position that Key is not entitled to recover possession of or to dispose of the Vehicles, is inconsistent with the clear and unambiguous terms of the Assignment Agreement, the plain meaning of which should be enforced.

## POINT III

### RULE 54(b) SHOULD BE GRANTED CONCERNING THE PARTIAL SUMMARY JUDGMENT AGAINST OLG ON THE FOURTH AMENDED COUNTERCLAIM

In an action involving multiple claims for relief or multiple parties, Rule 54(b) certification may be granted if two requirements are satisfied:

1)   The decision involving one or more of the claims and effecting one or more of the parties must be a "final judgment"; and

2)   There must be no just reason for delay.

Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7-8 (1980).

The first requirement is clearly fulfilled by any summary judgment against OLG on the Fourth Amended Counterclaim for a declaratory judgment. The Supreme Court has explained the "final judgment" requirement as follows:

9

> It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action.

Curtiss-Wright, 446 U.S. at 7, quoting, Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956). Such a summary judgment meets this definition by reaching an ultimate disposition on Key's counterclaim against OLG for a declaratory judgment. The exigent circumstances described above and in the Karpel Affidavit demonstrate that there is no just reason for delay of Key's entitlement to immediate entry of judgment against OLG on its Fourth Amended Counterclaim. Any other decision would leave uncertainty between Key and any prospective buyer of Vehicles as to Key's ability to convey good title to these Vehicles vis-a-vis OLG.

Accordingly, it is respectfully submitted that Key's motion for certification pursuant to Rule 54(b) be granted.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that Defendant's motion be granted in its entirety.

Dated: Garden City, New York
       May 2, 2008

          Respectfully submitted,

          MORITT HOCK HAMROFF & HOROWITZ LLP
          Attorneys for Defendant

          By: _____
          Terese L. Afenth, Esq. (TA-5167)
          Marc L. Hamroff, Esq. (MH-9283)
          400 Garden City Plaza
          Garden City, NY 11530
          (516) 873-2000

F:\Key Equipment Finance\Overseas\Docs\SJ Memo Of Law.Doc