UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
OVERSEAS LEASE GROUP, INC.,                       08 Civ. 01696 (SAS)(THK)

                Plaintiff,

    - against -                                            **DEFENDANT'S STATEMENT**
                                                   **OF UNDISPUTED FACTS**
KEY GOVERNMENT FINANCE, INC.,

                Defendant.
-----------------------------------------------------------------x

       Pursuant to Local Civil Rule 56.1, set forth below are the material facts as to which the Defendant, Key Government Finance, Inc. ("Key"), contends that there are no genuine issues to be tried:

       1.     Key conducts financing activities in all 50 states and in several countries. (Affidavit of David Karpel ("Karpel Aff."), sworn to May 1, 2008, at ¶ 4).

       2.     OLG is in the business of purchasing vehicles, including trucks and armored trucks, and leasing vehicles primarily to the United States Department of Defense (the "DOD") for use in connection with United States military operations in Afghanistan. (Karpel Aff., ¶ 4).

       3.     OLG and the DOD entered into a certain contract, Contract No. W91B4M-06-D-0001 (the "DOD Contract") dated as of February 5, 2006, pursuant to which OLG leased to the DOD and the DOD leased from OLG, the property described therein and on certain "Task Orders" issued by the DOD consistent therewith (the "Vehicles"). (Karpel Aff., ¶ 5 and Exhibits "A" and "B").

       4.     Pursuant to various Assignment of Proceeds Letters thereafter issued by OLG to Key in connection with the DOD Contract, OLG invoiced Key and Key funded the proceeds due

under invoice for payment of the Vehicles leased by OLG to the DOD. In total, Key paid funding proceeds in the sum of $26,231,059.00 to OLG. (Karpel Aff., ¶ 6).

5. By Assignment Agreement dated as of April 1, 2006 (the "Assignment Agreement") by and between OLG, as seller, and Key, as purchaser, OLG sold, assigned, transferred and set over unto Key all of OLG's "right, title and interest in and to (but none of its obligations under) the [DOD Contract]" and

> "all amounts due and to become due under the Contract, including (without limitation) payments, insurance proceeds, and all monies payable or recoverable following a default or non-appropriation by [the DOD], and a first priority lien in favor of Purchaser in and to the Property, together with all proceeds (cash and non-cash, including insurance proceeds) of the foregoing and all of Seller's rights and remedies under the Contract, including (without limitation) the right to initiate and conclude any and all proceedings, legal, equitable or otherwise, that Seller otherwise might take, save for this Agreement".

(Karpel Aff., ¶ 7 and Exhibit "C").

6. Pursuant to Section 6 of the Assignment Agreement, Key "shall have all of the rights of [OLG] under the [DOD] Contract, but none of [OLG's] obligations thereunder...". (Karpel Aff., Exhibit "C" at Section 6).

7. In accordance with the terms of the DOD Contract, the DOD provided OLG with, among others, Task Order #31, pursuant to which OLG leased to the DOD and the DOD leased from OLG seventy (70) Vehicles identified therein (the "TO #31 Vehicles"). (Karpel Aff., ¶ 9).

8. Key financed OLG's lease of the Vehicles (as indicated in the Assignment of Proceeds letters) based on a 5 year contract, although the DOD was only committed to the first year, with 4 option years in which it had the right on a year-by-year basis to "non-renew" the transaction and return the Vehicles to OLG (and, once OLG assigned the lease(s), to OLG's assignee -- here, Key). (Karpel Aff., ¶ 9).

9. On or about September 11, 2007, the DOD gave notice of its non-renewal of its lease of the TO #31 Vehicles, which expired on November 30, 2007, and returned said Vehicles to OLG on or about December 1, 2007 in accordance with the DOD Contract. Several months thereafter, the DOD indicated an intent to non-renew some or all of the other remaining Task Orders covering non-armored vehicles. (Karpel Aff., ¶ 10).

10. OLG (and hence Key) is entitled to possession of the Vehicles under TO #31 since the DOD did not exercise its option to extend the term of the DOD Contract under Sec. 52.217-9 thereof. (Karpel Aff., ¶ 11 and Exhibit "D").

