UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

OVERSEAS LEASE GROUP, INC.,

     Plaintiff,     :   08 Civ. 01696 (SAS)

   - against -       :

             :

KEY GOVERNMENT FINANCE, INC.,

     Defendant.    :

------------------------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND IN SUPPORT OF CROSS-MOTION
PURSUANT TO FED. R. CIV. P. 56 (f)**

PAUL BATISTA, P.C.
Attorney for Plaintiff
 Overseas Lease
 Group, Inc.
26 Broadway – Suite 1900
New York, New York 10004
(212) 980-0070 (Tel)
(212) 344-7677 (Fax)

## <u>Table of Contents</u>

Table of Authorities ................................................................................................ ii

Introduction and Summary........................................................................................ 1

Factual and Procedural Background ........................................................................ 2

Argument ................................................................................................................... 9

POINT I.    DEFENDANT'S MOTION FOR PARTIAL SUMMARY
            JUDGMENT SHOULD BE DENIED BECAUSE OF THE
            EXISTENCE OF MATERIAL TRIABLE ISSUES OF FACT ..... 9

A. The Standards for Summary Judgment ........................................................... 9

B. Material Triable Issues of Fact Proclude the Grant of Summary
   Judgment........................................................................................................ 10

C. Before Any Summary Judgment Order is Granted, Discovery Should be
   Allowed to Proceed....................................................................................... 15

POINT II.   THOSE BRANCHES OF THE MOTION SEKING
            SEVERANCE OF EIGHT OF THE NINE COUNTERCLAIMS
            AND RULE 54(b) CERTIFICATION SHOULD BE
            DENIED ........................................................................................ 16

Conclusion............................................................................................................... 17

## Table of Authorities

**Cases**

Braga Filho v. Interaudi Bank,
    2008 WL 1752693 (S.D.N.Y. 2008)......................................................... 9

Eskimo Pie Corp v. White-lawn Dairies, Inc.,
    284 F. Supp. 987 (S.D.N.Y. 1968)...................................................... 11

Seiden Associates v. ANC Holdings, Inc.,
    959 F. 2d 425 (2d Cir. 1992)............................................................ 10

Shaw Group, Inc, v. Triplefine Int'l Corp.,
    322 F. 3d 115, (2d Cir. 2003)............................................................ 15

Williams v. Utica College of Syracuse University,
    453 F. 3d 112 (2d Cir. 2006)............................................................ 10

**Rules**

Fed. R. Civ. P. 54(b)................................................................................ 17

Fed. R. Civ. P. 56(f)................................................................................ 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

OVERSEAS LEASE GROUP, INC.,

                     Plaintiff,             :       08 Civ. 01696 (SAS)

           - against -           :

                                     :

KEY GOVERNMENT FINANCE, INC.,

               Defendant.      :

------------------------------------------------------------------ x

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION PURSUANT TO FED. R. CIV. P. 56 (f)

      Plaintiff Overseas Lease Group, Inc. ("OLG") respectfully submits this memorandum (A) in opposition to the motion of defendant Key Government Finance, Inc. ("Key") for partial summary judgment and (B) in support of the cross-motion pursuant to Fed. R. Civ. P. 56(f).

### Introduction and Summary

      Material triable issues of fact warrant denial of Key's motion. As demonstrated in the accompanying affirmations of E. George Badcock, plaintiff OLG's President and Chief Executive Officer, and Donna M. Zerbo, OLG's General Counsel, the relevant documents make clear that, contrary to Key's underlying position, OLG (i) did <u>not</u> give Key title to the vehicles at issue, (ii) did <u>not</u> transfer or assign those vehicles to Key, and (iii) did <u>not</u> grant Key any right to take possession of those vehicles when they are "returned" to OLG by the United States Department of Defense (the "DOD" or "Defense Department") under the

February 5, 2006 contract between the DOD and plaintiff OLG (the "DOD Contract").

Moreover, as the accompanying affirmations of OLG's executives reveal, the theory that Key now advances on this partial summary judgment motion is completely inconsistent with the negotiations that led to the April 1, 2006 agreement between OLG and Key (the "OLG-Key Agreement"), as well as with the obvious purpose of that agreement and the prior practice and conduct of OLG and Key under that contract.

