UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
OVERSEAS LEASE GROUP, INC.,

                      Plaintiff,

    - against -

KEY GOVERNMENT FINANCE, INC.,

                      Defendant.
------------------------------------------------------------x

08 Civ. 01696 (SAS)(THK)

**REPLY AFFIDAVIT OF DAVID KARPEL IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

STATE OF COLORADO  )
                             ) ss.:
COUNTY OF BOULDER  )

      DAVID KARPEL, being duly sworn, deposes and says:

      1.    I submit this Affidavit in further support of Defendant/Counterclaim Plaintiff, Key Government Finance, Inc.'s ("Key") motion for partial summary judgment, declaring that Key, as OLG's assignee, is entitled to exercise all of the rights and remedies of OLG under the DOD contract, <u>as and when those rights and remedies mature</u>. I further submit this Affidavit in reply to the Affirmations filed by E. George Badcock (the "Badcock Affirmation") and Donna M. Zerbo (the "Zerbo Affirmation").

      2.    Virtually all of the arguments made in the Badcock Affirmation and the Zerbo Affirmation ignore the clear and unambiguous language in the Assignment Agreement[1] which clearly entitles Key to exercise the rights and remedies of OLG under the DOD Contract. Key was clear on this motion and in the extended pre-motion conferences conducted by the Court that it was not asking the Court to make any finding

---

[1] Capitalized terms used herein shall have the meaning given to them in my moving Affidavit sworn to on May 1, 2008.

1

with respect to the "maturity" of OLG's right (and hence Key's right, as OLG's assignee) to recover possession of the vehicles from the DOD. Rather, as indicated in ¶1 of my moving Affidavit, Key only seeks the declaration of this Court confirming that "whenever OLG would be or have been entitled to recover possession of such vehicles and dispose of them", that right clearly belongs to Key, as OLG's assignee. (See fn. 2 of my moving Affidavit). All of the arguments made in the Badcock Affirmation address the issue of whether the time is "right" for the lessor to be able to recover the subject vehicles (or any of them) from the DOD. Key is not asking the Court to address that issue, but rather, is only asking the Court to resolve the clear controversy that would exist if both OLG and Key were taking conflicting positions with respect to their entitlement to recover and dispose of the vehicles from the DOD once that right matures.[2]

**Mischaracterizations In The**
**Badcock and Zerbo Affirmations**

3. The Badcock Affirmation opens by indicating (at ¶2) that Key has taken the position that "it is entitled to 'recover and dispose' of several hundred armored and unarmored vehicles...". As indicated above, this motion does not seek a finding that Key is <u>now</u> entitled to recover and dispose of any vehicles prior to those rights maturing under the DOD Contract, but only that as compared to OLG, it is Key, as OLG's assignee, that is entitled to exercise those rights and remedies up to the indebtedness until the

---

[2] Key believes the right to recover the vehicles has already clearly matured as identified by the emails attached to my moving Affidavit. However, taken in a light even most favorable to OLG, the emails annexed as Exhibit "2" to the Badcock Affirmation shows that, at the very latest, on May 31, 2008, both OLG and the DOD would agree that the vehicles covered by Task Order 31 are terminated and available for recovery. Nothing prevents OLG from trying to locate purchasers for the returned vehicles and bringing those offers to Key to maximize the recovery for the disposition of the returned vehicles (and, in fact, it is encouraged). In fact, if buyers are able to be located in amounts satisfactory to satisfy the indebtedness due Key on each vehicle, Key would obviously release its lien thereon.

indebtedness due Key on the subject vehicles has been repaid.[3]

4. Badcock also, in one sentence in ¶2 of his Affirmation, indicates that the position taken by Key on this motion is inconsistent with the practices of OLG and Key. Nothing can be further from the truth. OLG points to no facts other than this one conclusory sentence to support a waiver by Key from enforcing its rights and remedies as OLG's assignee.

5. Rather, OLG points to a series of facts, all of which are irrelevant to the subject motion. For example, OLG indicates that Key is "not a party" to the DOD Contract (Badcock Affirmation at ¶93). Of course, Key is not a party to that contract. Key is OLG's assignee and stands in the shoes of OLG in enforcing OLG's rights and remedies thereunder. OLG indicated that it is not in default of the Assignment Agreement. <u>Whether or not OLG is in default</u> is not germane to the subject motion. <u>Key has an absolute and direct assignment of all of OLG's rights and remedies</u>. If, as OLG indicates in ¶4 of the Badcock Affirmation, the DOD is about to remit sufficient funds to pay off all of Key's debt in full on the vehicles scheduled to be returned, then the issue with respect to the vehicles at hand will be mooted and Key's debt paid off on the relevant vehicles. But, at the same time, it does not obviate the need for this relief to address all of the many remaining vehicles still on lease with the DOD and the relative rights of Key and OLG to enforce those rights and remedies if, as and when the vehicles are returned.