11. By email dated September 17, 2007 from Sergeant Marlon T. McGee, the DOD informed OLG that all Vehicles regarding TO #31 will be turned in, with responding emails from No Lemon (the field storage lot to which the Vehicles would be surrendered) acknowledging the same. (Karpel Aff., Exhibit "E").

12. On March 31, 2008, Lt. Col. Branley Fishel wrote to OLG that "as Task Order 31 has expired, [the Government] needs to return the vehicles to OLG asap". (Karpel Aff., Exhibit "F").

13. There is no dispute that the Vehicles have already been returned, no option to renew has been exercised and Key, as assignee of all of OLG's rights under the Assignment Agreement, should be free to dispose of the Vehicles as secured party. (Karpel Aff., ¶ 11).

14. Upon the expiration of TO # 31, Key contacted OLG to confirm that OLG would cooperate and deliver title to the TO #31 Vehicles in the event that Key found buyers through its own efforts, and OLG verbally agreed to do so. Relying upon OLG's agreement, Key undertook efforts to sell or remarket the TO #31 Vehicles. (Karpel Aff., ¶ 12).

15. In or about February 2008, Key successfully located a prospective buyer for seven (7) of the TO #31 Vehicles, for a total purchase price of $175,000.00. (Karpel Aff., ¶ 13).

16. In or about February 2008, Key informed OLG that it had located a prospective buyer for seven (7) of the TO #31 Vehicles. (Karpel Aff., ¶ 14).

17. Most recently, Key's prospective buyer has obtained funding for the immediate purchase of four (4) of the Vehicles, and has agreed to purchase the remaining three (3) vehicles in June. (Karpel Aff., ¶ 15).

18. Key now has a prospective buyer for an additional seventy (70) Toyota Land Cruisers, which are comprised in part from TO #31 and in part from Task Order #25 (which has also expired), at $25,000 each, for a total proposed sale of $1,750,000. (Karpel Aff., ¶ 15).

19. Despite Key's demand therefor, and contrary to its verbal and written agreement, OLG has intentionally, and without cause or justification, failed and refused to turn over the titles for the Vehicles, including the Vehicles for which Key has located prospective buyers. (Karpel Aff., ¶ 16).

20. The vehicles consist of all-wheel drive, non-armored vehicles located in the war zone of Afghanistan. In this territory, these types of vehicles are scarce and at significant risk of damage or total loss as they sit unprotected in a field storage lot. (Karpel Aff., ¶ 2).

21. Key's prospective buyer for 70 of the Vehicles requires the vehicles in connection with a contract to provide necessary security services to the U.S. Embassy in this war zone. (Karpel Aff., ¶ 2).

22. There is nothing in the subject agreements that prevent Key from enforcing its rights against the Vehicles, as OLG's assignee and secured party. (Karpel Aff., ¶ 18 and Exhibit "C").

23. In addition to TO #31, Task Orders pertaining to the leases of over 90 additional non-armored Vehicles are soon due to expire in the upcoming months and the DOD has indicated that it is not likely to exercise its options to renew those Task Orders for part or all of their remaining terms. (Karpel Aff., ¶ 19).

24. Pursuant to the Assignment Agreement, it is undisputed that Key likewise holds a security interest in the more than 90 additional non-armored Vehicles subject of the other Task Orders that are soon due to expire. (Karpel Aff., ¶ 19).

25. As with TO #31, OLG has failed and refused to permit Key to dispose of the Vehicles referenced in paragraph 24 above as well, and has taken the position that Key has no rights to protect, preserve and dispose of this collateral. (Karpel Aff., ¶ 19).

26. OLG's actions as described in paragraph 25 above are in direct contravention of its contractual obligations and agreements and the complete and absolute assignment of all of OLG's rights to Key. (Karpel Aff., ¶ 19).

Dated: Garden City, New York
May 2, 2008

Respectfully submitted,

MORITT HOCK HAMROFF & HOROWITZ LLP
Attorneys for Defendant

By: _____
Terese L. Arenth, Esq. (TA-5167)
Marc L. Hamroff, Esq. (MH-9283)
400 Garden City Plaza
Garden City, NY 11530
(516) 873-2000

F:\Key Equipment Finance\Overseas\Docs\Undisputed Facts.Doc