## **Factual and Procedural Background**

The facts relevant to plaintiff OLG's opposition to the motion for summary judgment are described in the accompanying affirmations of Mr. Badcock and Ms. Zerbo. We will not repeat or summarize those facts at this stage of this memorandum.

At the outset, it is important to emphasize that Key's motion is one for "partial" summary judgment, ostensibly on the Fourth Counterclaim contained in the "Answer, Affirmative Defenses and Amended Counterclaims" dated May 2, 2008 (the "Counterclaims"). Key's Fourth Counterclaim is part of a confusing mélange of contentions in the nine counterclaims as a whole. Those nine counterclaims range from a facially implausible contention that the entire contract between Key and OLG should be rescinded (see First Counterclaim) to equally facetious claims that OLG somehow breached "a fiduciary duty of good faith and fair dealing" (see Eighth Counterclaim and Ninth Counterclaim).

Although the motion for partial summary judgment purportedly relates to the Fourth Counterclaim, all nine counterclaims involve essentially the

2

same sets of factual contentions and theories.  As we will explain, there is no more basis for granting summary judgment on the Fourth Counterclaim than on any of the other counterclaims.  Likewise, Key's abusive counterclaims provide no basis for the other branches of Key's motion for the "severance" of eight of the nine counterclaims and the "certification" of any decision the Court may issue on the partial summary judgment motion. [1]

- **The First Counterclaim**:  Demanding "rescission" of the OLG-Key Agreement, the First Counterclaim (see Counterclaims ¶¶ 43-55) begins with the assertion that OLG was "very familiar with the market" for vehicles in Afghanistan (see Counterclaims ¶ 45) and that Key, "although it conducts financing activities in all 50 states and several countries," was not familiar with the Afghanistan "market" (see Counterclaims ¶ 46).

According to Key, OLG allegedly represented that "soft vehicles" had a fair market value in Afghanistan of between $73,000 and $95,000 per vehicle and that "armored vehicles" had a fair market value in Afghanistan of between $282,000 of $329,000 per vehicle (see Counterclaims ¶47(a)).  Key bases its claim for rescission of the entire contract on the assertion that Key later learned that OLG "had, in actuality, paid only between $23,212.00 and $32,334.00 per each [sic] Vehicle (see Counterclaims ¶51 (a)) when OLG had allegedly "charged Key" for the "soft vehicles leased to the DOD for between $73,740.00 and $95,688.00…" (id.).  According to Key, "OLG's lease pricing to the DOD for those same

---

[1] As explained briefly later in this memorandum, plaintiff OLG also opposes those branches of defendant's motion that seek severance of certain of its counterclaims and the "certification" under Fed R. Civ. P. 54(b) of any order entered in the future on defendant's motion for partial summary judgment.

Vehicles, at approximately $95,000 per Vehicle, was far in excess of the market value pricing…" (See Counterclaims ¶45 (b)).

Alleging that its "losses arising out of this transaction are far in excess of that which was estimated by Key as a 'worst case scenario,'" (see Counterclaims ¶52), Key concludes its First Counterclaim by asserting that, "[h]ad Key been aware of the extent of its loss exposure at the time of the Assignment Agreement, it would not have entered into that Agreement." (See Counterclaims ¶ 53.) Key demands the "rescission" of the contract and the return of the $26,200,000.00 paid to OLG.[2]

● **The Second Counterclaim**: Despite its prolixity, the Second Counterclaim is essentially a contention that OLG had allegedly damaged Key's "business relations" (see Counterclaims ¶72) with an unidentified prospective purchaser of vehicles leased by OLG to the DOD. According to the Second Counterclaim (see Counterclaims ¶¶ 56-74), OLG leased 70 vehicles to the Defense Department under "Task Order # 31" (see Counterclaims ¶61). Key asserts that the DOD "elected not to renew its lease of the TO #31 Vehicles…and returned said Vehicles to OLG on or about December 1, 2007 in accordance with the DOD Contract." (See Counterclaims ¶63.)[3]

The Second Counterclaim alleges that Key contacted OLG to confirm that OLG would cooperate "and deliver title to the TO #31 Vehicles so that Key, as

---

[2] OLG's Reply to Counterclaims denies all the material allegations of the nine counterclaims. Although this issue will be addressed in another context, none of the nine counterclaims has any merit. In fact, many of them are frivolous within the meaning of Fed. R. Civ. P. 11, including the assertion of the "rescission" ground of the First Counterclaim.