6. Badcock also points to the support OLG must provide to Key in reselling or re-leasing the returned vehicles. As indicated above, Key welcomes all of the marketing efforts of OLG to maximize their recovery value for these vehicles, but that

---

[3] Key's indebtedness, as of the date of this Affidavit, remains in excess of $_____.

3

does not in any way suggest that Key, as OLG's assignee, is not entitled to exercise all the rights and remedies with respect to the recovery and disposition of these vehicles. The recovery and ultimate disposition should be supported by OLG, but just because they are compelled to assist in this remarketing does not mean that the clear and unambiguous language of the Assignment Agreement is ignored.

7.  Badcock's Affirmation itself indicates that "no one but the DOD is entitled to possession of the vehicles until May 31, 2008" (Badcock Aff. at ¶18 -- last sentence). As such, despite all the obfuscation in these papers and at the pre-motion conferences, OLG itself admits that these vehicles are imminently being returned. In ¶¶23 - 28 of his Affirmation, Badcock goes on to state details about the specific dates when the vehicles will be returned by the DOD but in no way disputes that they <u>are, in fact, being returned</u>.

8.  In closing, Badcock makes the incredible argument that "as owner of the vehicles", it has the full right to handle all negotiations with the DOD, take possession of the vehicles, force Key to issue lien releases at whatever price OLG negotiates for the sale of the vehicles and otherwise control the entire recovery and disposition (see Badcock Aff. at ¶29). <u>In making this argument, OLG misses the entire point of Key's motion</u>. Key assumed, for purposes of this motion, that OLG is the title owner of the leased vehicles (see fn. 1 to my moving Affidavit). However, owners of commercial property rights assign those interests in commercial transactions all the time. When, as owner, OLG would have been entitled to exercise rights and remedies, the entitlement to exercise those rights and remedies are often given up to an assignee in connection with a commercial transaction such as this one. So, here, all of the rights and remedies that OLG claims in ¶29 it should be entitled to enforce without Key, quite clearly, have been

assigned to Key in the Assignment Agreement.

9. Key only seeks to enforce its right to recover and dispose of vehicles to satisfy its indebtedness owed and nothing more, and Key is entitled to enforce a contract to achieve that end. It has advanced over $26,000,000 to OLG to fund OLG's purchase of the vehicles and their ultimate lease to the DOD.

**The Assignment Agreement Is Unambiguous
In Its Clear Assignment To Key**

10. Badcock states that "the agreement between Key and OLG in fact denies Key the right of possession of any of the vehicles". (Badcock Affirmation at ¶14). Badcock does not indicate where in the Assignment Agreement such "denial" is contained, nor does he address the assignment issue and its language at all in his Affidavit.

11. The Zerbo Affirmation goes through a tortured analysis of comparing Key's initial draft of the Assignment Agreement with the Assignment Agreement that was ultimately executed, but she ignores the inescapable and clear definitions and language contained in the Assignment Agreement ultimately executed. The Assignment Agreement provides that:

> Seller does hereby sell, assign, transfer and set over unto Purchaser all of Seller's right, title and interest in and to (but none of its obligations under) the Assigned Interest.

Assignment Agreement at Section 1. As indicated in my moving Affidavit and in Key's Memorandum of Law previously submitted in support of its motion, the argument that Key does not have any rights in and to the vehicles is absurd. In defining "Assigned Interest" it includes <u>the entire Contract</u> that OLG entered into on February 5, 2006 with the DOD. As such, there alone, Key has taken an assignment of all of OLG's rights under

the DOD Contract. In addition, Assigned Interest includes all amounts due or to become due under the Contract and a "first priority lien in favor of purchaser in and to the Property". Property is defined as the property leased by OLG to the DOD under the Contract. (See introductory paragraph of Assignment Agreement). The Property is the vehicles!

12. Section 2 goes on to indicate, significantly, that Key, as OLG's assignee, has the right to initiate and conclude any and all proceedings. Therefore, Key did not take an assignment "just of the proceeds" as the Zerbo Affirmation would have the Court believe, but rather, as the clear language of the Assignment Agreement indicates, Key took an assignment of the entire Contract to protect its significant advance of funds to enable OLG to lease the vehicles to the DOD.