[3] As the Reply to Counterclaims and the accompanying affirmation of Mr. Badcock reveal, Key's assertions that the DOD elected "not to renew" the vehicle leases and that the vehicles were "returned" are not accurate. See, e.g., Badcock Aff. ¶20 and Badcock Aff., Exhibits 2, 4 and 5.

OLG's assignee, could dispose of the [v]ehicles in the event that Key found buyers through its own efforts, and OLG verbally agreed to do so." (See Counterclaims ¶64). Key claims that it has located a "prospective" but unidentified "buyer" for 70 Toyota Land Cruisers leased by OLG to DOD under Task Order #31 and Task Order #25 (see Counterclaims ¶67). Key has alleged that it "demand[ed]" that OLG "turn over the titles" for the 70 vehicles "for which Key has located a prospective buyer." (See Counterclaims ¶68.)

Asserting that OLG "has interfered…with Key's contractual and business relations with the prospective buyer," the Second Counterclaim demands $1.9 million in damages (see Counterclaims ¶¶ 72 and 74).

- **The Third Counterclaim**:    The Third Counterclaim, also demanding $1.9 million in damages, contains only two operative sentences: "OLG agreed that it would provide for the deinstallation and removal of the equipment in the event of early termination of the DOD Contract and that it would assist Key through a best efforts remarketing covenant….OLG's…conduct is in breach of its best efforts remarketing covenant to Key." (See Counterclaims ¶¶ 76-77.)

- **The Fourth Counterclaim**:    Demanding a declaratory judgment that Key has the "right, as either assignee, lien holder or title owner, to recover…and to dispose" of the vehicles owned by OLG and leased to the Defense Department (see Counterclaims ¶ 88), the Fourth Counterclaim asserts that the DOD's lease of the TO #31 vehicles "expired on November 30, 2007 and the DOD did not exercise its option to renew TO # 31." (See Counterclaims ¶ 83.) Moreover, according to Key, Task Orders relating to "leases of over 200 additional

[v]ehicles in which Key has a security interest" or "in which OLG sold and assigned title to Key are due to expire in the upcoming months…" (See Counterclaims ¶ 84.) Defendant asserts – without pointing to any specific source for its contention – that "the DOD has indicated that it is not likely to exercise its options to renew those Task Orders for all or part of their remaining terms." (Id.)

Key frames the core contention of the Fourth Counterclaim as follows:

> Despite's [sic] Key's request for the titles to the Vehicles from OLG (to facilitate the sale of the Vehicles), OLG has failed and refused to deliver the titles, and has asserted…that Key has no right to dispose of the Vehicles…
>
> A justiciable controversy exists concerning Key's right to possession of the Vehicles and its rights to dispose of those Vehicles, as OLG's assignee or title owner, upon the DOD's termination, non-renewal or default under the DOD Contract. [See Counterclaims ¶¶ 86-87.]

- **The Fifth Counterclaim**: The Fifth Counterclaim alleges that OLG submitted a repair bill to the DOD for more than $1 million in repairs to certain vehicles utilized by the Defense Department under Task Order # 31 (see Counterclaims ¶ 90). According to the counterclaim, OLG "deliberately concealed the repair bill from Key," which obtained a copy of the repair bill from its unnamed "outside consultant" in Afghanistan (see Counterclaims ¶ 91).

Claiming that it has sustained $1.9 million in damages, Key asserts that the "repair bill…is woefully excessive…" and that "OLG has taken the position that the TO # 31 Vehicles remain under lease by the DOD pursuant to the DOD Contract unless and until the $1 million repair bill has been paid by the DOD." (See Counterclaims ¶ 94.)[4]

- **The Sixth Counterclaim**:    Asserting that OLG has allegedly interfered with the Defense Department's payments of monthly leases relating to TO # 31 vehicles, the Sixth Counterclaim demands $512,000 in damages (see Counterclaims ¶¶ 99-104).