13. The assignment language contained in Sections 1, 2 and 6 of the Assignment Agreement could not be clearer. Significantly, Section 6 of the Assignment Agreement is entirely consistent with the requirement of OLG to continue to perform its obligations under the Contract (such as maintenance and repair as OLG indicates it is required to do). Section 6 clearly indicates that Key "shall have all the rights of the Seller under the Contract". <u>All of the rights</u> means without limitation, right to payment and the right to recover and dispose of the vehicles, protect and enforce Key's meaningful and substantial economic interest in these transactions. Any other reading would ignore the clear and unambiguous language contained in the Assignment Agreement.

14. The Zerbo Affirmation makes much of the fact that "Key would take the risk" of the DOD's early return of the vehicles. This is true. That risk is that if the option is not exercised by the DOD, Key would be subject to the market in re-selling the

vehicles with no recourse to the DOD for any shortfall that may occur. Key is facing that risk right now, and only seeks to recover and dispose of the vehicles at the highest and best price it can achieve to manage that risk. Key does not seek a windfall from the sale of any of the vehicles as the Zerbo Affirmation suggests. As indicated above, for purposes of this motion, Key is prepared to accept Zerbo's characterization that title to the Vehicles remains with OLG and once Key receives its payoff amounts with respect to any vehicle, it can recover nothing further with respect to the proceeds therefrom, with any such excess being turned over to OLG.

15. OLG goes through extensive efforts to show that it is the title owner of the vehicles leased to the DOD. That analysis is irrelevant with respect to the pending motion. The multiple pages that the Zerbo Affirmation takes to show that OLG is the owner of the vehicles and Key only the secured party with respect to the vehicles misses the entire point. The point is that the assignment language is clear and that Key has the right to enforce all of OLG's rights and remedies under the Contract. The use of this assignment provision protects Key's secured party status -- a quite conventional protection afforded to secured parties to allow them to step into the shoes of their assignor and protect their security interest. This is precisely what Key seeks clarity on by this motion. It does not seek a finding from the Court that Key is the title owner to any of the vehicles, but only that it is entitled, pursuant to the Assignment Agreement, to protect its significant investment, to recover and dispose of the vehicles as one of the rights and remedies to which it has taken assignment from OLG.

16. What OLG would like to do is to determine a price it can pay to Key for Key to release its lien in the vehicles and then allow OLG to re-lease them or sell them to

any other party it so chooses and remain unaccountable to Key for the proceeds OLG ultimately receives.

17. It is this double dealing that has motivated Key to protect and enforce its investment through the clear and unambiguous assignment language. If there are parties in the marketplace that OLG locates for the remarketing of the returned vehicles, OLG should not be entitled to profit on Key's losses and the only way Key can protect against this occurring is for the Court to permit Key to enforce the clear and unambiguous language in the Assignment Agreement. Section 6 of the Agreement clearly entitles Key to enforce all of OLG's rights and remedies under the Contract and does not relegate Key to stand by and wait for OLG to turn over proceeds (that OLG determines to be appropriate) for Key to release its lien on the vehicles.

18. Key is entitled, as assignee of OLG's rights and remedies under the Contract, to enforce those rights without interference.

_____
DAVID KARPEL

Sworn to before me this 29
day of May, 2008

_____
Notary Public

[Notary Seal: RITA ROBLES, NOTARY PUBLIC, STATE OF COLORADO]

My Commission Expires 04-01-2012

F:\Key Equipment Finance\Overseas\Docs\Reply Affidavit 05 28 08.doc

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

MICHELLE FALCONER, being duly sworn deposes and say:

I am not a party to the action, am over 18 years of age and reside in Rockville Centre, New York.

On the 30th day of May, 2008, I served true copies of the within REPLY AFFIDAVIT OF DAVID KARPEL IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT via first class mail, in a sealed envelope, with postage prepaid thereon, in an official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

PAUL BATISTA, P.C.
26 Broadway - Suite 1900
New York, New York 10004
Attn: Paul Batista, Esq.

_____
MICHELLE FALCONER

Sworn to before me this
30th day of May, 2008

_____
Notary Public

DAGMAR E. ROWINSKY
NOTARY PUBLIC, State of New York
No. 4789327
Qualified in Nassau County
Commission Expires 10-31-09

F:\Key Equipment Finance\Overseas\Docs\AOS Reply Aff 5 30 08.doc