- **The Seventh Counterclaim**:    Consisting essentially of a single sentence, the Seventh Counterclaim contends that, "[p]ursuant to Section 7 of the Assignment Agreement, OLG, as seller, agreed to indemnify and save Key, as purchaser, 'harmless from and against any and all costs, losses, expenses (including attorneys' fees), damages, claims, demands, actions, causes of action and judgments of any nature arising out of, or resulting from, Seller's breach of the covenants, representations and warranties contained in this Agreement.'" (See Counterclaims ¶ 106.)

- **The Eighth Counterclaim**:    In demanding more than $26 million in damages – in effect, more than its entire funding – defendant begins its Eighth Counterclaim with the assertion that "Key relied upon OLG with regard to OLG's representation to Key of the fair market value of the

---

[4] In fact, as recent events have demonstrated, the DOD has committed to pay the repair bill presented by OLG (see Badcock Aff. ¶¶18-21).

Vehicles…" (See Counterclaim ¶ 111.)    According to Key, "OLG's representations were false and misleading" (see Counterclaims ¶ 113).  OLG is alleged to have "substantially overcharged Key for the Vehicles" by allegedly paying from $24,000 to $32,000 for four models of "soft" vehicles and then "invoic[ing]" Key amounts ranging from $75,000 to $95,000 for the same vehicles.    (See Counterclaims ¶ 114.)    Similar "overcharge[s]" allegedly occurred regarding armored vehicles.

Key bases its claim to $26 million in damages in its Eighth Counterclaim on the concept that OLG "owed Key a fiduciary duty of good faith and fair dealing."  (See Counterclaim ¶ 117.)

- **The Ninth Counterclaim**:  The final counterclaim, also asserting OLG's alleged breach of "its fiduciary duty to Key of good faith and fair dealing under the Assignment Agreement" (see Counterclaims ¶ 128), alleges that OLG "made attempts to remarket the TO # 31 Vehicles" after November 2007 (see Counterclaims ¶ 121).

After contending that the "offers" obtained by OLG for the TO # 31 vehicles were "far below market value" (see Counterclaims ¶ 123), the Ninth Counterclaim shifts, without any apparent logical or factual connection, to the following allegations regarding so-called "Additional Vehicles" under Task Orders other than Task Order # 31:  "Upon the expiration of the leases for thirteen (13) Vehicles subject to Task Order Nos.

2,5,8,10 and 12, OLG purchased those Vehicles from Key for the total sum of $185,762.00…" (See Counterclaims ¶ 125.)

The Ninth Counterclaim contends that OLG "breached its fiduciary duty to Key of good faith and fair dealing" (see Counterclaims ¶128), presumably because "OLG then re-leased the Additional Vehicles for a substantial profit to OLG…" (See Counterclaims ¶ 127.)

**Argument**

**I.**
**DEFENDANT'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**
**SHOULD BE DENIED BECAUSE OF**
**THE EXISTENCE OF MATERIAL**
**TRIABLE ISSUES OF FACT**

**A.    The Standards for Summary Judgment**

As this Court has recently summarized in identifying the standards for summary judgment under Fed. R. Civ. P. 56:

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The burden of demonstrating the absence of any genuine dispute as to a material fact initially rests with the moving party. The burden then shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." [Braga Filho v.

<u>Interaudi</u> <u>Bank</u>, 2008 WL 1752693
(S.D.N.Y. 2008) (footnotes omitted).]

An issue of fact is genuine "'if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party.'" <u>Williams</u> v. <u>Utica</u> <u>College</u>
<u>of</u> <u>Syracuse</u> <u>University</u>, 453 F. 3d 112, 116 (2d Cir. 2006) (<u>quoting</u> <u>Stuart</u> v.
<u>American</u> <u>Cyanamid</u> <u>Co</u>., 158 F. 3d 622, 626 (2d Cir. 1998).   A fact is material
when it "'might affect the outcome of the suit under the governing law.'"
<u>McCarthy</u> v. <u>Dun</u> <u>&</u> <u>Bradstreet</u> <u>Corp</u>., 482 F. 3d 184, 202 (2d Cir. 2007) (<u>quoting</u>
<u>Jeffreys</u> v. <u>City</u> <u>of</u> <u>New</u> <u>York</u>, 426 F. 3d 549, 553 (2d Cir. 2005).   "It is the
movant's burden to show that no genuine factual dispute exists." <u>Vermont</u> <u>Teddy</u>
<u>Bear</u> <u>Co</u>. <u>v</u>. <u>1-800</u> <u>Beargram</u> <u>Co</u>., 373 F. 3d 241, 244 (2d Cir. 2004) (<u>citing</u> <u>Adickes</u>
v. <u>S.H</u>. <u>Kress</u> <u>&</u> <u>Co</u>., 398 U.S. 144, 157 (1970).

**B.    Material Triable Issues of**
**Fact Preclude the**
**<u>Grant of Summary Judgment</u>**

As the Second Circuit summarized in <u>Seiden</u> <u>Associates</u> v. <u>ANC</u>
<u>Holdings,</u> <u>Inc</u>., 959 F. 2d 425, 428 (2d Cir. 1992):

> When the question is the contract's proper
> construction, summary judgment may be
> granted when its words convey a definite
> and precise meaning absent any ambiguity.
> Where the language used is susceptible to
> differing interpretations, each of which may
> be said to be as reasonable as another, and
> where there is relevant extrinsic evidence of
> the parties' actual intent, the meaning of the
> words become an issue of fact and summary
> judgment is inappropriate....

Contract language is ambiguous if it is "capable of more than one
meaning when viewed objectively by a reasonably intelligent person who has

10

examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." Eskimo Pie Corp. v. White-lawn Dairies, Inc., 284 F. Supp. 987, 994 (S.D. N.Y. 1968).

The OLG-Key Agreement does not support Key's single core contention that it is entitled "to recover possession and to dispose of the vehicles" (see affidavit of David Karpel ("Karpel Aff.") at ¶1) owned by OLG and leased by OLG to the Defense Department. Ms. Zerbo, a New York lawyer who as OLG's General Counsel negotiated the OLG-Key Agreement, has testified: "Key merely has a lien on the vehicles to secure a portion of the purchase price Key paid OLG for the stream of the lease payments under the DOD Contract." (See Zerbo Aff. ¶12.)

For purposes of this summary judgment motion, the contract language on which Key relies does not "convey a definite and precise meaning absent any ambiguity." Seiden Associates, 959 F. 2d at 428. The OLG-Key Agreement, taken as a whole, reflects one of the essential points made by Ms. Zerbo:

> Section 6 of the [OLG-Key Agreement] does not grant to Key the right to possession, control and transferability of the vehicles. Key has all the rights of OLG under the DOD Contract but not OLG's obligations. The DOD Contract does not give OLG the right of possession and control over the vehicles; rather, OLG's legal status as owner provides those rights to OLG. Key is entitled to all the lease payments and other money under the DOD Contract which Key purchased, and also has all remedies under the contract to mitigate

11

> loss of its asset – namely, the lease payment
> stream, not the vehicles. Key does not have
> any obligation under the DOD contract to
> provide and service vehicles; therefore, it
> does not have any rights with respect to
> them. This is consistent with the legal
> structure of the transaction, Key's own
> Standard Assignment Agreement, and the
> assignment documents under the FARs,
> which limit the assignment of only the lease
> and other monetary payments to the funding
> source. To interpret Section 6 of [the OLG-
> Key Agreement] with any other meaning is
> pure fiction. [See Zerbo Aff. ¶ 31; emphasis
> in original.]

The preamble to the OLG-Key Agreement states: "Seller [OLG] and
the United States Department of Defense (the 'User') have entered into that certain
contract (contract No. W91B4M-06-D-001), dated as of February 5, 2006 (the
'Contract'), pursuant to which Seller has leased to the User, and the User has
leased from Seller, the property described therein (the 'Property'). Seller desires to
sell, and Purchaser is willing to purchase, the Assigned Interest (as hereinafter
defined)." (See Zerbo Aff., Exhibit 3.)

The "Assignment" language in Section 1 of the OLG-Key Agreement
is in relevant part as follows:

> Section 1. Assignment....Seller does
> hereby sell, assign, transfer, and set over
> unto Purchaser all of Seller's right, title and
> interest in and to (but not its obligations
> under) the Assigned Interest. [See Zerbo
> Aff., Exhibit 3.]

The term "Assigned Interest" is defined in full in Section 2 of the
OLG-Key Agreement:

Section 2. Assigned Interest. As used herein, the term "Assigned Interest" shall mean the Contract and all amounts due and to become due under the Contract, including (without limitation) payments, insurance proceeds, and all monies payable or recoverable following a default or non-appropriation by User, and a first priority line in favor of Purchaser in and to the Property, together with all proceeds (cash and non-cash, including insurance proceeds) of the foregoing and all of Seller's rights and remedies under the Contract, including (without limitation) the right to initiate and conclude any and all proceedings, legal, equitable or otherwise, that Seller otherwise might take, save for this Agreement. As used herein, the term "Contract" shall mean the Contract, together with all documents executed in connection with the Contract, including, without limitation, all documents listed on attached Schedule A. [See Zerbo Aff., Exhibit 3.]

Entitled "Seller's Obligations under the Contract," Section 6 of the OLG-Key Agreement provides in full: "Purchaser shall have all of the rights of the Seller under the Contract, but none of Seller's obligations thereunder. This Agreement (and the assignment of such rights) shall not relieve Seller of any of its obligations under the Contract and Seller shall continue to perform all such obligations. Purchaser shall not be obligated to assume, and by its acceptance of this assignment shall not be deemed to have assumed, any of Seller's obligations under the Contract." (See Zerbo Aff., Exhibit 3.)

Taken in its entirety, the OLG-Key Agreement (i) does not give Key title to the vehicles at issue, (ii) does not assign or transfer those vehicles to Key,

and (iii) does <u>not</u> grant Key any right to take possession of those vehicles when they are returned to OLG by the DOD.  As Ms. Zerbo has testified in detail in her accompanying affirmation:

- The OLG-Key Agreement reflects "Key's purchase of the five year lease revenue, not the vehicles." (<u>See</u> Zerbo Aff. ¶ 8.)

- The "form and structure of this transaction is not and never was intended to be a simple lending transaction enabling OLG to simply purchase vehicles" since the "funds provided by Key's purchase price for the discounted revenue stream were used by OLG to…support OLG's continuing obligations under the DOD Contract…" (<u>See</u> Zerbo Aff. ¶10.)

- "Key merely has a lien on the vehicles to secure a portion of the purchase price Key paid OLG for the stream of lease payments under the DOD Contract." (<u>See</u> Zerbo Aff. ¶ 14.)

- "[C]onspicuously absent" from the OLG-Key Agreement are any provisions granting Key "any rights to possession and control of the vehicles or to sell, deal, handle, or negotiate the vehicles in any respect or to any extent." (<u>See</u> Zerbo Aff. ¶ 19.)

\* \* \*

Moreover, the OLG-Key Agreement did not spring out of a vacuum. The agreement was negotiated by Ms. Zerbo and Mr. Badcock on behalf of OLG and Howard Ulep and John Lekic at Key.[5]  Ms. Zerbo testifies in detail that the standard assignment agreement initially proposed by Key was significantly altered before the final OLG-Key Agreement was executed (<u>see</u> Zerbo Aff. ¶¶ 6-20).

---

[5] Neither Ulep nor Lekic has submitted an affidavit to support Key's motion.

14

Although Key's initial proposal, as reflected in the form document annexed as Exhibit 4 to the Zerbo Affirmation, may have contained form provisions that could have achieved what Key is now trying to bring about on this motion, the actual OLG-Key Agreement does <u>not</u> support Key's core argument.

Other factual points, as more fully spelled out in Ms. Zerbo's affirmation, corroborate OLG's position. For example, the assignment of payments (<u>see</u> Exhibit 5 to the Zerbo Aff.) was for the revenue stream only, not for the vehicles. Likewise, when vehicles have in the past been returned by DOD, it is OLG which has sold them, not Key, after OLG made a "release of lien" payment to Key. (<u>See</u> Zerbo Aff., Exhibit 7). Certainly Key has never in the past claimed that it had the right to "posess" and to "sell" vehicles returned by DOD. In effect, Key's argument is what is known in another area of the law as a "recent fabrication."

Another rule of construction is relevant. Ambiguous language should be "construed against the interest of the drafting party." <u>Shaw</u> <u>Group, Inc.</u> v. <u>Triplefine</u> <u>Int'l Corp.,</u> 322 F. 3d 115, 121 (2d Cir. 2003). Whatever else might be said about the language of the OLG-Key Agreement, it embodies the kind of writing that gives legal writing such a bad reputation. It is, however, the language Key itself used, and it should be "construed against the interest of the drafting party." <u>Id</u>.

## C.  Before Any Summary Judgment Order Is Granted, Discovery Should <u>Be Allowed to Proceed</u>

The existing record warrants denial of the "partial" summary judgment motion. In the event, however, that the Court does not deny the motion

on the existing record, the Court should grant OLG's cross-motion and allow discovery to proceed under Fed. R. Civ. P. 56(f) for the reasons identified in the accompanying affirmation of Paul Batista in support of the cross-motion.

Fed. R. Civ. P. 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application [for summary judgment] or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

## II.
## THOSE BRANCHES OF THE MOTION SEEKING SEVERANCE OF EIGHT OF THE NINE COUNTERCLAIMS AND RULE 54(b) CERTIFICATION SHOULD BE DENIED

Those branches of Key's motion seeking the so-called "severance" and "continuance" of eight of the nine counterclaims and the Rule 54(b) certification of any decision or order entered in the future on Key's motion for partial summary judgment are, frankly, bizarre.

As to "severance" and "continuance," it is not clear what Key is asking for. To the extent that Key seeks to defer and delay the adjudication of its counterclaims, OLG objects. As indicated earlier in this memorandum, those counterclaims are abusive and frivolous, including the Fourth Counterclaim – the one on which the summary judgment motion is targeted – and the First

Counterclaim seeking the facially implausible relief of "rescission" of the OLG-Key Agreement. It is OLG's intention to seek early dismissal and other relief as to all the counterclaims, and Key should not be allowed to postpone or defer the determination of its own bogus counterclaims.

As to the demand for Rule 54(b) treatment, it is, at best, a premature request. The Court obviously has not yet ruled on the partial summary judgment motion. Rule 54(b) orders are rarely granted because of the final judgment rule in federal practice, and there is no reason at this stage to grant Rule 54(b) treatment to a decision that has not been reached.

### Conclusion

For all the foregoing reasons, plaintiff Overseas Lease Group, Inc., respectfully requests that the Court deny defendant's motion and grant the cross-motion.

Dated:     New York, New York
           May 22, 2008

PAUL BATISTA, P.C.

By _____
    Paul Batista (PB8717)
    Attorney for Plaintiff
        Overseas Lease Group, Inc.
    26 Broadway – Suite 1900
    New York, New York 10004
    (212) 980-0070 (Tel)
    (212) 344-7677 (Fax)

17

## DECLARATION OF SERVICE

PAUL BATISTA, an attorney admitted to practice in this Court in 1975, declares under penalty of perjury that he served the annexed (A) Notice of Cross-Motion and supporting affirmation of Paul Batista, (B) Affirmation of E. George Badcock and exhibits, (C) Affirmation of Donna M. Zerbo and exhibits, (D) Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment, and (E) Plaintiff's Statement Pursuant to Local Rule 56.1 on Morritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, NY 11530, attorneys for defendant, by depositing true, complete and correct copies in pre-paid, properly addressed envelopes in an official depository of the U.S. Postal Service on May 23, 2008.

PAUL BATISTA